# PBI - DEALER AGREEMENT

This Dealer Agreement (this **"Agreement"**), is entered into as of June 30, 2016 (the **"Effective Date"**), by and between Pitney Bowes Inc., with offices at 3001 Summer Street, Stamford, Connecticut 06926 (**"PBI"**) and Pacific Office Automation, with offices at 14747 Northwest Greenbrier Parkway, Beaverton, OR 97006 (**"Dealer"**).

**WHEREAS,** PBI wishes to appoint Dealer as an authorized dealer to sell PBI Products (as defined herein) in order to expand the availability of PBI Products in the marketplace; and Dealer wishes to be appointed as an authorized dealer in accordance with the terms of this Agreement;

**NOW, THEREFORE**, in consideration of the covenants and agreements herein contained, the parties hereto, intending to be legally bound, agree as follows:

## SECTION 1 - DEFINITIONS

### 1.01 Definitions

The following terms will have the meanings ascribed to them below:

(1) **"Affiliates"** means, with respect to a party, an entity that directly or indirectly controls, is controlled by, or is under common control or ownership, with, a party, now or anytime in the future.

(2) **"Customer"** means a third party that is not an Affiliate of Dealer, and that has purchased or leased PBI Products and/or a license to use PBI Products and/or the right to receive Services from Dealer, but that is not permitted to remarket, sell, license or lease PBI Products to others in the normal course of its business.

(3) **"Dealer Confidential Information"** means pricing, non-public financial, marketing and service information; all information relating to Dealer's sales representatives and other employees; trade secrets (as defined in the Uniform Trade Secrets Act at the time of disclosure); and other information about Dealer's business and operations that it informs PBI is confidential, whether in written or oral format.

(4) **"Metering Components"** means postage meters and/or postage evidencing components that are rented under this Agreement as a component of certain PBI Products.

(5) **"PBI Products"** means the products set forth on **Schedule A** hereto, including any Software, supplied by PBI and any other product hereafter included as a PBI Product by written agreement of the parties.

(6) **"PBI Confidential Information"** means pricing, product, technical, non-public financial, manufacturing, marketing and service information; all information relating to PBI's or any of its Affiliates' dealers, sales representatives, suppliers, customers and/or others with whom PBI or any of its Affiliates conducts business; specifications; materials; plans; know-how, trade secrets (as defined in the Uniform Trade Secrets Act at the time of disclosure) and other intellectual property owned or used by PBI or its Affiliates; all other information about PBI's or its Affiliates' business and operations, and this Agreement, in each case, whether written, oral or observed by Dealer or any other person or entity.

(7) **"Services"** means consulting, installation, maintenance, and/or implementation services provided by PBI or Dealer.

(8) **"SLA"** means service level agreements and/or maintenance agreements, which include but are not limited to Dealer supplying customers with PBI or third party parts, and/or Dealer supplied labor for PBI Products.

(9) **"Software"** means the software programs set forth on **Schedule A** hereto supplied by PBI, and any other software programs hereafter included as Software by written agreement of the parties.

(10) **"Territory"** means the area described on **Schedule B** hereto.

SECTION 2 - **APPOINTMENT**

2.01 **Appointment**

(1) PBI appoints Dealer, and Dealer will act, as the non-exclusive distributor of the PBI Products in the Territory. PBI reserves the right to distribute the PBI Products in the Territory directly or through its Affiliates.

(2) Dealer represents and warrants that Dealer has all licences and permits required in order to perform its obligations hereunder. Dealer represents and warrants that it has all necessary authority to enter into this Agreement, and that Dealer's entrance into this Agreement, and the performance of any duties or obligations under this Agreement, does not interfere with any term or condition of any other agreement to which Dealer is a party.

(3) Dealer will not sell Software or PBI Products to wholesalers or other dealers without first obtaining the express written consent of PBI.

(4) Dealer will not sell, or solicit offers for sale of, PBI Products outside the Territory, except in accordance with the Policies and Procedures Manual (as defined below), without first obtaining the express prior written consent of PBI.

(5) Dealer will not sell to, or solicit offers for SLAs or hourly service agreements from, existing PBI Customers who have not entered into an agreement with Dealer for the purchase or lease of PBI Products, without first obtaining the express prior written consent of PBI.

(6) Dealer will use its best efforts to promote, sell, install, and service (subject to Section 4.03(2)) all PBI Products provided to Dealer in the Territory. PBI and Dealer will abide by the implied covenant of good faith and fair dealing as well as fair trade practices with respect to this Agreement and to the purchase and sale of PBI Products and the provision of Services among themselves and to Customers.

(7) Dealer will comply in all material respects with the PBI Dealer Code of Conduct, as may be amended from time to time in PBI's sole discretion, and will refrain from disparaging any PBI Product or other product of PBI or of any PBI Affiliate. A current copy of the PBI Dealer Code of Conduct is available on the Dealer internet portal.

(8) Dealer will at all times during the Term comply with the terms and conditions of PBI's Policies and Procedures Manual for dealers of PBI Products (such manual, as it may be amended from

time to time in PBI's sole discretion, the **"Policies and Procedures Manual"**). A current copy of the Policies and Procedures Manual is available on the Dealer internet portal.

(9) If Dealer leases, or intends to lease, any PBI Products to a current Customer, Dealer must first offer the opportunity to provide lease financing for such PBI Products to Secap Finance, Global Finance Services or another PBI affiliate. If Secap Finance, Global Finance Services or such other PBI affiliate declines to enter into a lease with the current Customer placing the applicable order, then Dealer may seek to engage other financing companies to complete a leasing transaction for such PBI Products.

