Philip S. Van Der Weele, OSB #863650
Email: phil.vanderweele@klgates.com
Elizabeth White, OSB #204729
Email: elizabeth.white@klgates.com
K&L GATES LLP
One SW Columbia Street, Suite 1900
Portland, Oregon 97204
Telephone: (503) 228-3200
Facsimile: (503) 248-9085

Attorneys for Defendants Pitney Bowes Inc.,
Pitney Bowes Global Financial Services LLC,
The Pitney Bowes Bank, Inc., and Wheeler
Financial from Pitney Bowes Inc.

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| PACIFIC OFFICE AUTOMATION INC., an Oregon corporation,<br><br>Plaintiff,<br><br>v.<br><br>PITNEY BOWES INC., a Delaware corporation; PITNEY BOWES GLOBAL FINANCIAL SERVICES LLC, a Delaware limited liability company; THE PITNEY BOWES BANK, INC., a federal banking institution; and WHEELER FINANCIAL FROM PITNEY BOWES INC., a Delaware corporation,<br><br>Defendants. | Case No. 3:20-cv-00651-AC<br><br>**DEFENDANTS' MOTION TO COMPEL FURTHER RESPONSES TO INTERROGATORIES FROM PLAINTIFF PACIFIC OFFICE AUTOMATION INC.**<br><br>**Oral Argument Requested** |

## L.R. 7-1 CERTIFICATION

Pursuant to L.R. 7-1, the undersigned counsel for Defendants certifies that he made a good faith effort to resolve the disputes described herein by numerous emails and by telephone conference on January 20, 2021, but that the parties have not been able to resolve those disputes.

## MOTION

Pursuant to Federal Rules of Civil Procedure ("FRCP") 26 and 37, and L.R. 37-1, Pitney Bowes Inc. ("PBI"), Pitney Bowes Global Financial Services LLC, The Pitney Bowes Bank, Inc., and Wheeler Financial from Pitney Bowes Inc. (together with PBI, "Defendants") move the Court for an Order compelling Plaintiff Pacific Office Automation Inc. ("POA" or "Plaintiff") to provide complete responses to Interrogatories 1, 2, 4-7, 10-11, and 13-14 from Defendants' First Set of Interrogatories ("Interrogatories").[1]

## MEMORANDUM

### I.  INTRODUCTION

This case arises out of the expiration of a contract between POA and PBI that enabled POA to act as a dealer for PBI and to buy and resell certain of PBI's products. That contract, a dealer agreement attached as Exhibit 1 to the Complaint (ECF No. 1-1) (the "Dealer Agreement"), was effective June 30, 2016 and had a three-year term. In 2019, POA and PBI extended the Dealer Agreement three times while they attempted to negotiate a replacement agreement. They never came to terms on a replacement agreement, however, and the Dealer Agreement expired at its conclusion in late 2019. About four months later, POA filed this lawsuit, claiming that PBI had fraudulently induced POA to enter into the Dealer Agreement in

---

[1] This Motion covers only issues as to which the meet-and-confer process is complete. There are additional issues regarding POA's responses both to Defendants' Interrogatories and First Requests for Production of Documents as to which the meet-and-confer process is not yet complete. Defendants reserve their right to file additional motions to compel on those issues should they not be resolved through the meet-and-confer process.

the first place, breached the Dealer Agreement, competed unfairly with POA, and monopolized or attempted to monopolize some market in which POA competed with PBI.

This Motion arises out of Defendants' Interrogatories, consisting of sixteen interrogatories served on October 9, 2020.[2] Because POA did not respond to the Interrogatories or to Defendants' First Requests for Production of Documents ("RFPDs") also served on October 9, until nearly two months later, on December 4, 2020,[3] POA has waived all objections to the Interrogatories and RFPDs. L.R. 26-5(a).[4]

This Motion is not, however, about waived objections. Rather, it is about the sufficiency of POA's responses, which rely heavily on the documents POA produced on December 4 and December 14, 2020. Taking POA's written answers and its two document productions together, POA's response to almost every Interrogatory is deficient. One deficiency common to a number of the responses is that, although POA is purporting to answer by producing documents, POA has failed to identify the documents responsive to the Interrogatory with the specificity required by FRCP 33(d)(1). In addition, other responses fail to satisfy FRCP 33(d)(1) for other reasons, and/or are also incomplete or non-responsive in violation of FRCP 33(b)(3)'s requirement that each Interrogatory be answered "fully."

