1          IN THE UNITED STATES DISTRICT COURT

2            FOR THE DISTRICT OF OREGON

3                 PORTLAND DIVISION

4

5

    PACIFIC OFFICE AUTOMATION INC.,      )
6   an Oregon corporation,               )
                                         )  Case No.
7                         Plaintiff,     )  3:20-cv-00651-AC
                                         )
8            v.                          )  July 21, 2021
                                         )
9   PITNEY BOWES INC., a Delaware        )  Portland, Oregon
    corporation; PITNEY BOWES GLOBAL     )
10  FINANCIAL SERVICES LLC, a            )
    Delaware limited liability           )
11  company; THE PITNEY BOWES BANK,      )
    INC., a federal banking              )
12  institution; and WHEELER            )
    FINANCIAL FROM PITNEY BOWES INC.,    )
13  a Delaware corporation,              )
                                         )
14                       Defendants.     )

15

16

17              **TRANSCRIPT OF PROCEEDINGS**

18        (Scheduling conference by teleconference)

19

20        BEFORE THE HONORABLE JOHN V. ACOSTA

21     UNITED STATES DISTRICT COURT MAGISTRATE JUDGE

22

23
    **COURT REPORTER:**
24  Kellie M. Humiston, RMR, CRR
    (503) 326-8186
25  Kellie_Humiston@ord.uscourts.gov

1              **A P P E A R A N C E S**

2

3    FOR THE PLAINTIFF:

4                          MANOLIO & FIRESTONE
                           By:  Veronica L. Manolio
5                          8686 E. San Alberto Drive
                           Suite 200
6                          Scottsdale, AZ 85258

7

8    FOR THE PLAINTIFF:

9                          BODYFELT MOUNT
                           By:  Jamison R. McCune
10                         319 SW Washington Street
                           Suite 2100
11                         Portland, OR 97204

12
     FOR THE DEFENDANTS:
13
                           K&L GATES
14                         By:  Philip S. Van Der Weele
                           One SW Columbia Street
15                         Suite 1900
                           Portland, OR 97204
16

17   FOR THE DEFENDANTS:

18                         K&L GATES
                           By:  Elizabeth Heather White
19                         One SW Columbia Street
                           Suite 1900
20                         Portland, OR 97204

21

22

23

24

25

```
 1                    (July 21, 2021, 10:04 a.m.)

 2                      P R O C E E D I N G S

 3

 4          THE COURT:  Good morning.  This is Judge Acosta.  I'm

 5   going to take role.  Miss Manolio, are you there?

 6          MS. MANOLIO:  Good morning, Your Honor.  Veronica

 7   Manolio is here.

 8          THE COURT:  Thank you.  Anyone else for the plaintiff?

 9          MR. McCUNE:  Good morning, Your Honor.  Jamison McCune,

10   local counsel for Pacific Office Automation.

11          THE COURT:  Thank you.

12          And for defendants.  Mr. Van Der Weele.

13          MR. VAN DER WEELE:  Good morning, Your Honor.  Yes,

14   Phil Van Der Weele here for the defendants.

15          THE COURT:  Anyone else?

16          MS. WHITE:  Yes.  Good morning, Your Honor.  Elizabeth

17   White also for defendants.

18          THE COURT:  All right.  Miss Manolio, will it be you

19   for the plaintiff?

20          MS. MANOLIO:  Yes.

21          THE COURT:  And Mr. Van Der Weele, will it be you for

22   the defendant?

23          MR. VAN DER WEELE:  Yes, Your Honor.

24          THE COURT:  All right.  You want to talk about

25   deadlines first?  Mr. Van Der Weele, I got your e-mail from
```

1   yesterday and, among other topics, deadlines for fact discovery

2   and the need for additional fact discovery.  Go ahead.

3          MR. VAN DER WEELE:  That's actually -- those are

4   intended to be a joint e-mail, Your Honor.  It's actually

5   Ms. Manolio's issue, so I'll let her speak to it first.

6          THE COURT:  Okay.  Miss Manolio, go ahead.

7          MS. MANOLIO:  Thank you, Your Honor.  I don't know if

8   you remember the last time that we were all here we had a

9   significant discussion about discovery and we did extend the

10  deadlines, and the discussion was that we would meet again and

11  talk about where discovery was and where it's going.

12         Since that time, I believe that Mr. Van Der Weele and I

13  have done a tremendous job of getting discovery underway;

14  however, there are a significant number of deponents in this case

15  and it's a highly voluminous case in terms of documents, and

16  we -- my perspective is that recent discovery has just led us to

17  know that we do need some additional discovery.

18         I had proposed to Mr. Van Der Weele that we extend the

19  discovery deadlines, and there's just a disagreement.

20         But from my perspective, Your Honor, here's where we

21  stand.  We have taken a fair number, I believe there have been

22  seven or eight depositions now of key witnesses.  There are still

23  some key witnesses on the schedule that are agreed upon even

24  though they are beyond the original date set for our deadline,

25  and I don't think there's any dispute about that.  But from POA's

1    perspective, plaintiff's perspective, the recent depositions have

2    required the need for additional or follow-up written discovery,

3    and that's the agreement that we cannot make.

4            I think that additional discovery needs to be

5    undertaken for the reason that witnesses have shown that we need

6    to have some more documentation.  And there was a counterclaim

7    filed just last week, it was just approved by the Court, and

8    there's been zero discovery taken on the counterclaim because it

9    wasn't filed until recently, it wasn't permitted to be filed

10   until recently.

11           So for those reasons, I think that we should extend

12   discovery deadlines at least until September and maybe have an

13   additional conversation in September as to how much we've been

14   able to do in the next 60 days, because I do think both parties

15   are at least working in good faith to get it done.  I just think

16   that there's some need for additional written discovery.

17           THE COURT:  All right.  So two things before I hear

18   from Mr. Van Der Weele.

19           MS. MANOLIO:  Sure.

20           THE COURT:  When you say, Miss Manolio, "additional

21   discovery," I understand that to mean discovery on issues that

22   existed before the counterclaim was filed.

23           MS. MANOLIO:  On their -- yes, Your Honor.  I think

24   there needs to be both.  There certainly needs to be discovery on

25   the counterclaim, because nothing has been done, but when I use

1  the word "additional," you are correct, I am absolutely talking

2  about just issues that have arisen during the discovery phase on

3  the first part that necessitate more requests.

4        I agree with Mr. Van Der Weele's sentiment.  We could

5  have sent requests at the beginning, but there are certain issues

6  that arose in depositions we just didn't know that would arise

7  that necessitate additional written discovery, but you got it,

8  Judge.

9        THE COURT:  And then the second piece is the new

10  counterclaim would require discovery from the plaintiff's

11  standpoint as well.  So those two things together.

12        MS. MANOLIO:  Correct.  And I do believe that the

13  discovery on the counterclaim should be minimal, because I think

14  the counterclaim is minimal.  So when I ask the Court to, you

15  know, set a September deadline, even if you're inclined to say

16  that there needs to be discovery on the counterclaim, I am not

17  offended by a short ticker, because we knew the issues were

18  coming, we just didn't do discovery because it wasn't ripe yet.

19        THE COURT:  All right.  Thank you.

20        Mr. Van Der Weele, go ahead, please.

21        MS. MANOLIO:  Sure.

22        MR. VAN DER WEELE:  Thank you, Your Honor.  Phil

23  Van Der Weele on behalf of the defendants.  Four points, Your

24  Honor.  And, again, I'm going to -- first of all, I'm going to

25  limit these remarks solely to the issue of extending the deadline

1    for the purpose of serving additional written discovery, as there

2    are other discovery issues out there.  As Ms. Manolio had

3    mentioned, we're still doing depositions, but we've agreed, you

4    know, to go beyond that, and there's no dispute there.  We've

5    been cooperating, and that's fine.  And I anticipate bringing

6    several additional discovery motions, but they're based on

7    discovery requests that I made long ago, so I don't need any

8    extension of the deadline to do that.

9            So, again, I'm focusing only on the plaintiff's request

10   for extension to serve additional discovery.  That deadline for

11   service, by the way, Your Honor, was 2 months ago, May 21st,

12   given the cutoff date for fact discovery of June 22.

13           THE COURT:  All right.  Thank you.  Go ahead.

14           MR. VAN DER WEELE:  And the first point, Your Honor, is

15   that there's not good cause for extension, because POA has

16   already had plenty of time to serve additional written discovery.

17   POA had, you know, 8 months after the 26(f) conference last

18   September.  POA did, in fact, serve additional discovery requests

19   in March, and then just a few days after they served those

20   requests, they got a 60-day extension of the discovery deadline.

21   That happened in late March at the hearing on these motions to

22   compel.  And so at the end of March, they had another 60 days to

23   serve written discovery requests, and they didn't do it.

24           The second point is that the so-called new

25   counterclaim, it was filed just recently, but, of course, the

1    motion for leave to file it was filed back in January.  But

2    anyway, that counterclaim does not justify new fact discovery,

3    because there's no factual surprises in the counterclaim.  The

4    facts underlying the counterclaim have been in the case since the

5    time Pitney answered the complaint more than a year ago.

6          And just as a reminder, Your Honor, Pitney's

7    counterclaim is that Pacific Office breached the dealer agreement

8    by selling or leasing the products of a competing manufacturer a

9    company called Francotyp-Postalia, that's F-R-A-N-C-O-T-Y-P dash,

10   Francotyp-Postalia, called FP for short, that Pacific Office

11   breached by selling those FP products to existing Pitney Bowse

12   customers.

13         The dealer agreement prohibited Pacific Office from

14   placing FP equipment with existing Pitney Bowes customers, so

15   each time Pacific Office flipped a customer from Pitney equipment

16   to FP equipment, it breached the agreement, and that's our

17   counterclaim.