SECTION 3 - **TERMS OF SALES**

3.01 **Orders; Product Sales Expectation Targets**

(1) Dealer must place orders for PBI Products in the manner specified in the Policies and Procedures Manual or as otherwise specified by PBI, and PBI must use its commercially reasonable best efforts to fill such orders.

(2) To the extent orders are accepted by PBI in accordance with the terms hereof, Dealer will purchase and resell in the Territory not less than the quantity of PBI Products reasonably established by PBI as the annual sales volume targets in the product sales expectation letter sent by PBI to Dealer annually (the **"Product Sales Expectation Targets"**).

(3) Following the initial agreed-upon Product Sales Expectation Targets required by Section 3.01(2) for the first full year following the Effective Date of this Agreement, PBI will not increase the Product Sales Expectation Targets in any subsequent year during the Term in excess of nine percent (9%) greater than the amount of the previous Product Sales Expectation Targets (**"Target Cap"**). Notwithstanding the foregoing, the Target Cap will not apply if (a) the size or scope of the Territory is increased, (b) a PBI channel that existed in the Territory at the time the Product Sales Expectation Targets were established is eliminated or otherwise ceases to distribute PBI Products, (c) Dealer, through mutual agreement with PBI, increases the product lines of PBI Products it wishes to purchase under this Agreement, or (d) PBI and Dealer mutually agree otherwise.

3.02 **Delivery, Transportation, Title and Risk of Loss**

PBI will deliver PBI Products in accordance with the terms and conditions of the Policies and Procedures Manual. Transportation and other shipping costs will be as set forth in the Policies and Procedures Manual. Title to, and risk of loss for, PBI Products in transit will be apportioned as set forth in the Policies and Procedures Manual.

3.03 **Price, Price Protection and Payment**

See Section 1.03 of the Policies and Procedures Manual.

3.04 **Product Warranty**

(1) PBI warrants to Dealer that the PBI Products will be new or reconditioned and will be free from defect in workmanship or materials for a period of one hundred twenty (120) days from the date of shipment to Dealer.

(2) **EXCEPT FOR THE EXPRESS WARRANTIES IN THIS AGREEMENT, PBI DISCLAIMS ALL OTHER REPRESENTATIONS, WARRANTIES AND CONDITIONS WITH**

**RESPECT TO THE PBI PRODUCTS AND SOFTWARE, EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO, THE IMPLIED WARRANTIES AND CONDITIONS OF MERCHANTABILITY, MERCHANTABLE QUALITY, FITNESS FOR A PARTICULAR PURPOSE, THAT THE PBI PRODUCTS AND SOFTWARE WILL OPERATE ERROR-FREE OR UNINTERRUPTED OR FREE FROM OTHER DEFECT OR FAILURE OR THAT DEFECTS THEREIN ARE CORRECTABLE, AND THOSE ARISING BY STATUTE OR OTHERWISE IN LAW OR FROM A COURSE OF DEALING OR USAGE OF TRADE. REPAIR, RECALIBRATION OR REPLACEMENT OF THE PBI PRODUCTS AND SOFTWARE, AT PBI'S OPTION, IS DEALER'S SOLE REMEDY FOR BREACH OF THE WARRANTY IN THIS SECTION 3.04.**

SECTION 4 - **DUTIES OF DEALER**

4.01 **Duties Relating to the Sale & Promotion of the PBI Products**

Dealer will use its best efforts to promote the sale of and to sell PBI Products in the Territory and, without limiting the generality of the foregoing, will:

(1) use its good faith best efforts to achieve the Product Sales Expectation Targets for the Territory that has been mutually agreed upon as outlined in the annual Product Sales Expectation Targets letter sent by PBI;

(2) provide monthly and quarterly forecast reports to the PBI Dealer representative in order to ensure proper inventory and delivery of PBI Products;

(3) obtain and maintain during the Term, sufficient policies of insurance with appropriate policy limits to cover all reasonable risks associated with the performance of its obligations under this Agreement, including covering all PBI Products purchased from the point of receipt from PBI, until an accepted installation at Customer's site has been achieved, and including but not limited to the following kind and amount of insurance: (a) comprehensive general liability insurance with broad form contractual liability coverage and a limit of at least one million dollars ($1,000,000) per occurrence; and (b) property damage liability insurance covering Dealer's and others' property. Dealer will cause PBI, its Affiliates, and PBI's and its Affiliates' directors, officers and employees (collectively, the **"Additional Insureds"**) to be named as additional insureds and loss payees on such comprehensive general liability policy; and all policies will require ten (10) days prior notice to PBI in the event of cancellation of, or material change to, the policies. Dealer will deliver to PBI certificates evidencing such insurance and reflecting the Additional Insureds as additional insureds and loss payees on the Effective Date and annually thereafter;

(4) employ adequate numbers of trained personnel to present, demonstrate and explain the use of PBI Products to prospective users and will use PBI Products in its own business to the maximum extent feasible;

(5) solicit orders for PBI Products from present and potential purchasers in the Territory;

(6) pursue sales leads in a timely manner, observing the condition that with respect to any sales leads originating from PBI, Dealer may only offer PBI Products to such referrals;

(7) distribute such sales promotional material, displays and other merchandise as PBI may from time to time supply for the purpose;

(8) advise PBI of any material matter that may affect sales in the Territory;

(9) deliver Products to purchasers and otherwise service purchasers of PBI Products in the Territory; and

(10) provide suitable facilities and adequate warehousing to store PBI Products delivered to Dealer.

Notwithstanding anything to the contrary herein, Dealer may only sell PBI Products with respect to which its employees have received training pursuant to the Policies and Procedures Manual or as otherwise permitted by PBI in writing.