---

[2] Declaration of Philip S. Van Der Weele In Support Of Defendants' Motion to Compel ("Van Der Weele Decl.") ¶ 4.

[3] Van Der Weele Decl. ¶¶ 5-7; Exs. 1 (POA's Interrogatory Responses) and 2 (POA's RFPD Responses).

[4] On November 6, 2020, in response to an email from POA's counsel that same day, Defendants' counsel agreed to "discuss with [POA's counsel] a reasonable extension of time for POA to actually produce its documents, but I would, of course, like to hone in a specific date." As to the actual written responses to the Interrogatories and RFPs, which would contain objections, if any, Defendants' counsel stated: "If, however, you are planning to object to any of the document requests or interrogatories, I want to see those objections in writing on November 9 as required." Van Der Weele Decl. ¶ 10; Exhibit 4 (emails between Plaintiff's counsel and Defendants' counsel). Nonetheless, POA did not provide its written responses until December 4, 2020, thereby waiving all objections.

II.   ARGUMENT

    **A. POA Has Failed to Comply with FRCP 33(d)(1) in Designating Documents in Response to Interrogatories 1, 2, 4, 5(a)-(c), and 6.**

Interrogatories 1, 2, 4, 5(a)-(c), and 6 ask POA to identify certain specific information that it is relying on to support various factual allegations in its Complaint. POA responded to these Interrogatories by relying on FRCP 33(d)(1), which permits a responding party to produce business records in answer to an interrogatory so long as the party "specif[ies] the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could." POA relied on FRCP 33(d)(1) by referring in its responses to a spreadsheet that POA provided on December 4, 2020 (the "December 4 Spreadsheet").[5] The December 4 Spreadsheet provides To/From/Date information for about 100 emails and, in addition, the Interrogatory number to which each email responds.

This identification of some emails in response to Interrogatories 1, 2, 4, 5(a)-(c) and 6 fails to comply with FRCP 33(d)(1) for two independently sufficient reasons. First, in its Interrogatory Responses, POA refers to the December 4 Spreadsheet as containing "examples of" or "a number of" communications responsive to the Interrogatories.[6] That language implies that among the more than 15,000 emails POA produced but that are *not* listed on the December 4 Spreadsheet are additional documents that are also responsive to these Interrogatories. POA is essentially telling Pitney Bowes to figure out for itself which of more than 15,000 documents POA is relying on for the various factual allegations in its Complaint, instead of complying with FRCP 33(d)(1). If there are no other responsive documents, POA must say so. If there are other responsive documents from either of POA's two productions, POA must add them to the December 4 Spreadsheet.

---

[5] Van Der Weele Declaration ¶ 9; Ex. 3.

[6] *See* Van Der Weele Decl. Ex. 1 at 4 (response to Interrogatory 1), 5 (response to Interrogatory 2), 6 (response to Interrogatories 4, 5), and 7 (response to Interrogatory 6).

Second, and likewise reflecting POA's unwillingness to specify which documents correlate to which Interrogatories in order to enable Defendants to understand what documents POA is relying on to support what allegations, POA did not specify which documents it relied upon in answering each distinct Interrogatory. Rather, in response to each RFPD that asked POA to "Produce any and all Documents You relied upon in answering Defendants' Interrogatory [#]," POA provided an identical response, one that identified the *entirety* of its production:

> Any and all documents used/relied upon in answering the Interrogatories have been produced via Dropbox, which includes several thousand email communications (in native format) and additional documents bearing Bates numbers **POA 000001 – 000223**.[7]

Moreover, with limited exceptions not relevant here, POA has not identified, in connection with its document productions, to what RFPD each document produced responds. Thus, POA is in effect saying that every single document that it produced (which includes more than 15,000 emails) is responsive to each and every one of the sixteen Interrogatories. This is nonsense, as the Interrogatories cover the wide range of topics pled in the Complaint. Indeed, the December 4 Spreadsheet, incomplete as it is, nevertheless proves the unremarkable proposition that a given document is not responsive to all sixteen Interrogatories.