18         And the allegations that Pacific Office breached the

19   dealer agreement by flipping Pitney customers to FP equipment is

20   not a new one.  It's been in the case from -- ever since Pitney

21   filed its original answer more than a year ago in June of 2020.

22   Our ninth affirmative defense was, and I quote:  Plaintiff's

23   claims are barred in whole or in part by plaintiff's material

24   breach of the contract, specifically including Section 6.03(2) of

25   the PB-POA dealer agreement attached as Exhibit 1 to the

1    complaint.

2          And Section 6.03(2) of the dealer agreement, Your

3    Honor, is the -- is the provision that says that Pacific Office

4    cannot place FP equipment with existing Pitney customers.

5          So there are no factual surprises in the counterclaim,

6    and I don't think it justifies any further written discovery.

7          The next two points, Your Honor, are conditional, or

8    fallback positions.  I don't think there should be any extension

9    of written discovery, but the third point is that if the Court

10    does allow additional discovery, it should be limited to the

11    counterclaim.

12          Again, Pacific Office had 8 months after the 26(f)

13    conference to serve written discovery.  Here we are a month --

14    we're 2 months beyond the deadline for serving written discovery,

15    we're a month after the June 22 fact discovery date, and we're

16    talking about extending the deadline again.  I just -- at some

17    point, you know, enough is enough.

18          And then, finally, Your Honor, my -- my fourth point is

19    that if the Court does allow Pacific Office -- Pacific Office

20    additional discovery on the counterclaim, that discovery should

21    be conditional on POA's -- I keep saying POA.  That's short for

22    Pacific Office Automation.  I apologize.  It should be

23    conditional on Pacific Office's first providing discovery that

24    the defendants have been requesting on the counterclaim since

25    last October, because as things stand right now, I'm going to

1    have to make two discovery motions to get information on the

2    counterclaim that I last -- that I asked for last October, and I

3    think it's just fundamentally unfair for POA to get discovery

4    before Pitney does when Pitney made timely requests more than

5    9 months ago.

6            And just a brief preview on those motions, just a

7    thumbnail.  One issue is research terms.  POA has refused to run

8    electronic searches using the terms "Francotyp-Postalia" and

9    "FP," claiming that they're irrelevant, but those search terms

10   are relevant for the affirmative defense in the counterclaim.

11           And the second issue is the identification of customers

12   who had been Pitney -- who had been Pitney customers, and then

13   POA came in and flipped those customers over to FP equipment

14   during the term of the dealer agreement.

15           And each one of those flips is a breach, and we asked

16   about those flips in Interrogatory 14 served last October.  They

17   didn't answer the interrogatory, so we moved to compel.  They

18   came -- Your Honor ordered them to do it.  They came back and

19   said we absolutely have no way of doing it.  So then I tried

20   to -- I made a proposal to try to solve the problem.  I proposed

21   that a techie at Pitney Bowes do it with all sorts of

22   protections.  We need a modification of the protective order to

23   let the techie have an Excell file, but POA won't agree to that.

24   So I anticipate having to file a motion to modify the protective

25   order in order to get what I asked for 9 months ago.

1    If the Court is going to allow additional written

2    discovery on the counterclaim, I would request that Pitney not

3    have to respond until the Court has decided Pitney's discovery

4    motions and Pacific Office has complied with whatever the Court

5    has ordered.

6    THE COURT:  All right.  Before I hear from Miss Manolio

7    on the first three points, I'm going to start with the fourth

8    point.

9    Miss Manolio, with -- I'm not going to rule on any

10   discovery issues, because, first, I'm not fully informed; second,

11   that's not the purpose of this conference and you haven't had a

12   chance to prepare to respond to any issues that are currently --

13   currently in play.

14   What I will address are what I infer from

15   Mr. Van Der Weele's comments about the outstanding discovery

16   disputes, that it's not been either timely made or there has been

17   some inability or unwillingness to engage in, for example, the

18   electronic discovery.  That's been discussed.

19   All I want to know is whether these issues

20   Mr. Van Der Weele has suggested would be the subject of

21   forthcoming motions can be resolved in whole or in part before

22   that's necessary.

23   MS. MANOLIO:  If you want a simple answer, the answer

24   is maybe, because they're not framed right.  And

25   Mr. Van Der Weele -- are you asking me to -- can I respond in

1  total or are you just asking for a "yes" or "no" answer?

2      THE COURT:  Pretty much just a "yes" or "no" answer

3  right now.

4      MS. MANOLIO:  The answer's maybe.

5      THE COURT:  Maybe.  Okay.

6      MS. MANOLIO:  There are some issues that I believe we

7  have significantly made headway on and certain things that --

8  certain searches we are doing, and I've been keeping

9  Mr. Van Der Weele abreast at every juncture.

10      THE COURT:  Okay.  All right.

11      MS. MANOLIO:  But the issue -- one issue will need

12  further intervention.

13      THE COURT:  All right.  All right.  That's fine.

14      I'm -- as I said, I'm not making a ruling on the

15  discovery issues at this time that Mr. Van Der Weele mentioned in

16  his fourth point, not on the merits.

17      I will -- I will offer an observation that I have

18  offered in cases over the years where there have been more than

19  one discovery dispute and usually involving organizations or

20  corporate entities.  And I will say before I make this

21  observation, I don't know that that's -- that what I'm about to

22  say is present in this situation, but I will say this:  one of

23  the things I can do as a judge is I can get the parties'

24  attention, and over the years I have ordered party

25  representatives, no matter where they are in the country, to be

1  in my courtroom to talk about issues that seem unable to be
2  resolved for reasons that are not explainable.
3          So that's perhaps an indirect way of saying if either
4  or both parties in this case need help with their respective
5  clients, I can do that.  So I'll just leave that there.  I don't
6  expect you to respond to that.
7          On the other three points that Mr. Van Der Weele has
8  made, I'm going to do this:  I'm going to extend the fact
9  discovery deadline for all fact discovery, including the
10  counterclaim, to September 22nd, 2021, with a status conference
11  on September 14, 2021, to see where we are before that deadline
12  expires.  The status conference will be by phone.
13          Next, I want to resolve the discovery issues that
14  Mr. Van Der Weele mentioned and that you briefly addressed,
15  Miss Manolio, as soon as possible before additional discovery on
16  the existing issues, that new discovery on the counterclaim is
17  produced.  It doesn't mean you can't serve the requests or
18  schedule depositions, but it does mean that before
19  Mr. Van Der Weele and his client, Pitney Bowes, has to turn over
20  information, you're going to sort out the existing discovery
21  disputes, which -- at least one of which you've acknowledged will
22  need intervention, it seems.
23          Before we move on to the other item on
24  Mr. Van Der Weele's e-mail and anything else the parties want to
25  talk about, Miss Manolio, is there anything you want to say

1     before we do that?

2          MS. MANOLIO:  I do want to, Your Honor.  I'd like to

3     respond in total regarding Mr. Van Der Weele's sort of

4     conditional requests and now the Court's decision that -- which I

5     believe does affect me, that there is an ability for me to

6     provide written discovery, but that Pitney Bowes is not required

7     to respond until the other issues are resolved.

8          At this juncture, the Court has zero indication that

9     there are issues that need to be resolved other than the fact

10    that I briefly said one might need intervention, and that's not a

11    pending discovery request.

12         So, Your Honor, I feel that I need to make a record

13    now, because Mr. Van Der Weele -- let me start with this.  When

14    we talked back in March, we first got on the phone, the Court did

15    a very good job of telling me, "My preference is you never say

16    bad faith about a lawyer unless you're prepared to prove it up,

17    and you" -- you, as in POA -- "did something wrong in this case."

18         I took every word you said to heart, Your Honor.  I

19    think that me jumping onboard and being the primary contact on

20    this case has dramatically changed the scope of the case and the

21    procedure.  Mr. Van Der Weele and I have many disagreements, but

22    we get along.

23         The issues that Mr. Van Der Weele brought to your

24    attention this morning, I disagree with, and they were improper

25    to even bring to the Court, because there's no motion.  For

1   Mr. Van Der Weele to tell you something has been done without

2   proving it up is exactly what you asked in the last hearing for

3   me not to do:  Don't claim there's bad faith on another party

4   unless you're prepared to show it.

5           Mr. Van Der Weele will not be able to tell you or show

6   you that we have not acted in complete good faith, and that

7   everything he's asked me to do as follow-ups once I've already

8   responded to discovery, once the Court ordered me to supplement

9   and I already have supplemented, we had professional

10  meet-and-confers and he asked for additional items, and we've

11  done everything he's asked.

12          So I'm very troubled by the fact that he would bring to

13  you a motion that's not before you and then tell you that we're

14  doing something wrong, because that is not the case.

15          I'm more troubled that the Court would order discovery

16  conditional on a request that was not proper and that was not

17  based in reality, but rather in POA's -- or excuse me -- Pitney

18  Bowes' opinion.

19          The one issue I said would need court intervention is

20  not something I have failed to respond to.  As Mr. Van Der Weele

21  said, he wants a process, a new process where he can take my

22  client's customer list and give it to someone at Pitney Bowes and

23  let Pitney Bowes run a search against it.  That's not an existing

24  request, and that's the issue that I said might need court

25  intervention, because we disagree and say it would violate the

1    protective order.  He knows it would, which is why he said, "I

2    may have to go to the Court and ask the Court to modify the

3    protective order."

4            But, Your Honor, that's not an issue of POA not

5    providing discovery.  We gave the customer list that you ordered

6    me to give.  He just wants to turn it over to someone inside of

7    Pitney Bowes even though there's an "Attorneys Eyes Only" order

8    on it that falls under the current protective order.

9            All that being said, the reason I say that is it's

10   fundamentally unfair for the Court to say, "I'm going to order

11   new discovery is conditional," when the issues that were brought

12   to you were not brought properly and they're not brought based on

13   good faith discussions and efforts that have been going on.