4.02 **Duties Relating to the Servicing of PBI Products**

Dealer will:

(1) employ sufficient numbers of trained service personnel to assure that proper service, repair and maintenance are being done on PBI Products in accordance with the standards established by PBI, as set forth in the Policies and Procedures Manual, and any requirements established by law, both during the Term and during any warranty period extending beyond the Term;

(2) maintain sufficient stocks of supplies and spare parts to keep PBI Products in good working order; and

(3) purchase from PBI for inventory adequate PBI Products, including supplies, spare parts and consumables for promotion, demonstration and service.

4.03 **Metering Components**

(1) PBI grants to Dealer the non-exclusive right to install, subject to rules and restrictions provided by PBI, Metering Components that are components of the PBI Products in the Territory. Title to Metering Components always will rest and remain with PBI or its Affiliates. The Metering Components are subject to and regulated by various laws and regulations promulgated by the United States federal government and by the USPS (**"Meter Regulations"**). Dealer represents and warrants that it has and will maintain all permits and approvals required for it to perform the activities contemplated by this Agreement. Dealer will fully comply with and operate in accordance with the provisions of all Meter Regulations that are applicable to Dealer's distribution, installation and other activities with respect to the Metering Components. Dealer acknowledges that, at any time with or without prior notice and with respect to existing or prospective customers, Meter Regulations may change, and the regulatory terms and conditions under which PBI, and/or Dealer may offer Metering Components may change. In the event of any such change, PBI may amend this Agreement by providing written notice to Dealer of such amendment.

(2) Dealer will cause its Customers who purchase or lease PBI Products that contain Metering Components to enter into the then-current meter rental agreement provided by PBI for any such Metering Components.

(3) Dealer will provide Metering Components only to Customers who are authorized by the USPS to use the Metering Components and will provide only Metering Components with the PBI Products sold by Dealer to such Customers. Dealer will cooperate with PBI in fulfilling its obligations to the USPS, and such cooperation will include, without limitation, (a) following PBI instructions relating to installation, configuration and use of Metering Components at Customer locations, and promptly notifying PBI if Dealer becomes aware of any infringement or unauthorized installation, configuration or

use (or activity that could be expected to result in any of the foregoing) of Metering Components or any activity which could be expected to expose PBI or the USPS to loss or liability in connection with Metering Components installed by Dealer; and cooperating in the investigation of any of the foregoing, and (b) agreeing to any PBI audit schedule proposed during the Term, and providing PBI access to or assistance with gaining access to any locations necessary in performance of such audits, including without limitation, Dealer's and Customers' premises. Dealer may not transfer or otherwise convey any of the rights granted to it under this Agreement to a third party without PBI's prior written consent, and any attempt to transfer any rights without such consent will be void.

(4) Notwithstanding anything in this Agreement to the contrary, Dealer is not authorized to, and will not, provide any maintenance service for the Metering Components. For the avoidance of doubt, in no event will Dealer engage in any of the following activities with respect to Metering Components: (a) producing or distributing any postage evidencing system based upon the Metering Components that generates U.S. postage; (b) repairing, refurbishing, remanufacturing, modifying, or destroying any component of a postage evidencing system that accounts for or authorizes the printing of U.S. postage; (c) owning or operating an infrastructure that maintains operating data for the production of U.S. postage, or accounts for U.S. postage purchased for distribution through a postage evidencing system; (d) owning or operating an infrastructure that maintains operating data that is used to facilitate registration with the Postal Service of customers of a postage evidencing system; or (e) removing or otherwise relocating a Metering Component unless requested by the USPS or PBI or with PBI's prior written consent.

## SECTION 5 - **DUTIES OF PBI**

### 5.01 **Duties Relating to the Sale & Promotion of PBI Products**

During the Term, PBI will:

(1) provide Dealer with the comprehensive Dealer tier program set forth on **Schedule C** (the **"Program"**). PBI reserves the right from time to time at its reasonable discretion to modify the Program and will provide Dealer with notice of any material changes;

(2) provide Dealer with current specifications of PBI's and related manufacturers' trademarks and logos, so that Dealer may use them in advertising and promotional materials in accordance with PBI guidelines, which will be provided to Dealer upon request; and

(3) permit Dealer to state it is a Dealer of the PBI Products in the course of promotion of such PBI Products, provided that Dealer will not use brand names or trademarks belonging to PBI or to any of the manufacturers of PBI Products in its own name and/or trade name and /or in its products and services trademarks, without the prior written consent of PBI.

### 5.02 **Training**

Sales, service and installation training will be provided by PBI to Dealer in accordance with the Policies and Procedures Manual.

## SECTION 6 - **RELATIONSHIP**

### 6.01 **Relationship**

(1) Dealer will at all times be an independent contractor and is not an employee or agent of PBI, or its Affiliates for any purpose whatsoever. Dealer has no authority to negotiate on behalf of PBI,

to establish or change prices or other terms relating to any sale of any Product(s) or other transaction involving PBI, to make any contract, written or verbal, to bind PBI to any third party, or to make any statement or perform any act of any kind on behalf of PBI other than to sell the PBI Products; and Dealer will not hold itself out as being authorized to do any of the foregoing or act or represent that it acts as agent, partner or employee of PBI or any of its Affiliates.

(2) Dealer will be solely responsible for its own acts and omissions including but not limited to Dealer entering into this Agreement. Dealer acknowledges that it has not paid any fee or other consideration for the right to become a PBI authorized dealer or to enter into this Agreement. Neither party intends for the relationship between them to constitute a franchise, employee-employer relationship or comparable activity or relationship under applicable law; and in the event this relationship is construed as a franchise, employee-employer relationship or comparable activity or relationship under applicable law, then this Agreement will be revised by the parties in good faith to the minimum extent necessary to preclude such a construction.