In a factually similar case, the District Court of Nevada held that a producing party does not provide the "sufficient detail" required under FRCP 33(d)(1) where it refers the receiving party to "a wide range of correspondence." *Talbot v. Sentinel Ins. Co.*, No. 2:11-CV-01766-MMD, 2012 WL 5288167, at *1 (D. Nev. Oct. 24, 2012) (granting motion to compel plaintiff to provide further response to interrogatory where it referred defendants to broad page ranges of production). Here, POA's non-compliance with FRCP 33(d)(1) is even more flagrant than that of the plaintiff compelled in *Talbot*, with POA having identified not just a broad range but almost its *entire* production as supporting its responses to each Interrogatory. The Court should

---

[7] Van Der Weele Decl. Ex. 2 at 5-9.

require POA to comply with FRCP 33(d)(1) by ordering POA to identify the specific documents it is relying on to answer each of these Interrogatories.

### B. In Its Response to Interrogatory 7, POA Has Failed to Comply with FRCP 33(d)(1) and Has Failed to Answer "Fully" as Required by FRCP 33(b)(3).

In Interrogatory 7, Defendants ask POA to provide certain information about each of the alleged misrepresentations that form the basis of POA's claim that PBI fraudulently induced POA to enter into the Dealer Agreement:

> **INTERROGATORY NO. 7:** With respect to each "material misrepresentation[]
> to POA" or "omi[ssion] of material facts from POA" (as alleged in paragraph 90
> of the Complaint), identify (a) the statement made or the material fact omitted; (b)
> the employee, representative, agent or contractor of Defendants who made the
> alleged misrepresentation or failed to disclose the material fact omitted; and (c)
> the communication(s) in which the misrepresentations were made or the material
> facts were omitted; and (d) the date of the misrepresentation or omission.

POA failed to answer this Interrogatory fully. POA referred back to paragraphs 46-55 of the Complaint instead of systematically identifying each alleged misrepresentation and systematically providing the requested information for each alleged misrepresentation.[8] In addition, the response was ambiguous as to whether some of the alleged misrepresentations were written or oral. Finally, as to the alleged misrepresentations that were unambiguously in writing, POA has provided some document names but has failed to provide sufficient identifying information, such as the bates numbers, for those documents.

### C. POA Has Failed to Answer Interrogatories 10 and 11 "Fully" as Required by FRCP 33(b)(3).

The first element POA must prove for its antitrust claims is a relevant market: What market did Defendants allegedly monopolize or attempt to monopolize? *See, e.g.*, *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 459 (1993) (explaining that "the dangerous probability of monopolization in an attempt case . . . requires inquiry into the relevant product and geographic market and the defendant's economic power in that market"); *Walker Process Equip.*,

---

[8] Van Der Weele Decl. Ex. 1 at 7-8.

*Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172, 177 (1965) ("Without a definition of that market there is no way to measure [a defendant's] ability to lessen or destroy competition."). In Interrogatory 10 Defendants ask POA to identify the products that are "included in the 'postage equipment market' as that phrase is used in Paragraph 106 of the Complaint."[9]  Interrogatory 11 asks POA to identify, for each product identified in response to Interrogatory 10, each company that offers that product for sale or lease.[10]

      POA has not answered either Interrogatory.  In response to Interrogatory 10, POA has merely referred back to paragraphs in the Complaint, none of which is the paragraph 106 that the Interrogatory asks about: "The relevant market is expressly defined in paragraphs 3-5, 31-36 of the Complaint."[11]  Moreover, the word "market" appears in only one of those paragraphs—paragraph 31—and there it is part of the phrase "<u>sub-market of mailing equipment</u>" (ECF No. 1 at 8, ¶ 31), which is very different than the phrase "<u>postage equipment market</u>" that appears in paragraph 106 (ECF No. 1 at 21, ¶ 106) and that is the subject of Interrogatory 10.  Paragraph 31 is also the only paragraph listed in POA's response that identifies products, listing, among other things, scales, sealers, and feeders.  But neither paragraph 31 nor any other paragraph says whether scales compete with sealers, or whether sealers compete with feeders, or whether scales, sealers, and feeders are even sold or leased on a standalone basis.  Given that market definition is the essential first element of a monopolization and attempt to monopolize claim, the Court should compel POA to identify the products that it contends make up the relevant market for antitrust purposes.