14           So that's what I'm troubled by, Your Honor, and that's

15   the record I think that needs to be made.

16           However, I am fine with saying we'll serve written

17   discovery and I'll continue to work with Mr. Van Der Weele, but I

18   see no way in the world that the issue will get resolved if

19   Mr. Van Der Weele knows, "I don't have to answer any discovery

20   requests until the issue's resolved," because then the resolution

21   is 100 percent in his court and he has all the ability to thwart

22   that, so he doesn't have to answer discovery.  That's troubling

23   to me, Your Honor.

24           THE COURT:  Well, it was my understanding from your

25   comment that there was at least one issue you believed would

1    require court intervention, and that was the basis of my decision

2    to say let's get that sorted out before any additional discovery

3    is made.

4            If it's conditional, it's not conditioned in such a way

5    that you will never be able to conduct discovery.  It was simply

6    intended to ensure that we sort out any existing issues before we

7    move forward with additional discovery that's going to create

8    potentially new issues.

9            I'm going to say this.  Miss Manolio, I understand

10   what -- what I hear as frustration and perhaps being offended by

11   Mr. Van Der Weele's various comments.

12           I will note that we've had, as you know, discovery

13   disputes in this case and I generally have not liked the tone

14   that has been used, and I hope to see that changed.

15           I take at your word that things have improved since you

16   became more directly involved in the case, and that's a good

17   sign.

18           I have been involved in cases over the years, not just

19   as a lawyer, but as a judge in cases assigned to me where, for

20   one reason or another, whether it's a patent case or a case like

21   this when there are trade secrets involved, two companies are

22   doing their best to litigate each other into the Stone Age and be

23   as unpleasant about it as they possibly can be in the process.

24           I hope that is not what is happening, but if this

25   continues and we get these kinds of calls, I will require senior

1    management representatives to be in my courtroom so that I can

2    address them directly and tell them how things are going to

3    happen.

4           This case was filed in April of last year right when

5    the pandemic hit.  It is, frankly, inconsistent with everything I

6    have seen in the cases assigned to me, the effect of that

7    pandemic, that one party in this case would be taking the

8    position that no additional discovery is warranted no matter how

9    much time has lapsed since last year.  The pandemic has affected

10    everybody's ability to do anything when it comes to litigation,

11    and it is quite common and has been quite common for extensions

12    to be permitted.

13           Speaking frankly, in my opinion, a somewhat hard line

14    on that issue regardless of the reason is pushing the rock

15    uphill, particularly when there doesn't seem to be any particular

16    prejudice for a case that is not even 18 months old and we've had

17    the kind of pandemic issues we've had and this is a complicated

18    case.

19           I don't want to hear about that again.  Either get it

20    figured out, or I'm just going to take over discovery.  And I've

21    done that in cases before.  And when I do that, nobody's happy

22    except me, because I don't get these calls anymore.

23           I assume you'll be able to work these things out.  If

24    there are issues that can't be worked out on discovery, I want

25    those motions filed as soon as possible, and I'm going to sort

1   them out.

2          Miss Manolio, you can serve your additional discovery,

3   you can schedule additional depositions, but Mr. Van Der Weele, I

4   want to see those motions as soon as possible, which means you

5   have to confer as soon as possible so that we can get the motions

6   T'd up and I can decide them.  And I will decide them quickly.

7   There's not going to be any delay.  Even if they're written

8   motions, I'll rule from the bench and you'll know what you have

9   to do.  Right now, my order stands.

10          MR. VAN DER WEELE:  Your --

11          THE COURT:  Hang on.

12          Miss Manolio, if the way I have decided to triage it

13  presents problems for you in getting information in a timely

14  fashion, I will extend the September deadline, but right now

15  that's what we're going to do, and I want --

16          MS. MANOLIO:  Understood.

17          THE COURT:  Mr. Van Der Weele, when can you file those

18  motions?  And that means, how soon can you and Miss Manolio

19  confer on everything that you think you need to confer about?

20          MR. VAN DER WEELE:  So first of all, Your Honor, we --

21  we did have a meet-and-confer, an extensive meet-and-confer on

22  June 2.  Prior to that, I had given Ms. Manolio a list of

23  deficiencies of what we regarded as deficiencies in their

24  supplemental production.  Ms. Manolio made a number of

25  commitments to provide additional information at that June 2

1   meet-and-confer, but she has not provided everything yet that

2   even by her, you know, statements she's going to provide.  She's

3   working on it.

4         So I've been waiting, Your Honor, to see what we -- you

5   know, the totality of what she is willing to provide before

6   filing the motion.

7         So -- and I -- she provided some additional material, I

8   think, just yesterday or the day before, but she acknowledges

9   there's more to come.  So I'm really waiting for more from her,

10   Your Honor, because I don't want to make a motion and then while

11   the motion's pending, you know, get some more stuff.

12         So that's a long way of saying that the timing really

13   depends on when I hear -- when Ms. Manolio says, "Okay.  This is

14   all you're going to get."  That's on the issue of further

15   documents and responses to interrogatories, that sort of thing.

16         The other issue, the modification of the protective

17   order that's required, I believe we can have that done within a

18   couple weeks.

19         A complicating fact, Your Honor, is that my wife is

20   having surgery in Seattle next week, so I'm going to be up there

21   with her for that, but I think we can get it done by the end of

22   July.  That would be the motion to modify the protective order.

23   And we have conferred on that as well, Your Honor, and -- and

24   Ms. Manolio disagrees with -- I mean, she's not willing to allow

25   the modification that I'm asking for, so --

1    THE COURT:  All right.

2    MR. VAN DER WEELE:  -- that issue is ripe for a motion.

3    THE COURT:  All right.  I would like to see those

4  motions filed no later than August 2 so that we can get this

5  sorted out.  If that becomes a problem, confer with Miss Manolio

6  and agree on a different date, but otherwise, let's get this T'd

7  up quick and resolved so the parties know what they're going to

8  get and not get and can move forward, including on the protective

9  order.

10    I hope the surgery is nothing serious.  Hopefully

11  everything will go smoothly.

12    Mr. Van Der Weele, the other question you had in your

13  e-mail was the impact, if any, of my upcoming retirement on the

14  assignment of this case.  My predecessor, whoever that will be,

15  will inherit my civil caseload.  So my predecessor will be taking

16  over the case once I take senior status on -- after the close of

17  business on March 5th.  That is my retirement date.

18    I'll still be around for settlement conferences and

19  criminal calendar duties, but I will not have any responsibility

20  for civil caseloads except to the extent it might involve

21  transition duties to get my successor up to speed.

22    So you'll have another magistrate judge, whoever takes

23  my place, and Judge Immergut will remain your backup judge.

24    Any questions about that piece?  Mr. Van Der Weele,

25  first from you.

1        MR. VAN DER WEELE:  Yes.

2        THE COURT:  Go ahead.

3        MR. VAN DER WEELE:  Yes, I do have a question about

4  that, Your Honor.  Thank you.  This may seem like an odd

5  question, but I haven't been able to -- the answer I've found,

6  I'm not sure if it's right, but I was wondering if it is possible

7  to consent to having you serve as the Article III judge for this

8  case without automatically consenting to whoever your -- whoever

9  inherits this case, assuming it's not complete by March 5 of next

10  year.

11        The -- I ask that, because the Consent -- the standard

12  Consent to Magistrate form is general, not specific.  And from

13  what I've been able to pick up anecdotally, once -- once you

14  consent, you consent to not only the current magistrate, but any

15  successor magistrate.  And I just don't know if you have any

16  insight on that or not.

17        THE COURT:  I do, and it's secret and I'm not telling

18  you.  So there.

19        MR. VAN DER WEELE:  Okay.

20        THE COURT:  That's a joke, Phil.  That's a joke.

21        MR. VAN DER WEELE:  Oh.  I thought you were serious.

22        THE COURT:  No, I'm not -- oh, one thing I hate about

23  phone, you -- well, never mind.

24        All right.  Look, and this is consistent with what the

25  Ninth Circuit has ruled when it comes to these consent issues, in

1    this district, here's how we do it:  if the case is assigned to a

2    magistrate judge initially and the parties consent, there's full

3    consent to that magistrate judge.  Then if a new magistrate judge

4    takes over the case, the parties are given the opportunity to

5    withdraw their consents or keep the consent in place for the new

6    magistrate judge who's taking the case.  But if the case is

7    assigned initially to an Article III judge and the parties fully

8    consent to jurisdiction by magistrate judge, then that is taken

9    as consent to any magistrate judge who might get the case from

10   the Article III judge.

11          So in answer directly to your question, yes, that is

12   possible if all parties consent.  I would be your judge for all

13   purposes without need of an F&R or review by a district judge

14   until the time that the case transfers to my successor, and at

15   that time, the parties would, if they wish, be able to withdraw

16   their consents or indicate their renewal and keep the case on

17   full consent with my successor.

18          MR. VAN DER WEELE:  Thank you, Your Honor.  I

19   appreciate that.

20          THE COURT:  You're welcome.  I'm sorry we don't do a

21   better job on our website of explaining that, but your confusion

22   is common among lawyers.

23          Miss Manolio, did you have any questions about that?

24          MS. MANOLIO:  I do not.

25          THE COURT:  Okay.  And I know, Miss Manolio, because

1    probably you handle cases in other federal districts outside of

2    California and outside of Oregon, it depends on the district how

3    magistrate judges are used and what the processes are.

4              MS. MANOLIO:  Right.

5              THE COURT:  So if you have any confusion about how

6    things work and how we do things here, I encourage you to ask at

7    any time.

8              MS. MANOLIO:  I appreciate that.

9              THE COURT:  All right.  We don't have a time for the

10   status conference.  We'll make it on September 14.  My

11   inclination is to make it for 10 o'clock unless that doesn't work

12   for folks.  September 14 at 10 o'clock.  Veronica, does that work

13   for you?