(3) None of the benefits that PBI or any of its Affiliates provide to their employees (including, but not limited to salary, bonus or incentive pay programs, or plans pertaining to retirement, deferred savings, stock purchase, disability, medical or dental) will be available to Dealer (or its officers, directors, employees, agents or representatives which for purposes of this paragraph will be included in the term "Dealer"). Dealer hereby waives its right to participate in any benefit programs maintained by PBI or any of its Affiliates (regardless of the timing of or reason for eligibility) to the extent Dealer may become eligible to participate in such programs. Dealer's waiver is not conditioned on any representation or assumption concerning Dealer's status under any common law test.

(4) All individuals used or employed by Dealer will be deemed Dealer's agents or employees and such individuals will not be considered employees, agents, or subcontractors of PBI or any of its Affiliates for any purpose whatsoever. Dealer assumes full responsibility for all actions of all such individuals.

(5) With respect to all such individuals, Dealer will be liable for payment of their compensation and for any and all tax and other legal obligations, including but not limited to withholding and reporting of income and social security taxes, contributing to social security and unemployment taxes and the obtaining of customary levels of worker's compensation insurance, disability insurance, general liability insurance, and a fidelity bond covering its employees, imposed with respect to such individuals or employees, by applicable federal, state and/or local law and the collection, remittance and payment of any applicable sales, use or similar tax.

(6) Dealer will not be covered under any insurance that PBI or any of its Affiliates may carry for its or their employees or business.

6.02 **Confidentiality**

(1) PBI Confidential Information has the meaning set forth in Section 1.01(6), Dealer Confidential Information has the meaning set forth in Section 1.01(3), and together PBI Confidential Information and Dealer Confidential information will be **"Confidential Information"**. Confidential Information does not include information that: (a) is already public or becomes available to the public through no breach of this Agreement by the receiving party; or (b) was in the receiving party's possession prior to receipt from the disclosing party and not subject to any obligation of confidentiality; or (c) is lawfully received independently from a third party who is not bound by an obligation of confidentiality owed to the disclosing party with respect to such information; or (d) is independently developed by or on behalf of the receiving party without use of any confidential/proprietary information.

(2) All Confidential Information is: (a) proprietary and confidential information of the respective parties; (b) will be kept confidential by the other party and used only in connection with its performance under this Agreement for the benefit of the disclosing party; and (c) may be disclosed by the receiving party only to its directors, officers, employees, attorneys and accountants (**"PBI Representatives"** or **"Dealer Representatives"**, as the case may be) who have a need to know such information for purposes of such party's performance under this Agreement. PBI and Dealer will, and will ensure that all PBI Representatives and Dealer Representatives, respectively, use all commercially reasonable efforts to safeguard Confidential Information against loss, theft, damage, unauthorized access, use, disclosure, modification or destruction (collectively, **"Unauthorized Use"**). The receiving party will promptly notify the disclosing party in writing upon becoming aware of, or suspecting, any non-compliance with this Section or any Unauthorized Use.

(3) Dealer is liable for any Unauthorized Use of PBI Confidential Information by any Dealer Representative, and PBI is liable for any Unauthorized Use of Dealer Confidential Information by any PBI Representative. Expiration or termination of this Agreement will not affect either party's obligations under this Section 6.02.

(4) If Dealer or any Dealer Representative, or PBI or any PBI representative, is compelled by a requirement of a government agency, a court, or by law or discovery to disclose any Confidential Information of the other party, the party being compelled to disclose will, to the extent permissible, promptly notify the other party in writing prior to making any disclosure to provide such party a reasonable opportunity to either waive any objection to such disclosure or request a remedy from the appropriate authority. Dealer and the Dealer Representatives, and PBI and the PBI representatives, will reasonably cooperate with the other party in its efforts to obtain such a remedy. If the party whose Confidential Information is being disclosed under compulsion waives its objections or is unsuccessful in its request or fails to make such a request, the party being compelled to disclose and the PBI Representatives or the Dealer Representatives, as the case may be, will furnish only that portion of the Confidential Information that is legally required.

(5) In addition to the above obligations, although PBI may possess (a) the identity of Dealer Customers, (b) the type and kind of service provided to Dealer's Customers in relation to PBI Products, and (c) supplies ordered or received from PBI, PBI will not use such information to market PBI Products, services or supplies to such Dealer Customers, unless otherwise permitted in writing by Dealer, during (i) the Term and one year thereafter, if this Agreement expires and is not otherwise terminated earlier by PBI pursuant to Section 7.01(2) herein, or (ii) the Term, if PBI terminates this Agreement pursuant to Section 7.01(2) herein. Notwithstanding the foregoing, nothing in this Agreement will prevent PBI from marketing, selling, leasing or renting to PBI Customers it obtained prior to this Agreement or during the Term, but not in connection with any efforts of PBI or Dealer under this Agreement, who may also be Dealer Customers.

6.03 **Limitations**

(1) Dealer must confine its sales of PBI Products to the Territory and must not, directly or indirectly, deliver any PBI Products to any place outside the Territory or knowingly sell any PBI Product for delivery to any such place. Notwithstanding the foregoing, in the event that a Customer maintains operations within the Territory and is authorized to make purchasing decisions for locations outside of the Territory, Dealer will be subject to the rules of territory splits as described in Section 1.07 of the Policy and Procedures Manual.