      To make this requested identification very concrete, it is worth noting that, in its document production, POA has produced at least two "price books" that it received from PBI—booklets containing 68 pages of pictures and descriptions of dozens of PBI's products and PBI's

---

[9] *Id.* at 9.

[10] *Id.* at 10.

[11] *Id.*

Page 6 – DEFENDANTS' MOTION TO COMPEL

K&L Gates LLP
One SW Columbia Street, Suite 1900
Portland, Oregon  97204
Telephone: +1 503 228 3200

Manufacturer's Suggested Resale Price for each.[12]  POA undoubtedly has similar price books from one of PBI's competitors, Francotyp-Postalia ("FP"), because, as explained in more detail in connection with Interrogatories 13 and 14 in Section D, *infra* p. 7, POA was also a dealer of FP products during the term of its Dealer Agreement with PBI.  Therefore, at a minimum, POA should be compelled to specify, using these PBI and FP price books, which products it contends are in the market that it alleges Defendants monopolized or attempted to monopolize.

As to Interrogatory 11, POA responded by saying that every dealer who sold any of the (still unidentified) relevant products was a competitor, and that POA did not know who all these dealers were.  Seeing that response, PBI clarified, in writing, that the word "company" in Interrogatory 11 should be read as referring to <u>manufacturers</u> of the products that POA contends are in the relevant market, not to dealers or other resellers or leasers of the equipment.  With this clarification, POA has no excuse not to respond to the extent of its knowledge, which includes at least the manufacturers PBI and FP.  The Court should compel POA to respond fully to Interrogatory 11, with the word "manufacturer" replacing the word "company."

**D. In Its Responses to Interrogatories 13 and 14, POA Has Failed to Comply with FRCP 33(d)(1) and Has Failed to Answer "Fully" as Required by FRCP 33(b)(3).**

Interrogatories 13 and 14 both relate to PBI's affirmative defense of material breach by POA and to PBI's pending counterclaim for POA's breach of section 6.03(2) of the Dealer Agreement.  ECF No. 1-1 at 8-9.  Section 6.03(2) generally permitted POA to continue to sell and promote the products of a competing manufacturer, FP, while it was a dealer of PBI products, but <u>not</u> "to the extent it would be replacing existing PBI Products."  *Id.* at 9, 22.  Defendants have evidence, in the form of communications from certain customers who were terminating their leases with one of the Defendants and replacing them with leases that POA had arranged for FP products instead, that POA breached section 6.03(2).  Defendants do not,

---

[12] Van Der Weele Decl. ¶¶ 11-13; Exs. 5-7.

Page 7 – DEFENDANTS' MOTION TO COMPEL

K&L Gates LLP
One SW Columbia Street, Suite 1900
Portland, Oregon  97204
Telephone: +1 503 228 3200

however, receive this information from customers systematically in the ordinary course of business, so they have no way of tracking each and every time POA replaced a customer's PBI products with FP products.  Accordingly, Interrogatory 13 asks POA to identify all of the customers to whom it sold or leased FP equipment during the term of POA's Dealer Agreement with PBI.[13]  Interrogatory 14 asks POA to identify the subset of those customers who were using PBI equipment up to the time POA converted them over to FP equipment.[14]

POA has relied on FRCP 33(d)(1) to respond to Interrogatories 13 and 14 and has identified the responsive documents as 35 pages of spreadsheets, bates numbered POA000224-258, with each row on a spreadsheet referencing a transaction involving POA and FP products.  Nevertheless, POA has not "fully" responded to Interrogatories 13 and 14, because nearly one-third of the pages (POA000235-246) do not include customer names.  POA should be compelled to produce versions of those spreadsheets that include customer names.