14             MS. MANOLIO:  I will make it work.  That happens to be

15   my wedding anniversary, but I will make that work.

16             THE COURT:  We'll do it on a different day, then.  I'm

17   not going to --

18             MS. MANOLIO:  It's totally fine, Your Honor.  It's

19   telephonic, correct?

20             THE COURT:  Yes.

21             MS. MANOLIO:  Yep.  No problem.  I will make it work.

22   You do not need to switch the date.

23             THE COURT:  All right.  And, Phil, what about you?

24             MR. VAN DER WEELE:  10 o'clock on Tuesday, September 14

25   works for me, Your Honor.

1                THE COURT:  Good.  That's what we'll do.

2                All right.  I think that covers everything, at least on

3        the e-mail that Phil sent.  Is there anything else we should take

4        up, Miss Manolio?

5                MS. MANOLIO:  I don't believe so, Your Honor.

6                THE COURT:  Phil?

7                MR. VAN DER WEELE:  No, Your Honor.

8                THE COURT:  And just before we close, Veronica and

9        Phil, I apologize for my edgy tone, but I'd like to see things go

10       as smoothly as possible going forward.  I think that was clear

11       from my prior comments, and so let's hope that's what happens.

12               All right.  Thank you, everyone.  I appreciate it that

13       you were available today and for the discussion, and we are

14       adjourned.  Have a good day.

15               MS. MANOLIO:  Thank you.

16               MR. VAN DER WEELE:  Thank you, Your Honor.

17               THE COURT:  Bye-bye.

18               (Proceedings concluded at 10:38 a.m.)

19

20

21

22

23

24

25

```
 1                  C E R T I F I C A T E

 2

 3              I certify by signing below that the foregoing is a true

 4      and correct transcript of the record, taken by stenographic

 5      means, to the best of my ability, of the telephonic proceedings

 6      in the above-entitled cause.

 7              Due to the telephonic connections of parties appearing

 8      via videoconference, speakerphone, or cell phone, speakers

 9      talking over one another, speakers failing to enunciate, speakers

10      not identifying themselves before they speak, and/or other

11      technical difficulties that occur during telephonic proceedings,

12      this certification is limited by the above-mentioned reasons and

13      any technological difficulties of such proceedings occurring over

14      the telephone.

15              A transcript without an original signature, conformed

16      signature, or digitally-signed signature is not certified.

17

18      DATED this 24th day of July 2021.

19

20                          /s/ Kellie M. Humiston

21                          Kellie M. Humiston, RMR, CRR
                            Official Court Reporter
22                          Certificates Expire:  9/2021

23

24

25
```

## /

**/s** [1] - 26:20

## 9

**9** [2] - 10:5, 10:25
**9/2021** [1] - 26:22
**97204** [3] - 2:11, 2:15, 2:20

## 1

**1** [1] - 8:25
**10** [3] - 24:11, 24:12, 24:24
**100** [1] - 16:21
**10:04** [1] - 3:1
**10:38** [1] - 25:18
**14** [5] - 10:16, 13:11, 24:10, 24:12, 24:24
**18** [1] - 18:16
**1900** [2] - 2:15, 2:19

## 2

**2** [5] - 7:11, 9:14, 19:22, 19:25, 21:4
**200** [1] - 2:5
**2020** [1] - 8:21
**2021** [5] - 1:8, 3:1, 13:10, 13:11, 26:18
**21** [2] - 1:8, 3:1
**2100** [1] - 2:10
**21st** [1] - 7:11
**22** [2] - 7:12, 9:15
**22nd** [1] - 13:10
**24th** [1] - 26:18
**26(f** [2] - 7:17, 9:12

## 3

**319** [1] - 2:10
**326-8186** [1] - 1:24
**3:20-cv-00651-AC** [1] - 1:7

## 5

**5** [1] - 22:9
**503** [1] - 1:24
**5th** [1] - 21:17

## 6

**6.03(2** [2] - 8:24, 9:2
**60** [2] - 5:14, 7:22
**60-day** [1] - 7:20

## 8

**8** [2] - 7:17, 9:12
**85258** [1] - 2:6
**8686** [1] - 2:5

## A

**a.m** [2] - 3:1, 25:18
**ability** [4] - 14:5, 16:21, 18:10, 26:5
**able** [7] - 5:14, 15:5, 17:5, 18:23, 22:5, 22:13, 23:15
**above-entitled** [1] - 26:6
**above-mentioned** [1] - 26:12
**abreast** [1] - 12:9
**absolutely** [2] - 6:1, 10:19
**acknowledged** [1] - 13:21
**acknowledges** [1] - 20:8
**ACOSTA** [1] - 1:20
**Acosta** [1] - 3:4
**acted** [1] - 15:6
**additional** [26] - 4:2, 4:17, 5:2, 5:4, 5:13, 5:16, 5:20, 6:1, 6:7, 7:1, 7:6, 7:10, 7:16, 7:18, 9:10, 9:20, 11:1, 13:15, 15:10, 17:2, 17:7, 18:8, 19:2, 19:3, 19:25, 20:7
**address** [2] - 11:14, 18:2
**addressed** [1] - 13:14
**adjourned** [1] - 25:14
**affect** [1] - 14:5
**affected** [1] - 18:9
**Age** [1] - 17:22
**ago** [6] - 7:7, 7:11, 8:5, 8:21, 10:5, 10:25
**agree** [3] - 6:4, 10:23, 21:6
**agreed** [2] - 4:23, 7:3
**agreement** [8] - 5:3, 8:7, 8:13, 8:16, 8:19, 8:25, 9:2, 10:14
**ahead** [5] - 4:2, 4:6, 6:20, 7:13, 22:2
**Alberto** [1] - 2:5
**allegations** [1] - 8:18
**allow** [4] - 9:10, 9:19, 11:1, 20:24
**anecdotally** [1] -
22:13
**anniversary** [1] -
24:15
**answer** [10] - 8:21, 10:17, 11:23, 12:1, 12:2, 16:19, 16:22, 22:5, 23:11
**answer's** [1] - 12:4
**answered** [1] - 8:5
**anticipate** [2] - 7:5, 10:24
**anyway** [1] - 8:2
**apologize** [2] - 9:22, 25:9
**appearing** [1] - 26:7
**appreciate** [3] - 23:19, 24:8, 25:12
**approved** [1] - 5:7
**April** [1] - 18:4
**arise** [1] - 6:6
**arisen** [1] - 6:2
**arose** [1] - 6:6
**Article** [3] - 22:7, 23:7, 23:10
**assigned** [4] - 17:19, 18:6, 23:1, 23:7
**assignment** [1] -
21:14
**assume** [1] - 18:23
**assuming** [1] - 22:9
**attached** [1] - 8:25
**attention** [2] - 12:24, 14:24
**Attorneys** [1] - 16:7
**August** [1] - 21:4
**automatically** [1] -
22:8
**Automation** [1] - 3:10, 9:22
**AUTOMATION** [1] -
1:5
**available** [1] - 25:13
**AZ** [1] - 2:6

## B

**backup** [1] - 21:23
**bad** [2] - 14:16, 15:3
**BANK** [1] - 1:11
**banking** [1] - 1:11
**barred** [1] - 8:23
**based** [3] - 7:6, 15:17, 16:12
**basis** [1] - 17:1
**became** [1] - 17:16
**becomes** [1] - 21:5
**BEFORE** [1] - 1:20
**beginning** [1] - 6:5
**behalf** [1] - 6:23
**below** [1] - 26:3
**bench** [1] - 19:8
**best** [2] - 17:22, 26:5
**better** [1] - 23:21
**beyond** [3] - 4:24, 7:4, 9:14
**BODYFELT** [1] - 2:9
**BOWES** [4] - 1:9, 1:9, 1:11, 1:12
**Bowes** [7] - 8:14, 10:21, 13:19, 14:6, 15:22, 15:23, 16:7
**Bowes'** [1] - 15:18
**Bowse** [1] - 8:11
**breach** [2] - 8:24, 10:15
**breached** [4] - 8:7, 8:11, 8:16, 8:18
**brief** [1] - 10:6
**briefly** [2] - 13:14, 14:10
**bring** [2] - 14:25, 15:12
**bringing** [1] - 7:5
**brought** [4] - 14:23, 16:11, 16:12
**business** [1] - 21:17
**bye** [2] - 25:17
**bye-bye** [1] - 25:17

## C

**calendar** [1] - 21:19
**California** [1] - 24:2
**cannot** [2] - 5:3, 9:4
**Case** [1] - 1:6
**case** [28] - 4:14, 4:15, 8:4, 8:20, 13:4, 14:17, 14:20, 15:14, 17:13, 17:16, 17:20, 18:4, 18:7, 18:16, 18:18, 21:14, 21:16, 22:8, 22:9, 23:1, 23:4, 23:6, 23:9, 23:14, 23:16
**caseload** [1] - 21:15
**caseloads** [1] - 21:20
**cases** [2] - 12:18, 17:18, 17:19, 18:6, 18:21, 24:1
**cell** [1] - 26:8
**certain** [3] - 6:5, 12:7, 12:8
**certainly** [1] - 5:24
**Certificates** [1] - 26:22
**certification** [1] -
26:12
**certified** [1] - 26:16
**certify** [1] - 26:3
**chance** [1] - 11:12
**changed** [2] - 14:20,
17:14
**Circuit** [1] - 22:25
**civil** [2] - 21:15, 21:20
**claim** [1] - 15:3
**claiming** [1] - 10:9
**claims** [1] - 8:23
**clear** [1] - 25:10
**client** [1] - 13:19
**client's** [1] - 15:22
**clients** [1] - 13:5
**close** [2] - 21:16, 25:8
**Columbia** [2] - 2:14, 2:19
**coming** [1] - 6:18
**comment** [1] - 16:25
**comments** [3] - 11:15, 17:11, 25:11
**commitments** [1] -
19:25
**common** [3] - 18:11, 23:22
**companies** [1] - 17:21
**company** [2] - 1:11, 8:9
**compel** [2] - 7:22, 10:17
**competing** [1] - 8:8
**complaint** [2] - 8:5, 9:1
**complete** [2] - 15:6, 22:9
**complicated** [1] -
18:17
**complicating** [1] -
20:19
**complied** [1] - 11:4
**concluded** [1] - 25:18
**conditional** [2] - 9:7, 9:21, 9:23, 14:4, 15:16, 16:11, 17:4
**conditioned** [1] - 17:4
**conduct** [1] - 17:5
**confer** [7] - 19:5, 19:19, 19:21, 20:1, 21:5
**conference** [7] - 1:18, 7:17, 9:13, 11:11, 13:10, 13:12, 24:10
**conferences** [1] -
21:18
**conferred** [1] - 20:23
**confers** [1] - 15:10
**conformed** [1] - 26:15
**confusion** [2] - 23:21, 24:5
**connections** [1] - 26:7
**consent** [11] - 22:7, 22:14, 22:25, 23:2, 23:3, 23:5, 23:8, 23:9, 23:12, 23:17