(2) Dealer will not directly or indirectly, sell or promote to anyone any product that would compete with any of the PBI Products during the Term, unless it is an existing product line of Dealer and

outlined in this Agreement on **Schedule D**; provided that Dealer will not be permitted to sell or promote an existing product line identified on **Schedule D** to the extent it would be replacing existing PBI Products.

(3) If Dealer wishes to sell any material part of its assets pertaining to the business of distributing PBI Products, Dealer must notify PBI of the proposed sale including the name of the prospective purchaser and the terms of sale. PBI will have thirty (30) days after receipt of such notice to elect to purchase the assets on the same terms and a further forty-five (45) days to complete the purchase. If PBI does not notify Dealer within such thirty (30) day period that PBI wishes to purchase the assets or complete the purchase within the following forty-five (45) day period, Dealer may sell the assets to the prospective purchaser, on terms no more favourable than those set out in the notice to PBI.

6.04 **Proprietary Rights**

(1) **"PBI Intellectual Property"** means intellectual property relating to the PBI Products, including the Software, and/or the service thereof that PBI uses or may use in connection with the PBI Products and/or the service thereof, including, without limitation: (a) all patents (including any continuations, continuations in part, renewals and applications for any of the foregoing; (b) copyrights (including any registrations and applications therefor and whether registered or unregistered); (c) trade secrets, computer software, databases, works of authorship, mask works, technology, trade secrets and other know-how, proprietary processes, algorithms, models, user interfaces, inventions, discoveries, ideas, techniques, methods, source codes, object codes, and methodologies; and (d) trademarks. PBI Intellectual Property is, and will remain, the sole and exclusive property of PBI and/or its licensors. Nothing in this Agreement transfers or conveys to Dealer title or ownership of PBI Intellectual Property or any rights therein.

(2) Dealer will not remove, alter, cover or obfuscate any proprietary notice, including any copyright, patent or trademark notice or legend, on PBI Products, Software, related documentation, and any other materials provided by PBI pursuant to this Agreement.

(3) During the Term, Dealer is authorized to use PBI's trademarks within the Territory solely in connection with the promotion and sale of PBI Products and provided that Dealer adheres to PBI's standard guidelines for the use of such trademarks, as such guidelines are provided by PBI from time to time. Dealer will not affix any of PBI's trademarks to any products other than PBI Products.

(4) Dealer will not, and will not permit any Customer or other third party, without PBI's prior written consent, to: (a) copy, disclose, or make modifications to any part of the PBI Products, including without limitation the Software; (b) translate, decompile, disassemble, reverse engineer or otherwise decode or alter the Software, (c) circumvent, obfuscate, or remove any functions in the Software, (d) alter or remove any copyright and/or patent notices in the Software; or (e) defeat or subvert or attempt to defeat or subvert the licensing system, verification, or tracking mechanisms of the Software. In the event that any of the foregoing occurs, in addition to any other rights and remedies PBI may have, any and all warranties with respect to the applicable PBI Products and/or Software will be void.

6.05 **Indemnification**

(1) Dealer must not give any representation, warranty or guarantee with respect to PBI Products except as authorized in writing by PBI. Dealer will indemnify and hold harmless PBI, its Affiliates, the shareholders, officers, directors, employees and representatives of PBI and its Affiliates, and the successors and assigns of any of the foregoing (the **"PBI Indemnified Parties"**) and, at PBI's option, defend the PBI Indemnified Parties, against any costs, expenses (including reasonable attorney's

fees), judgments and other liabilities, of any nature or kind whatsoever, arising out of or based upon, or alleged to have arisen out of or to have been based upon: (a) Dealer's breach of this Agreement or Dealer's action outside its scope of authority expressly granted in this Agreement; (b) Dealer's or any Dealer Representative's negligence, fraud, willful misconduct, misrepresentation or breach of any contract with a third party; (c) any claim by Dealer or any Dealer Representative; or (d) any other claim that PBI is in any manner responsible for any act or omission of Dealer or any Dealer Representative, including, but not limited to, any physical injury (including death) or damage to persons or property.

(2) PBI will indemnify, defend and hold Dealer harmless from all claims and suits (including reasonable attorney's fees) against Dealer by a third party alleging infringement of a copyright, trademark, trade dress, trade secret or patent arising out of Dealer's authorized distribution of the PBI Products during the Term. PBI will have no obligation to indemnify, defend and hold Dealer harmless with respect to any claim or suit that is: (a) based on an event that would cause any warranties for the PBI Product(s) to be inapplicable; or (b) not based on the most current release of any Software made available to Dealer to the extent that such claim or suit could have been avoided or mitigated by the Dealer's distribution of such current release. The provisions of this Section constitute the entire liability of PBI with respect to a copyright, trademark, trade dress, trade secret or patent infringement claim or suit. Dealer will give PBI prompt written notice of any matter or third-party action, litigation, claim or demand with respect to which Dealer intends to seek indemnification under this Agreement (a **"Claim"**), provided, that the failure or delay in providing such notice will not relieve PBI from any obligation to indemnify Dealer except to the extent that such failure or delay prejudices the defense of any such claim. PBI may, at its election, conduct and control the defense of the Claim with counsel selected by it, subject to Dealer's consent, not to be unreasonably withheld or delayed. Dealer will cooperate with PBI and its counsel in investigating and/or contesting any Claim. No compromise or settlement of the Claim may be effected by PBI without Dealer's prior written consent (which will not be unreasonably withheld or delayed), unless (i) there is no finding or admission of any violation of law by PBI, and (ii) the sole relief provided is monetary damages that are paid in full by PBI.