In addition, even though POA has identified the documents it is relying on to respond to Interrogatory 14, POA's response still does not comply with FRCP 33(d)(1).  Interrogatory 14 asks POA to identify a subset of transactions from Interrogatory 13: the transactions involving customers who had been using PBI products up until the time POA converted them over to FP products.  The spreadsheets do not contain this information.  Rather than providing it, POA has asserted that "[T]he information is readily available to PBI, and PBI can as easily and quickly identify any PBI customer whose Mailing Equipment was displaced by POA and/or another brand."[15]

POA is wrong.  The information is available to POA but not to PBI.  By definition, Interrogatory 14 concerns customers who are <u>currently</u> customers of POA but <u>no longer</u> customers of PBI.  POA will have a customer history (probably in the electronic form of a

---

[13] Van Der Weele Decl. Ex. 1 at 10.

[14] *Id.* at 11.

[15] *Id.*

Page 8 – DEFENDANTS' MOTION TO COMPEL

K&L Gates LLP
One SW Columbia Street, Suite 1900
Portland, Oregon  97204
Telephone: +1 503 228 3200

Customer Relationship Management ("CRM") database) on each of these customers, as well as customer information in a transactional database. Those databases will reveal whether POA had already sold or leased the customer FP equipment as of June 30, 2016, the effective date of the Dealer Agreement. If POA had, then there is no breach as to that customer, and POA's inquiry ends. If POA sold or leased FP equipment to that customer <u>after</u> June 30, 2016, POA should be able to query its database for information on what equipment the customer had before FP, as knowing what a prospective customer has before you try to switch the customer to something else is basic sales intelligence.

In addition, for a substantial portion, if not the entirety, of the term of the Dealer Agreement, POA was tracking in the ordinary course of business each and every time it displaced PBI equipment with FP equipment because it was reporting that very information to FP in its effort to win a "Smoke the Competition" sales contest sponsored by FP.[16] In contrast, when a customer terminates a lease with a Defendant, nothing requires that customer to tell the lessor-Defendant whose equipment is replacing the PBI equipment. Therefore, the Court should compel POA to identify the subset of customers requested by Interrogatory 14.

### III. REQUEST FOR ATTORNEY'S FEES

Without waiving its right to seek attorney's fees under any other law, including under section 6.05(1) of the Dealer Agreement, Defendants respectfully request, pursuant to FRCP 37(a)(5), an order requiring POA and/or POA's attorneys to pay Defendants' reasonable expenses incurred in making this motion, including attorney's fees.

---

[16] *See* Declaration of Bernard P. Cory ¶¶ 4-8; Exs. 1 and 2.

Page 9 – DEFENDANTS' MOTION TO COMPEL

DATED this 28th day of January, 2021.

                              K&L GATES LLP

                              By:   */s/Philip S. Van Der Weele*
                                     Philip S. Van Der Weele, OSB # 863650
                                     Email: phil.vanderweele@klgates.com
                                     Phone: (503) 228-3200

                              Attorneys for Defendants Pitney Bowes Inc., Pitney Bowes Global Financial Services LLC, The Pitney Bowes Bank, Inc., and Wheeler Financial from Pitney Bowes Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of January, 2021, I caused to be served a copy of the foregoing DEFENDANT'S MOTION TO COMPEL FURTHER RESPONSES FROM PLAINTIFF PACIFIC OFFICE AUTOMATION INC., upon all counsel of record via the Court's CM/ECF electronic service system.

>Jamison R. McCune, OSB #135547
>Email: mccune@bodyfelfmount.com
>BODYFELT MOUNT LLP
>319 SW Washington St., Suite 1200
>Portland, OR 97204
>Tel: 503-243-1022
>
>*Attorney for Plaintiff*
>
>Veronica L. Manolio, *admitted pro hac vice*
>Email: vmanolio@mf-firm.com
>MANOLIO & FIRESTONE, PLC
>8686 E. San Alberto Dr., Suite 200
>Scottsdale, AZ  85258
>Tel: 480-222-9100
>
>*Attorneys for Plaintiff*

DATED this 28th day of January, 2021.

>/s/Philip S. Van Der Weele
>Philip S. Van Der Weele, OSB #863650