**Consent** [2] - 22:11, 22:12
**consenting** [1] - 22:8
**consents** [2] - 23:5, 23:16
**consistent** [1] - 22:24
**contact** [1] - 14:19
**continue** [1] - 16:17
**continues** [1] - 17:25
**contract** [1] - 8:24
**conversation** [1] - 5:13
**cooperating** [1] - 7:5
**corporate** [1] - 12:20
**corporation** [3] - 1:6, 1:9, 1:13
**correct** [4] - 6:1, 6:12, 24:19, 26:4
**counsel** [1] - 3:10
**counterclaim** [23] - 5:6, 5:8, 5:22, 5:25, 6:10, 6:13, 6:14, 6:16, 7:25, 8:2, 8:3, 8:4, 8:7, 8:17, 9:5, 9:11, 9:20, 9:24, 10:2, 10:10, 11:2, 13:10, 13:16
**country** [1] - 12:25
**couple** [1] - 20:18
**course** [1] - 7:25
**Court** [16] - 5:7, 6:14, 9:9, 9:19, 11:1, 11:3, 11:4, 14:8, 14:14, 14:25, 15:8, 15:15, 16:2, 16:10, 26:21
**court** [4] - 15:19, 15:24, 16:21, 17:1
**COURT** [41] - 1:1, 1:21, 1:23, 3:4, 3:8, 3:11, 3:15, 3:18, 3:21, 3:24, 4:6, 5:17, 5:20, 6:9, 6:19, 7:13, 11:6, 12:2, 12:5, 12:10, 12:13, 16:24, 19:11, 19:17, 21:1, 21:3, 22:2, 22:17, 22:20, 22:22, 23:20, 23:25, 24:5, 24:9, 24:16, 24:20, 24:23, 25:1, 25:6, 25:8, 25:17
**Court's** [1] - 14:4
**courtroom** [2] - 13:1, 18:1
**covers** [1] - 25:2
**create** [1] - 17:7
**criminal** [1] - 21:19
**CRR** [2] - 1:24, 26:21
**current** [2] - 16:8, 22:14

**customer** [3] - 8:15, 15:22, 16:5
**customers** [7] - 8:12, 8:14, 8:19, 9:4, 10:11, 10:12, 10:13
**cutoff** [1] - 7:12

## D

**dash** [1] - 8:9
**date** [6] - 4:24, 7:12, 9:15, 21:6, 21:17, 24:22
**DATED** [1] - 26:18
**days** [3] - 5:14, 7:19, 7:22
**deadline** [11] - 4:24, 6:15, 6:25, 7:8, 7:10, 7:20, 9:14, 9:16, 13:9, 13:11, 19:14
**deadlines** [5] - 3:25, 4:1, 4:10, 4:19, 5:12
**dealer** [6] - 8:7, 8:13, 8:19, 8:25, 9:2, 10:14
**decide** [2] - 19:6
**decided** [2] - 11:3, 19:12
**decision** [2] - 14:4, 17:1
**defendant** [1] - 3:22
**Defendants** [1] - 1:14
**DEFENDANTS** [2] - 2:12, 2:17
**defendants** [5] - 3:12, 3:14, 3:17, 6:23, 9:24
**defense** [2] - 8:22, 20:10
**deficiencies** [2] - 19:23
**Delaware** [3] - 1:9, 1:10, 1:13
**delay** [1] - 19:7
**deponents** [1] - 4:14
**depositions** [6] - 4:22, 5:1, 6:6, 7:3, 13:18, 19:3
**Der** [34] - 2:14, 3:12, 3:14, 3:21, 3:25, 4:12, 4:18, 5:18, 6:4, 6:20, 6:23, 11:15, 11:20, 11:25, 12:9, 12:15, 13:7, 13:14, 13:19, 13:24, 14:3, 14:13, 14:21, 14:23, 15:1, 15:5, 15:20, 16:17, 16:19, 17:11, 19:3, 19:17, 21:12, 21:24

**DER** [16] - 3:13, 3:23, 4:3, 6:22, 7:14, 19:10, 19:20, 21:2, 22:1, 22:3, 22:19, 22:21, 23:18, 24:24, 25:7, 25:16
**different** [2] - 21:6, 24:16
**difficulties** [2] - 26:11, 26:13
**digitally** [1] - 26:16
**digitally-signed** [1] - 26:16
**directly** [3] - 17:16, 18:2, 23:11
**disagree** [2] - 14:24, 15:25
**disagreement** [1] - 4:19
**disagreements** [1] - 14:21
**disagrees** [1] - 20:24
**discovery** [74] - 4:1, 4:2, 4:9, 4:11, 4:13, 4:16, 4:17, 4:19, 5:2, 5:4, 5:8, 5:12, 5:16, 5:21, 5:24, 6:2, 6:7, 6:10, 6:13, 6:16, 6:18, 7:1, 7:2, 7:6, 7:7, 7:10, 7:12, 7:16, 7:18, 7:20, 7:23, 8:2, 9:6, 9:9, 9:10, 9:13, 9:14, 9:15, 9:20, 9:23, 10:1, 10:3, 11:2, 11:3, 11:10, 11:15, 11:18, 12:15, 12:19, 13:9, 13:13, 13:15, 13:16, 13:20, 14:6, 14:11, 15:8, 15:15, 16:5, 16:11, 16:17, 16:19, 16:22, 17:2, 17:5, 17:7, 17:12, 18:8, 18:20, 18:24, 19:2
**discussed** [1] - 11:18
**discussion** [3] - 4:9, 4:10, 25:13
**discussions** [1] - 16:13
**dispute** [3] - 4:25, 7:4, 12:19
**disputes** [3] - 11:16, 13:21, 17:13
**DISTRICT** [3] - 1:1, 1:2, 1:21
**district** [2] - 23:1, 23:13, 24:2
**districts** [1] - 24:1
**DIVISION** [1] - 1:3
**documentation** [1] -

5:6
**documents** [2] - 4:15, 20:15
**done** [8] - 4:13, 5:15, 5:25, 15:1, 15:11, 18:21, 20:17, 20:21
**dramatically** [1] - 14:20
**Drive** [1] - 2:5
**Due** [1] - 26:7
**during** [3] - 6:2, 10:14, 26:11
**duties** [2] - 21:19, 21:21

## E

**e-mail** [5] - 3:25, 4:4, 13:24, 21:13, 25:3
**edgy** [1] - 25:9
**effect** [1] - 18:6
**efforts** [1] - 16:13
**eight** [1] - 4:22
**either** [3] - 11:16, 13:3, 18:19
**electronic** [2] - 10:8, 11:18
**Elizabeth** [2] - 2:18, 3:16
**encourage** [1] - 24:6
**end** [2] - 7:22, 20:21
**engage** [1] - 11:17
**ensure** [1] - 17:6
**entities** [1] - 12:20
**entitled** [1] - 26:6
**enunciate** [1] - 26:9
**equipment** [6] - 8:14, 8:15, 8:16, 8:19, 9:4, 10:13
**exactly** [1] - 15:2
**example** [1] - 11:17
**Excell** [1] - 10:23
**except** [2] - 18:22, 21:20
**excuse** [1] - 15:17
**Exhibit** [1] - 8:25
**existed** [1] - 5:22
**existing** [7] - 8:11, 8:14, 9:4, 13:16, 13:20, 15:23, 17:6
**expect** [1] - 13:6
**Expire** [1] - 26:22
**expires** [1] - 13:12
**explainable** [1] - 13:2
**explaining** [1] - 23:21
**extend** [5] - 4:9, 4:18, 5:11, 13:8, 19:14
**extending** [2] - 6:25, 9:16
**extension** [5] - 7:8,

7:10, 7:15, 7:20, 9:8
**extensions** [1] - 18:11
**extensive** [1] - 19:21
**extent** [1] - 21:20
**Eyes** [1] - 16:7