6.06 **Limitation of Liability**

**EXCEPT FOR (A) DEALER'S OBLIGATIONS UNDER SECTIONS 6.02, 6.03 AND 6.04 OF THIS AGREEMENT, (B) INDEMNIFICATION SOUGHT WITH RESPECT TO THIRD PARTY CLAIMS UNDER SECTION 6.03, OR (C) RELIEF SOUGHT UNDER SECTION 6.02 WITH RESPECT TO BREACHES OF CONFIDENTIALITY, NEITHER PBI NOR DEALER MAY RECOVER ANY CONSEQUENTIAL, INCIDENTAL, PUNITIVE, SPECIAL, EXEMPLARY OR OTHER INDIRECT OR SPECIAL DAMAGES OR LOSSES (SUCH AS BUT NOT LIMITED TO LOSS OF PROFITS, GOODWILL, OR BUSINESS OPPORTUNITY) EVEN IF PBI OR DEALER HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES OR LOSSES AND REGARDLESS OF WHAT LEGAL OR EQUITABLE THEORY MAY BE ASSERTED. EXCEPT AS SET FORTH ABOVE IN THIS SECTION 6.06, IN NO EVENT WILL THE TOTAL LIABILITY OF PBI OR DEALER OR ANY OF THEIR AFFILIATES UNDER THIS AGREEMENT EXCEED THE AMOUNT OF PAYMENTS MADE BY THE OTHER IN THE SIX (6) MONTHS PRECEEDING THE CLAIM GIVING RISE TO SUCH LIABILITY.**

6.07 **Employees and Customers of PBI**

(1) During the Term and for two (2) years after its termination or expiration, Dealer will not, and will cause Dealer Representatives not to, without the prior written consent of PBI, directly or indirectly: (a) solicit for employment or hire any officer or employee of PBI, or (b) assist any other person or entity to solicit for employment or hire any such officer or employee; provided, however, that the foregoing provision will not preclude Dealer or Dealer Representatives from making good faith

generalized solicitations for employees through advertisements and from hiring any such officer or employee who responds to any such advertisement as long as such advertisements are not targeted or focused on the officers and employees of PBI or any of its Affiliates.

(2) Dealer will be deemed to have breached this Section 6 if any Dealer Representative engages in any activity that Dealer is prohibited from engaging in under this Section 6.

SECTION 7 - **TERM AND TERMINATION**

7.01 **Term; Termination**

(1) This Agreement will commence on the Effective Date hereof and continue in effect for a period of three (3) years, unless terminated sooner as permitted under this Agreement (the **"Term"**).

(2) PBI may terminate this Agreement:

(a) immediately by notice to Dealer if Dealer breaches the terms and conditions of Section 2.01 ("Appointment"), Section 4.03 ("Metering Components"), Section 6.02 ("Confidentiality"), Section 6.03(2), or Section 6.04 ("Proprietary Rights") hereof;

(b) immediately by notice to Dealer if Dealer ceases to carry on business or sells the assets pertaining to the business of distributing PBI Products or becomes insolvent or commences any proceedings or any proceedings are commenced against it under any bankruptcy or insolvency legislation or makes an assignment for the benefit of its creditors or proposes a compromise or arrangement to its creditors or if a receiver of its assets or any substantial part thereof is appointed by notice to Dealer;

(c) immediately by notice to Dealer if Dealer knowingly submits to PBI or any other person any false, misleading, or fraudulent claims for reimbursement, refund, credit, rebate, allowance, discount, bonus, its Product Sales Expectation Targets or any other payment, or engages in any other dishonest or misleading practice;

(d) if Dealer breaches any provision of this Agreement other than one set forth in Section 7.01(2)(a), and such breach is not remedied within thirty (30) days after notice of such breach has been given to the Dealer;

(e) if Dealer fails to meet any of its Product Sales Expectation Targets set for a given six-month period, and fails to cure that default by the end of the six-month period following the period in which Dealer failed to meet the Product Sales Expectation Targets, by achieving the Product Sales Expectation for the full twelve-month period being reviewed. Notwithstanding the foregoing, PBI, in its sole discretion, may review and reduce the Product Sales Expectation Targets for any quarter or other period of calculation, extend the period given Dealer to cure the default to meet the Product Sales Expectation Targets, and/or assist Dealer in establishing and monitoring mutually agreed upon business plans and strategies with the purpose of assisting Dealer in meeting its Product Sales Expectation Targets;

(f) if Dealer fails to pay when due any undisputed amount that is owed to PBI under this Agreement, and fails to cure such failure within fifteen (15) days after receipt of written notice of such breach;

(g) if Dealer breaches any material term or condition of any other agreement between Dealer and PBI or any of its Affiliates, and Dealer fails to substantially cure such breach within fifteen (15) days' notice of such breach from PBI or any applicable Affiliate; or

(h) in the event of a Status Change, as set forth in Section 8.07 of this Agreement, following the notice by Dealer set forth in such Section.

(3) After expiration of the Term:

(a) If Dealer is capable and willing to continue to service the PBI Products they sold to Customers, PB will continue to sell the Dealer parts and supplies at its then-current wholesale prices in quantities necessary for Dealer to be able to continue to service its existing Customers for a period of five (5) years after termination or expiration of this Agreement.

(b) If Dealer is unable or unwilling to maintain its inventory of PBI Products, then PBI may, in its sole discretion, repurchase all of Dealer's inventory of PBI Products at the prices paid therefor by Dealer.