## F

**F&R** [1] - 23:13
**fact** [11] - 4:1, 4:2, 7:12, 7:18, 8:2, 9:15, 13:8, 13:9, 14:9, 15:12, 20:19
**facts** [1] - 8:4
**factual** [2] - 8:3, 9:5
**failed** [1] - 15:20
**failing** [1] - 26:9
**fair** [1] - 4:21
**faith** [5] - 5:15, 14:16, 15:3, 15:6, 16:13
**fallback** [1] - 9:8
**falls** [1] - 16:8
**fashion** [1] - 19:14
**federal** [2] - 1:11, 24:1
**few** [1] - 7:19
**figured** [1] - 18:20
**file** [4] - 8:1, 10:23, 10:24, 19:17
**filed** [10] - 5:7, 5:9, 5:22, 7:25, 8:1, 8:21, 18:4, 18:25, 21:4
**filing** [1] - 20:6
**finally** [1] - 9:18
**FINANCIAL** [2] - 1:10, 1:12
**fine** [4] - 7:5, 12:13, 16:16, 24:18
**FIRESTONE** [1] - 2:4
**first** [13] - 3:25, 4:5, 6:3, 6:24, 7:14, 9:23, 11:7, 11:10, 14:14, 19:20, 21:25
**flipped** [2] - 8:15, 10:13
**flipping** [1] - 8:19
**flips** [2] - 10:15, 10:16
**focusing** [1] - 7:9
**folks** [1] - 24:12
**follow** [2] - 5:2, 15:7
**follow-up** [1] - 5:2
**follow-ups** [1] - 15:7
**FOR** [5] - 1:2, 2:3, 2:8, 2:12, 2:17
**foregoing** [1] - 26:3
**form** [1] - 22:12
**forthcoming** [1] - 11:21
**forward** [3] - 17:7, 21:8, 25:10
**four** [1] - 6:23

**fourth** [3] - 9:18, 11:7, 12:16
**FP** [8] - 8:10, 8:11, 8:14, 8:16, 8:19, 9:4, 10:9, 10:13
**framed** [1] - 11:24
**Francotyp** [3] - 8:9, 8:10, 10:8
**FRANCOTYP** [1] - 8:9
**Francotyp-Postalia** [3] - 8:9, 8:10, 10:8
**frankly** [2] - 18:5, 18:13
**FROM** [1] - 1:12
**frustration** [1] - 17:10
**full** [2] - 23:2, 23:17
**fully** [2] - 11:10, 23:7
**fundamentally** [2] - 10:3, 16:10

## G

**GATES** [2] - 2:13, 2:18
**general** [1] - 22:12
**generally** [1] - 17:13
**given** [3] - 7:12, 19:22, 23:4
**GLOBAL** [1] - 1:9

## H

**handle** [1] - 24:1
**hang** [1] - 19:11
**happy** [1] - 18:21
**hard** [1] - 18:13
**hate** [1] - 22:22
**headway** [1] - 12:7
**hear** [5] - 5:17, 11:6, 17:10, 18:19, 20:13
**hearing** [2] - 7:21, 15:2
**heart** [1] - 14:18
**Heather** [1] - 2:18
**help** [1] - 13:4
**highly** [1] - 4:15
**hit** [1] - 18:5
**Honor** [36] - 3:6, 3:9, 3:13, 3:16, 3:23, 4:4, 4:7, 4:20, 5:23, 6:22, 6:24, 7:11, 7:14, 8:6, 9:3, 9:7, 9:18, 10:18, 14:2, 14:12, 14:18, 16:4, 16:14, 16:23, 19:20, 20:4, 20:10, 20:19, 20:23, 22:4, 23:18, 24:18, 24:25, 25:5, 25:7, 25:16
**HONORABLE** [1] - 1:20
**hope** [4] - 17:14,

17:24, 21:10, 25:11
**hopefully** [1] - 21:10
**Humiston** [3] - 1:24, 26:20, 26:21

## I

**identification** [1] - 10:11
**identifying** [1] - 26:10
**III** [3] - 22:7, 23:7, 23:10
**Immergut** [1] - 21:23
**impact** [1] - 21:13
**improper** [1] - 14:24
**improved** [1] - 17:15
**IN** [1] - 1:1
**inability** [1] - 11:17
**INC** [4] - 1:5, 1:9, 1:11, 1:12
**inclination** [1] - 24:11
**inclined** [1] - 6:15
**including** [3] - 8:24, 13:9, 21:8
**inconsistent** [1] - 18:5
**indicate** [1] - 23:16
**indication** [1] - 14:8
**indirect** [1] - 13:3
**infer** [1] - 11:14
**information** [4] - 10:1, 13:20, 19:13, 19:25
**informed** [1] - 11:10
**inherit** [1] - 21:15
**inherits** [1] - 22:9
**inside** [1] - 16:6
**insight** [1] - 22:16
**institution** [1] - 1:12
**intended** [2] - 4:4, 17:6
**interrogatories** [1] - 20:15
**Interrogatory** [1] - 10:16
**interrogatory** [1] - 10:17
**intervention** [6] - 12:12, 13:22, 14:10, 15:19, 15:25, 17:1
**involve** [1] - 21:20
**involved** [3] - 17:16, 17:18, 17:21
**involving** [1] - 12:19
**irrelevant** [1] - 10:9
**issue** [15] - 4:5, 6:25, 10:7, 10:11, 12:11, 15:19, 15:24, 16:4, 16:18, 16:25, 18:14, 20:14, 20:16, 21:2
**issue's** [1] - 16:20
**issues** [22] - 5:21, 6:2,

6:5, 6:17, 7:2, 11:10, 11:12, 11:19, 12:6, 12:15, 13:1, 13:13, 13:16, 14:7, 14:9, 14:23, 16:11, 17:6, 17:8, 18:17, 18:24, 22:25
**item** [1] - 13:23
**items** [1] - 15:10

## J

**Jamison** [2] - 2:9, 3:9
**January** [1] - 8:1
**job** [3] - 4:13, 14:15, 23:21
**JOHN** [1] - 1:20
**joint** [1] - 4:4
**joke** [2] - 22:20
**Judge** [3] - 3:4, 6:8, 21:23
**JUDGE** [1] - 1:21
**judge** [15] - 12:23, 17:19, 21:22, 21:23, 22:7, 23:2, 23:3, 23:6, 23:7, 23:8, 23:9, 23:10, 23:12, 23:13
**judges** [1] - 24:3
**July** [4] - 1:8, 3:1, 20:22, 26:18
**jumping** [1] - 14:19
**juncture** [2] - 12:9, 14:8
**jurisdiction** [1] - 23:8
**justifies** [1] - 9:6
**justify** [1] - 8:2

## K

**K&L** [2] - 2:13, 2:18
**keep** [3] - 9:21, 23:5, 23:16
**keeping** [1] - 12:8
**Kellie** [3] - 1:24, 26:20, 26:21
**Kellie_Humiston@ ord.uscourts.gov** [1] - 1:25
**key** [2] - 4:22, 4:23
**kind** [1] - 18:17
**kinds** [1] - 17:25
**knows** [2] - 16:1, 16:19

## L

**lapsed** [1] - 18:9

**last** [10] - 4:8, 5:7, 7:17, 9:25, 10:2, 10:16, 15:2, 18:4, 18:9
**late** [1] - 7:21
**lawyer** [2] - 14:16, 17:19
**lawyers** [1] - 23:22
**leasing** [1] - 8:8
**least** [5] - 5:12, 5:15, 13:21, 16:25, 25:2
**leave** [2] - 8:1, 13:5
**led** [1] - 4:16
**liability** [1] - 1:10
**limit** [1] - 6:25
**limited** [3] - 1:10, 9:10, 26:12
**line** [1] - 18:13
**list** [3] - 15:22, 16:5, 19:22
**litigate** [1] - 17:22
**litigation** [1] - 18:10
**LLC** [1] - 1:10
**local** [1] - 3:10
**look** [1] - 22:24

## M

**MAGISTRATE** [1] - 1:21
**magistrate** [10] - 21:22, 22:14, 22:15, 23:2, 23:3, 23:6, 23:8, 23:9, 24:3
**Magistrate** [1] - 22:12
**mail** [5] - 3:25, 4:4, 13:24, 21:13, 25:3
**management** [1] - 18:1
**MANOLIO** [22] - 2:4, 3:6, 3:20, 4:7, 5:19, 5:23, 6:12, 6:21, 11:23, 12:4, 12:6, 12:11, 14:2, 19:16, 23:24, 24:4, 24:8, 24:14, 24:18, 24:21, 25:5, 25:15
**Manolio** [23] - 2:4, 3:5, 3:7, 3:18, 4:6, 5:20, 7:2, 11:6, 11:9, 13:15, 13:25, 17:9, 19:2, 19:12, 19:18, 19:22, 19:24, 20:13, 20:24, 21:5, 23:23, 23:25, 25:4
**Manolio's** [1] - 4:5
**manufacturer** [1] - 8:8
**March** [6] - 7:19, 7:21, 7:22, 14:14, 21:17, 22:9

**material** [2] - 8:23, 20:7
**matter** [2] - 12:25, 18:8
**McCune** [3] - 2:9, 3:9
**mean** [4] - 5:21, 13:17, 13:18, 20:24
**means** [3] - 19:4, 19:18, 26:5
**meet** [5] - 4:10, 15:10, 19:21, 20:1
**meet-and-confer** [3] - 19:21, 20:1
**meet-and-confers** [1] - 15:10
**mentioned** [4] - 7:3, 12:15, 13:14, 26:12
**merits** [1] - 12:16
**might** [4] - 14:10, 15:24, 21:20, 23:9
**mind** [1] - 22:23
**minimal** [2] - 6:13, 6:14
**miss** [4] - 3:5, 3:18, 4:6, 11:9
**Miss** [12] - 5:20, 11:6, 13:15, 13:25, 17:9, 19:2, 19:12, 19:18, 21:5, 23:23, 23:25, 25:4
**modification** [3] - 10:22, 20:16, 20:25
**modify** [3] - 10:24, 16:2, 20:22
**month** [2] - 9:13, 9:15
**months** [7] - 7:11, 7:17, 9:12, 9:14, 10:5, 10:25, 18:16
**morning** [6] - 3:4, 3:6, 3:9, 3:13, 3:16, 14:24
**motion** [8] - 8:1, 10:24, 14:25, 15:13, 20:6, 20:10, 20:22, 21:2
**motion's** [1] - 20:11
**motions** [12] - 7:6, 7:21, 10:1, 10:6, 11:4, 11:21, 18:25, 19:4, 19:5, 19:8, 19:18, 21:4
**MOUNT** [1] - 2:9
**move** [5] - 13:23, 17:7, 21:8
**moved** [1] - 10:17
**MR** [17] - 3:9, 3:13, 3:23, 4:3, 6:22, 7:14, 19:10, 19:20, 21:2, 22:1, 22:3, 22:19, 22:21, 23:18, 24:24,