(c) Dealer will return all promotional material and other information relating to the PBI Products to the PBI;

(d) Dealer will immediately return to PBI, any and all machinery, equipment, documents or other things provided to Dealer by or on behalf of PBI; and

(e) Dealer will continue to service and/or repair PBI Products for the then applicable warranty period for each PBI Product. Except for such purposes, and then only to satisfy such warranty period, Dealer will promptly upon termination remove all signs and otherwise cease to publicize its distributorship hereunder or to otherwise identify itself with the PBI Products or the PBI trademarks or the trademarks of any of PBI's Affiliates. If Dealer fails to perform service for Customers under any then-current warranty period, Dealer will pay to PBI all amounts incurred by PBI to cover the cost of such warranty services and/or repairs.

## SECTION 8 - GENERAL

### 8.01 Notice

Any notice or other communication provided by Dealer or PBI to the other in connection with this Agreement must be in writing and delivered by hand, or sent by registered or certified mail (return receipt requested) or by overnight nationally recognized courier, or by facsimile (with confirmation by first class mail, postage prepaid) to the addresses set forth below, or to such other address as to which such party has given notice to the other in the above manner. Notice by PBI may be sent to an email address supplied by Dealer to PBI. Any notice is deemed delivered on the day delivered by hand or by overnight courier or on the date shown on the return receipt or on the date posted on such web site or on the date sent to such email address.

Any notice to PBI must be sent to:

Pitney Bowes Inc.
3001 Summer Street
Stamford, Connecticut 06926
Attn: Assistant General Counsel – U.S. Mailing Division

Any notice to Dealer must be sent to:

Pacific Office Automation
14747 Northwest Greenbrier Parkway
Beaverton, OR 97006

8.02 **Further Assurances**

Each party must from time to time execute and deliver all such further documents and instruments and do all acts and things as the other party may reasonably require to effectively carry out or better evidence or perfect the full intent and meaning of this Agreement. In particular, but without limiting the generality of the foregoing, Dealer hereby consents to PBI's performance of an annual credit check on Dealer as set forth in Section 1.03 of the Policies and Procedures Manual.

8.03 **Entire Agreement**

This Agreement constitutes the entire agreement between the parties hereto with respect to the subject matter hereof and cancels and supersedes any prior understanding or agreement between the parties hereto with respect to the subject matter hereof. There are no representations, warranties, terms, conditions, undertakings or collateral agreements, express, implied or statutory, between the parties other than as set forth in this Agreement. In the event of any conflict between the provisions of this Agreement and the provisions of any purchase order made by Dealer hereunder, the provisions of this Agreement will prevail.

8.04 **Amendment and Waiver**

No modification of or amendment to this Agreement will be valid or binding unless set forth in writing and duly executed by both of the parties hereto and no waiver of any breach of any term or provision of this Agreement will be effective or binding unless made in writing and signed by the party purporting to give the same and, unless otherwise provided, will be limited to the specific breach waived.

8.05 **Successors and Assigns**

This Agreement will inure to the benefit of and be binding upon the Parties and their respective successors and permitted assigns. Dealer may not assign its rights under this Agreement without the prior written consent of PBI, which must not be unreasonably withheld.

8.06 **Taxes**

Dealer will pay any and all applicable taxes resulting from this Agreement except taxes based on PBI's net income. Dealer will bear any personal property taxes assessable on PBI Products on or after their shipment from PBI. Upon receipt from Dealer of a valid Tax Exemption Certificate, PBI will not charge otherwise applicable federal and/or provincial taxes.

8.07 **Status Change**

Dealer must notify PBI in writing when possible thirty (30) days prior to, and seek PBI's consent in order to continue the Agreement for, any of the following:

1. Sale of Dealer;
2. Significant change in Dealer equity ownership other than to an immediate family member;

3. Merger or acquisition of Dealer;
4. Legal name change of Dealer; or
5. Relocation or closing of an Authorized Location

PBI reserves the right to withhold its consent to a continuation of this Agreement in the event of any of the foregoing changes in status, in PBI's sole discretion; provided that such consent is not unreasonably withheld.

8.08 **Severability/Waiver**

If any provision of this Agreement is determined by a court of competent jurisdiction to be illegal, invalid, or unenforceable, the remaining provisions will remain in full force and effect.

8.09 **Injunctive Relief**

(a) The covenants of Dealer set forth Sections 2.01(7) (PBI Dealer Code of Conduct), 4.03 (Metering Components), 6.07 (Employees and Customers of PBI), 6.02 (Confidentiality), and 6.03(Limitations) are essential elements of this Agreement; (b) any breach by Dealer of any provision of such Sections or any Unauthorized Use will result in irreparable injury to PBI; (c) remedies at law may be inadequate to protect PBI against any actual or threatened breach of such Sections or against any actual or threatened Unauthorized Use; and (d) without prejudice to any other rights and remedies otherwise available to PBI, PBI will be entitled to equitable relief, including injunctive relief, and an equitable accounting of all earnings, profits or other benefits arising therefrom, as well as such other damages as may be appropriate. Dealer further waives, and will use all reasonable efforts to cause Dealer's representatives to waive, any requirement for the securing or posting of any bond in connection with any such remedy.

8.10 **Waiver of Breach**

The waiver by either party of a breach of any provisions of this Agreement by the other party will not operate or be construed as a waiver of any subsequent breach by such party.

8.11 **Force Majeure**

PBI and Dealer will be excused from any obligation under this Agreement (other than payment, confidentiality and intellectual property right obligations) to the extent and for so long as non-fulfillment of such obligation is due to fire, flood, storm, earthquake, epidemic, strike, civil war, act of terrorism, riot, explosion, outage of the Internet, computer virus or contamination, compliance with any law, order or decree of any court or government agency or any other act whatsoever, whether similar or dissimilar to those referred to in this Section, which is beyond the reasonable control of such party affected; provided, however, that such party's non-fulfillment of its obligation does not exceed ninety (90) days in duration.