25:7, 25:16
**MS** [22] - 3:6, 3:16, 3:20, 4:7, 5:19, 5:23, 6:12, 6:21, 11:23, 12:4, 12:6, 12:11, 14:2, 19:16, 23:24, 24:4, 24:8, 24:14, 24:18, 24:21, 25:5, 25:15

## N

**necessary** [1] - 11:22
**necessitate** [2] - 6:3, 6:7
**need** [18] - 4:2, 4:17, 5:2, 5:5, 5:16, 7:7, 10:22, 12:11, 13:4, 13:22, 14:9, 14:10, 14:12, 15:19, 15:24, 19:19, 23:13, 24:22
**needs** [5] - 5:4, 5:24, 6:16, 16:15
**never** [3] - 14:15, 17:5, 22:23
**new** [10] - 6:9, 7:24, 8:2, 8:20, 13:16, 15:21, 16:11, 17:8, 23:3, 23:5
**next** [5] - 5:14, 9:7, 13:13, 20:20, 22:9
**ninth** [1] - 8:22
**Ninth** [1] - 22:25
**nobody's** [1] - 18:21
**note** [1] - 17:12
**nothing** [2] - 5:25, 21:10
**number** [3] - 4:14, 4:21, 19:24

## O

**o'clock** [3] - 24:11, 24:12, 24:24
**observation** [2] - 12:17, 12:21
**occur** [1] - 26:11
**occurring** [1] - 26:13
**October** [3] - 9:25, 10:2, 10:16
**odd** [1] - 22:4
**OF** [2] - 1:2, 1:17
**offended** [2] - 6:17, 17:10
**offer** [1] - 12:17
**offered** [1] - 12:18
**Office** [12] - 3:10, 8:7, 8:10, 8:13, 8:15, 8:18, 9:3, 9:12, 9:19, 9:22, 11:4

**OFFICE** [1] - 1:5
**Office's** [1] - 9:23
**Official** [1] - 26:21
**old** [1] - 18:16
**onboard** [1] - 14:19
**once** [5] - 15:7, 15:8, 21:16, 22:13
**one** [14] - 8:20, 10:7, 10:15, 12:11, 12:19, 12:22, 13:21, 14:10, 15:19, 16:25, 17:20, 18:7, 22:22, 26:9
**One** [2] - 2:14, 2:19
**opinion** [2] - 15:18, 18:13
**opportunity** [1] - 23:4
**OR** [3] - 2:11, 2:15, 2:20
**order** [13] - 10:22, 10:25, 15:15, 16:1, 16:3, 16:7, 16:8, 16:10, 19:9, 20:17, 20:22, 21:9
**ordered** [5] - 10:18, 11:5, 12:24, 15:8, 16:5
**OREGON** [1] - 1:2
**Oregon** [3] - 1:6, 1:9, 24:2
**organizations** [1] - 12:19
**original** [3] - 4:24, 8:21, 26:15
**otherwise** [1] - 21:6
**outside** [2] - 24:1, 24:2
**outstanding** [1] - 11:15

## P

**Pacific** [13] - 3:10, 8:7, 8:10, 8:13, 8:15, 8:18, 9:3, 9:12, 9:19, 9:22, 9:23, 11:4
**PACIFIC** [1] - 1:5
**pandemic** [4] - 18:5, 18:7, 18:9, 18:17
**part** [3] - 6:3, 8:23, 11:21
**particular** [1] - 18:15
**particularly** [1] - 18:15
**parties** [10] - 5:14, 13:4, 13:24, 21:7, 23:2, 23:4, 23:7, 23:12, 23:15, 26:7
**parties'** [1] - 12:23
**party** [3] - 12:24, 15:3, 18:7
**patent** [1] - 17:20

**PB** [1] - 8:25
**PB-POA** [1] - 8:25
**pending** [2] - 14:11, 20:11
**percent** [1] - 16:21
**perhaps** [2] - 13:3, 17:10
**permitted** [2] - 5:9, 18:12
**perspective** [4] - 4:16, 4:20, 5:1
**phase** [1] - 6:2
**Phil** [7] - 3:14, 6:22, 22:20, 24:23, 25:3, 25:6, 25:9
**Philip** [1] - 2:14
**phone** [4] - 13:12, 14:14, 22:23, 26:8
**pick** [1] - 22:13
**piece** [2] - 6:9, 21:24
**PITNEY** [4] - 1:9, 1:9, 1:11, 1:12
**Pitney** [19] - 8:5, 8:11, 8:14, 8:15, 8:19, 8:20, 9:4, 10:4, 10:12, 10:21, 11:2, 13:19, 14:6, 15:17, 15:22, 15:23, 16:7
**Pitney's** [2] - 8:6, 11:3
**place** [3] - 9:4, 21:23, 23:5
**placing** [1] - 8:14
**plaintiff** [2] - 3:8, 3:19
**Plaintiff** [1] - 1:7
**PLAINTIFF** [2] - 2:3, 2:8
**plaintiff's** [5] - 5:1, 6:10, 7:9, 8:22, 8:23
**play** [1] - 11:13
**plenty** [1] - 7:16
**POA** [11] - 7:15, 7:17, 7:18, 8:25, 9:21, 10:3, 10:7, 10:13, 10:23, 14:17, 16:4
**POA's** [3] - 4:25, 9:21, 15:17
**point** [7] - 7:14, 7:24, 9:9, 9:17, 9:18, 11:8, 12:16
**points** [4] - 6:23, 9:7, 11:7, 13:7
**PORTLAND** [1] - 1:3
**Portland** [4] - 1:9, 2:11, 2:15, 2:20
**position** [1] - 18:8
**positions** [1] - 9:8
**possible** [7] - 13:15, 18:25, 19:4, 19:5, 22:6, 23:12, 25:10
**possibly** [1] - 17:23

**Postalia** [3] - 8:9, 8:10, 10:8
**potentially** [1] - 17:8
**predecessor** [2] - 21:14, 21:15
**preference** [1] - 14:15
**prejudice** [1] - 18:16
**prepare** [1] - 11:12
**prepared** [2] - 14:16, 15:4
**present** [1] - 12:22
**presents** [1] - 19:13
**pretty** [1] - 12:2
**preview** [1] - 10:6
**primary** [1] - 14:19
**problem** [3] - 10:20, 21:5, 24:21
**problems** [1] - 19:13
**procedure** [1] - 14:21
**Proceedings** [1] - 25:18
**PROCEEDINGS** [1] - 1:17
**proceedings** [3] - 26:5, 26:11, 26:13
**process** [3] - 15:21, 17:23
**processes** [1] - 24:3
**produced** [1] - 13:17
**production** [1] - 19:24
**products** [2] - 8:8, 8:11
**professional** [1] - 15:9
**prohibited** [1] - 8:13
**proper** [1] - 15:16
**properly** [1] - 16:12
**proposal** [1] - 10:20
**proposed** [2] - 4:18, 10:20
**protections** [1] - 10:22
**protective** [8] - 10:22, 10:24, 16:1, 16:3, 16:8, 20:16, 20:22, 21:8
**prove** [1] - 14:16
**provide** [4] - 14:6, 19:25, 20:2, 20:5
**provided** [2] - 20:1, 20:7
**providing** [2] - 9:23, 16:5
**proving** [1] - 15:2
**provision** [1] - 9:3
**purpose** [2] - 7:1, 11:11
**purposes** [1] - 23:13
**pushing** [1] - 18:14

## Q

**questions** [2] - 21:24, 23:23
**quick** [1] - 21:7
**quickly** [1] - 19:6
**quite** [2] - 18:11
**quote** [1] - 8:22

## R

**rather** [1] - 15:17
**reality** [1] - 15:17
**really** [2] - 20:9, 20:12
**reason** [4] - 5:5, 16:9, 17:20, 18:14
**reasons** [3] - 5:11, 13:2, 26:12
**recent** [2] - 4:16, 5:1
**recently** [3] - 5:9, 5:10, 7:25
**record** [3] - 14:12, 16:15, 26:4
**refused** [1] - 10:7
**regarded** [1] - 19:23
**regarding** [1] - 14:3
**regardless** [1] - 18:14
**relevant** [1] - 10:10
**remain** [1] - 21:23
**remarks** [1] - 6:25
**remember** [1] - 4:8
**reminder** [1] - 8:6
**renewal** [1] - 23:16
**Reporter** [1] - 26:21
**REPORTER** [1] - 1:23
**representatives** [2] - 12:25, 18:1
**request** [5] - 7:9, 11:2, 14:11, 15:16, 15:24
**requesting** [1] - 9:24
**requests** [10] - 6:3, 6:5, 7:7, 7:18, 7:20, 7:23, 10:4, 13:17, 14:4, 16:20
**require** [3] - 6:10, 17:1, 17:25
**required** [3] - 5:2, 14:6, 20:17
**research** [1] - 10:7
**resolution** [1] - 16:20
**resolve** [1] - 13:13
**resolved** [7] - 11:21, 13:2, 14:7, 14:9, 16:18, 16:20, 21:7
**respective** [1] - 13:4
**respond** [5] - 11:3, 11:12, 11:25, 13:6, 14:3, 14:7, 15:20
**responded** [1] - 15:8
**responses** [1] - 20:15

**responsibility** [1] - 21:19

**retirement** [2] - 21:13, 21:17

**review** [1] - 23:13

**ripe** [2] - 6:18, 21:2

**RMR** [2] - 1:24, 26:21

**rock** [1] - 18:14

**role** [1] - 3:5

**rule** [2] - 11:9, 19:8

**ruled** [1] - 22:25

**ruling** [1] - 12:14

**run** [2] - 10:7, 15:23

## S

**San** [1] - 2:5

**schedule** [3] - 4:23, 13:18, 19:3

**Scheduling** [1] - 1:18

**scope** [1] - 14:20

**Scottsdale** [1] - 2:6

**search** [2] - 10:9, 15:23

**searches** [2] - 10:8, 12:8

**Seattle** [1] - 20:20

**second** [4] - 6:9, 7:24, 10:11, 11:10

**secret** [1] - 22:17

**secrets** [1] - 17:21

**Section** [2] - 8:24, 9:2

**see** [7] - 13:11, 16:18, 17:14, 19:4, 20:4, 21:3, 25:9

**seem** [3] - 13:1, 18:15, 22:4

**selling** [2] - 8:8, 8:11

**senior** [2] - 17:25, 21:16

**sent** [2] - 6:5, 25:3

**sentiment** [1] - 6:4

**September** [10] - 5:12, 5:13, 6:15, 7:18, 13:10, 13:11, 19:14, 24:10, 24:12, 24:24

**serious** [2] - 21:10, 22:21

**serve** [9] - 7:10, 7:16, 7:18, 7:23, 9:13, 13:17, 16:16, 19:2, 22:7

**served** [2] - 7:19, 10:16

**service** [1] - 7:11

**SERVICES** [1] - 1:10

**serving** [2] - 7:1, 9:14

**set** [2] - 4:24, 6:15

**settlement** [1] - 21:18

**seven** [1] - 4:22

**several** [1] - 7:6

**short** [3] - 6:17, 8:10, 9:21

**show** [2] - 15:4, 15:5

**shown** [1] - 5:5

**sign** [1] - 17:17

**signature** [2] - 26:15, 26:16

**signed** [1] - 26:16

**significant** [2] - 4:9, 4:14

**significantly** [1] - 12:7

**signing** [1] - 26:3

**simple** [1] - 11:23

**simply** [1] - 17:5

**situation** [1] - 12:22

**smoothly** [2] - 21:11, 25:10

**so-called** [1] - 7:24

**solely** [1] - 6:25

**solve** [1] - 10:20

**someone** [2] - 15:22, 16:6

**somewhat** [1] - 18:13

**soon** [5] - 13:15, 18:25, 19:4, 19:5, 19:18

**sorry** [1] - 23:20

**sort** [5] - 13:20, 14:3, 17:6, 18:25, 20:15

**sorted** [2] - 17:2, 21:5

**sorts** [1] - 10:21

**speakerphone** [1] - 26:8

**speakers** [3] - 26:8, 26:9

**speaking** [1] - 18:13

**specific** [1] - 22:12

**specifically** [1] - 8:24

**speed** [1] - 21:21

**stand** [2] - 4:21, 9:25

**standard** [1] - 22:11

**standpoint** [1] - 6:11

**stands** [1] - 19:9

**start** [2] - 11:7, 14:13

**statements** [1] - 20:2

**STATES** [2] - 1:1, 1:21

**status** [4] - 13:10, 13:12, 21:16, 24:10

**stenographic** [1] - 26:4

**still** [3] - 4:22, 7:3, 21:18

**Stone** [1] - 17:22

**Street** [3] - 2:10, 2:14, 2:19

**stuff** [1] - 20:11

**subject** [1] - 11:20

**successor** [4] - 21:21,

**topics** [1] - 4:1

**total** [2] - 12:1, 14:3

**totality** [1] - 20:5

**totally** [1] - 24:18

**trade** [1] - 17:21

**transcript** [2] - 26:4, 26:15

**TRANSCRIPT** [1] - 1:17

**transfers** [1] - 23:14

**transition** [1] - 21:21

**tremendous** [1] - 4:13

**triage** [1] - 19:12

**tried** [1] - 10:19

**troubled** [3] - 15:12, 15:15, 16:14

**troubling** [1] - 16:22

**true** [1] - 26:3

**try** [1] - 10:20

**Tuesday** [1] - 24:24

**turn** [2] - 13:19, 16:6

**two** [5] - 5:17, 6:11, 9:7, 10:1, 17:21

## U

**unable** [1] - 13:1

**under** [1] - 16:8

**underlying** [1] - 8:4

**understood** [1] - 19:16

**undertaken** [1] - 5:5

**underway** [1] - 4:13

**unfair** [2] - 10:3, 16:10

**UNITED** [2] - 1:1, 1:21

**unless** [3] - 14:16, 15:4, 24:11

**unpleasant** [1] - 17:23

**unwillingness** [1] - 11:17

**up** [9] - 5:2, 14:16, 15:2, 19:6, 20:20, 21:7, 21:21, 22:13, 25:4

**upcoming** [1] - 21:13

**uphill** [1] - 18:15

**ups** [1] - 15:7

## V

**Van** [29] - 2:14, 3:12, 3:14, 3:21, 3:25, 4:12, 4:18, 6:4, 6:23, 11:15, 11:20, 11:25, 12:9, 12:15, 13:7, 13:14, 13:19, 13:24, 14:3, 14:21, 14:23, 15:1, 15:5, 15:20, 16:17, 17:11, 19:3, 19:17, 21:12

**van** [5] - 5:18, 6:20, 14:13, 16:19, 21:24

**VAN** [16] - 3:13, 3:23, 4:3, 6:22, 7:14, 19:10, 19:20, 21:2, 22:1, 22:3, 22:19, 22:21, 23:18, 24:24, 25:7, 25:16

**various** [1] - 17:11

**Veronica** [4] - 2:4, 3:6, 24:12, 25:8

**via** [1] - 26:8

**videoconference** [1] - 26:8

**violate** [1] - 15:25

**voluminous** [1] - 4:15

## W

**waiting** [2] - 20:4, 20:9

**wants** [2] - 15:21, 16:6

**warranted** [1] - 18:8

**Washington** [1] - 2:10

**website** [1] - 23:21

**wedding** [1] - 24:15

**week** [2] - 5:7, 20:20

**weeks** [1] - 20:18

**Weele** [29] - 2:14, 3:12, 3:14, 3:21, 3:25, 4:12, 4:18, 5:18, 6:20, 6:23, 11:20, 11:25, 12:9, 12:15, 13:7, 13:14, 13:19, 14:13, 14:21, 14:23, 15:1, 15:5, 15:20, 16:17, 16:19, 19:3, 19:17, 21:12, 21:24

**WEELE** [16] - 3:13, 3:23, 4:3, 6:22, 7:14, 19:10, 19:20, 21:2, 22:1, 22:3, 22:19, 22:21, 23:18, 24:24, 25:7, 25:16

**Weele's** [5] - 6:4, 11:15, 13:24, 14:3, 17:11

**welcome** [1] - 23:20

**WHEELER** [1] - 1:12

**White** [2] - 2:18, 3:17

**WHITE** [1] - 3:16

**whole** [2] - 8:23, 11:21

**wife** [1] - 20:19

**willing** [2] - 20:5, 20:24

**wish** [1] - 23:15

**withdraw** [2] - 23:5, 23:15

**witnesses** [3] - 4:22, 4:23, 5:5

## T

**T'd** [2] - 19:6, 21:6

**techie** [2] - 10:21, 10:23

**technical** [1] - 26:11

**technological** [1] - 26:13

**teleconference** [1] - 1:18

**telephone** [1] - 26:14

**telephonic** [4] - 24:19, 26:5, 26:7, 26:11

**term** [1] - 10:14

**terms** [4] - 4:15, 10:7, 10:8, 10:9

**THE** [46] - 1:1, 1:2, 1:11, 1:20, 2:3, 2:8, 2:12, 2:17, 3:4, 3:8, 3:11, 3:15, 3:18, 3:21, 3:24, 4:6, 5:17, 5:20, 6:9, 6:19, 7:13, 11:6, 12:2, 12:5, 12:10, 12:13, 16:24, 19:11, 19:17, 21:1, 21:3, 22:2, 22:17, 22:20, 22:22, 23:20, 23:25, 24:5, 24:9, 24:16, 24:20, 24:23, 25:1, 25:6, 25:8, 25:17

**themselves** [1] - 26:10

**third** [1] - 9:9

**three** [2] - 11:7, 13:7

**thumbnail** [1] - 10:7

**thwart** [1] - 16:21

**ticker** [1] - 6:17

**timely** [3] - 10:4, 11:16, 19:13

**timing** [1] - 20:12

**today** [1] - 25:13

**together** [1] - 6:11

**tone** [2] - 17:13, 25:9

**took** [1] - 14:18

22:15, 23:14, 23:17

**suggested** [1] - 11:20

**Suite** [4] - 2:5, 2:10, 2:15, 2:19

**supplement** [1] - 15:8

**supplemental** [1] - 19:24

**supplemented** [1] - 15:9

**surgery** [2] - 20:20, 21:10

**surprises** [2] - 8:3, 9:5

**SW** [3] - 2:10, 2:14, 2:19

**switch** [1] - 24:22

**wondering** [1] - 22:6
**word** [3] - 6:1, 14:18, 17:15
**works** [1] - 24:25
**world** [1] - 16:18
**written** [14] - 5:2, 5:16, 6:7, 7:1, 7:16, 7:23, 9:6, 9:9, 9:13, 9:14, 11:1, 14:6, 16:16, 19:7

## Y

**year** [5] - 8:5, 8:21, 18:4, 18:9, 22:10
**years** [3] - 12:18, 12:24, 17:18
**yesterday** [2] - 4:1, 20:8

## Z

**zero** [2] - 5:8, 14:8