8.12 **Customer Listings**

PBI is permitted to list Dealer's name on PBI's marketing materials as an Authorized Dealer of PBI.

8.13 **Waiver of Right to Jury Trial**

PBI AND DEALER EACH WAIVES, WITHOUT LIMITATION, ANY RIGHT IT MIGHT OTHERWISE HAVE TO TRIAL BY JURY ON ANY AND ALL CLAIMS ASSERTED AGAINST

THE OTHER. EACH PARTY ACKNOWLEDGES THAT IT HAS HAD A FULL OPPORTUNITY TO CONSULT WITH COUNSEL CONCERNING THIS WAIVER, AND THAT THIS WAIVER IS INFORMED, VOLUNTARY, INTENTIONAL, AND NOT THE RESULT OF UNEQUAL BARGAINING POWER.

8.14 **Governing Law**

This Agreement will be governed by and construed according to the laws of the State of Connecticut, without regard to its conflict of laws principles. However, neither the Connecticut Franchisee Act nor any other law or regulation governing franchise relationships will apply to this Agreement or to the relationship between PBI and Dealer.

IN WITNESS WHEREOF, PBI and Dealer have caused their respective authorized representatives to execute this Agreement as of the Effective Date.

| | |
|---|---|
| **PITNEY BOWES INC.** | **PACIFIC OFFICE AUTOMATION** |
| By________________________ | By________________________ |
| Name: Gregory Pattison | Name: Doug Pitassi |
| Title: Vice President, New Business | Title: President |

# SCHEDULE A

## PBI PRODUCTS

Listed below are the PBI Products that Dealer is authorized to buy in accordance with PBI's current Dealer price list and resell to Customers. Dealer is authorized to sell PBI Products prior to training, but must have either been trained by the date of the installation or sub-contract all installation services to another dealer who has been trained or to PBI itself.

PBI Products are current as of the Effective Date of this Agreement and are subject to change upon written notice from PBI.

The list of PBI Products and Services that Dealer is authorized to resell is based upon the Territory, and Dealer's current training and product related skills and expertise.

| PBI Product Type |
|---|
| Mail Finishing Equipment |
| Mail Creation Equipment |
| Software Solutions |
| Parts and Supplies |

## SCHEDULE B

## TERRITORY

Subject to the terms and conditions of this Agreement, Dealer will have the right to sell PBI Products and Services to Customers in the following Territory.

Notwithstanding any other terms or conditions of this Agreement, PBI reserves the right to modify or revoke any one or more of the counties or zip codes listed below if after ninety (90) days, in PBI's sole

judgment and discretion, Dealer has not demonstrated reasonable sales results with respect to such Territory.

| Counties or Zip Codes | |
|---|---|
| Gila, AZ | Jackson, OR |
| Greenlee, AZ | Jefferson, OR |
| Maricopa, AZ | Josephine, OR |
| Pima, AZ | Klamath, OR |
| Pinal, AZ | Lake, OR |
| Alameda, CA | Lane, OR |
| Contra Costa, CA | Lincoln, OR |
| Marin, CA | Linn, OR |
| Napa, CA | Marion, OR |
| San Francisco, CA | Morrow, OR |
| San Mateo, CA | Multnomah, OR |
| Santa Clara, CA | Polk, OR |
| Solano, CA | Sherman, OR |
| Sonoma, CA | Tillamook, OR |
| Adams, CO | Umatilla, OR |
| Arapahoe, CO | Wasco, OR |
| Boulder, CO | Washington, OR |
| Clear Creek, CO | Wheeler, OR |
| Denver, CO | Yamhill, OR |
| Douglas, CO | Box Elder, UT |
| Elbert, CO | Cache, UT |
| Gilpin, CO | Davis, UT |
| Jefferson, CO | Juab, UT |
| Benewah, ID | Morgan, UT |
| Bonner, ID | Rich, UT |
| Kootenai, ID | Salt Lake, UT |
| Bernanillo, NM | Summit, UT |
| Cibola, NM | Tooele, UT |
| Guadalupe, NM | Utah, UT |
| Los Alamos, NM | Wasatch, UT |
| San Miguel, NM | Weber, UT |
| Sandoval, NM | Benton, WA |
| Sante Fe, NM | Clallam, WA |
| Socorro, NM | Clark, WA |
| Taos, NM | Cowlitz, WA |
| Valencia, NM | Ferry, WA |
| Benton, OR | Franklin, WA |
| Clackamas, OR | Grays Harbor, WA |
| Clatsop, OR | Island, WA |
| Columbia, OR | Jefferson, WA |

| | |
|---|---|
| Coos, OR | King, WA |
| Crook, OR | Kitsap, WA |
| Curry, OR | Lewis, WA |
| Deschutes, OR | Mason, WA |
| Douglas, OR | Pacific, WA |
| Gilliam, OR | Pend Oreille, WA |
| Grant, OR | Pierce, WA |
| Harney, OR | Skamania, WA |
| Hood River, OR | Snohomish, WA |
| Stevens, WA | Spokane |
| Thurston, WA | |
| Wahkiakum, WA | |
| Whitman, WA | |
| | |
| | |
| | |
| | |
| | |
| | |

# SCHEDULE C

## TIER PROGRAM

**Tier 3**

**SCHEDULE D**

**EXISTING COMPETITIVE PRODUCTS**

| MANUFACTURER | PRODUCT | PRODUCT | PRODUCT | PRODUCT | PRODUCT |
|---|---|---|---|---|---|
| Francotyp-Postalia | All | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |