Philip S. Van Der Weele, OSB #863650
Email: phil.vanderweele@klgates.com
Elizabeth White, OSB #204729
Email: elizabeth.white@klgates.com
K&L GATES LLP
One SW Columbia Street, Suite 1900
Portland, Oregon 97204
Telephone: (503) 228-3200
Facsimile: (503) 248-9085

Attorneys for Defendants Pitney Bowes Inc.,
Pitney Bowes Global Financial Services LLC,
The Pitney Bowes Bank, Inc., and Wheeler
Financial from Pitney Bowes Inc.

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| PACIFIC OFFICE AUTOMATION INC., an Oregon corporation,<br><br>Plaintiff,<br><br>v.<br><br>PITNEY BOWES INC., a Delaware corporation; PITNEY BOWES GLOBAL FINANCIAL SERVICES LLC, a Delaware limited liability company; THE PITNEY BOWES BANK, INC., a federal banking institution; and WHEELER FINANCIAL FROM PITNEY BOWES INC., a Delaware corporation,<br><br>Defendants. | Case No. 3:20-cv-00651-AC<br><br>**DEFENDANTS' MOTION TO MODIFY STIPULATED PROTECTIVE ORDER FOR THE LIMITED PURPOSE OF OBTAINING AN ANSWER TO INTERROGATORY 14**<br><br>**Oral Argument Requested** |

DEFENDANTS' MOTION TO MODIFY
STIPULATED PROTECTIVE ORDER

K&L Gates LLP
One SW Columbia Street, Suite 1900
Portland, Oregon 97204
Telephone: +1 503 228 3200

## L.R. 7-1 CERTIFICATION

Pursuant to L.R. 7-1, the undersigned counsel for Defendants certifies that he made a good faith effort to resolve the disputes described herein by numerous emails and by a telephone conference on June 2, 2021, but that the parties have not been able to resolve those disputes.

## MOTION

Pursuant to FRCP 26(c), L.R. 26-4(a), paragraph 8 of the Stipulated Protective Order in this case (Doc. 29) (the "SPO"), Defendants (sometimes collectively "Pitney Bowes") move the Court for an order modifying paragraph 8 of the SPO to enable a technical person at Pitney Bowes with no customer-facing responsibilities to use six Excel spreadsheets that contain certain customer information derived from documents that Plaintiff has designated as "Attorneys Eyes Only" for the limited purpose of running a search against the Pitney Bowes customer database to determine which of those customers in the Excel spreadsheets had been a customer of Pitney Bowes during the term of the Dealer Agreement, from June 30, 2016 – December 25, 2019. The technical person would sign the agreement to be bound by the SPO in the form of Exhibit A to the SPO.

## MEMORANDUM

I. **FACTUAL BACKGROUND**

   A. **Plaintiff's Professed Inability to Answer Interrogatory 14**

This motion continues a saga that began 10 months ago, when, in early October 2020, Defendants served their First Set of Interrogatories on Plaintiff. This set included two interrogatories - 13 and 14 - designed to provide information fundamental to the counterclaim of Pitney Bowes, Inc. ("PBI") against Plaintiff for breach of section 6.03(2) of the Dealer Agreement. In its counterclaim, PBI alleges that Plaintiff breached 6.03(2) of the Dealer Agreement by replacing existing PBI equipment the customer had with equipment manufactured

by one of PBI's competitors, Francotyp-Postalia ("FP").  *See* Doc. 60, p. at 20, ¶¶ 1-5. Interrogatory 13 asks Plaintiff for the identity of all customers to whom it sold or arranged leases for FP equipment during the approximate term of the Dealer Agreement (June 30, 2016 – January 31, 2020).  Interrogatory 14 asks Plaintiff to identify the subset of the customers identified in response to Interrogatory 13 who had PBI equipment until Plaintiff replaced it with FP equipment.

Plaintiff (sometimes referred to as "POA") has appropriately answered Interrogatory 13 but not Interrogatory 14.  In response to Interrogatory 13, Plaintiff produced six spreadsheets in PDF format that identified the names and addresses of POA customers with FP equipment, as well as additional information, such as the type of FP equipment and the duration of the customer's lease, if applicable.  Those six PDF files are attached as Exhibits 1-6 to the Declaration of Philip Van Der Weele ("Van Der Weele Decl.") filed herewith, all of which are filed under seal because Plaintiff designated them as "Attorneys Eyes Only" under the SPO.  Van Der Weele Decl. ¶ 5. Interrogatory 14 seeks a subset of the information in Interrogatory 13—those customers who had PBI equipment at the time Plaintiff flipped them over to FP equipment.  Each one of those flips from PBI equipment to FP equipment constitutes a breach of section 6.03(2), and, presumably in recognition of their relevance, the Court granted PBI's First Motion to Compel, which included Interrogatory 14 (Doc. 52).

Notwithstanding the granting of the First Motion to Compel, Plaintiff has rejected every attempt and proposal by PBI to obtain this information:  The latest statement of Plaintiff's position is in Plaintiff's Second Supplemental Response to Defendants' First Set of Interrogatories dated July 23, 2021 ("Second Supplemental Response").  There, Plaintiff says that it is impossible for it to identify the customers it flipped from PBI to FP equipment:

> POA does not track such information or keep available information regarding older/displaced equipment; POA has no information regarding PBI equipment unless it was sold/leased by POA, as POA only maintains its own customer information and not others' information, as POA considers this to be confidential and does not take/keep it.

> ***POA has performed additional searches, based on the good faith promises to do so, and hereby confirms that it does not have the ability to track this information on a broad basis. POA's system does not contain tracking of displaced contracts/manufacturers.***[1]

B. **Pitney Bowes' Proposal to Answer Interrogatory 14 Itself, Based on the Spreadsheets Plaintiff Produced in Response to Interrogatory 13**

In the face of Plaintiff's professed inability to identify the customers Plaintiff flipped from PBI to FP equipment, Defendants have made a proposal to make this identification themselves. Plaintiff's position is that this proposal would require a modification of the SPO, and Plaintiff will not stipulate to the modification. Plaintiff's position leaves Defendants in a nonsensical catch-22: Plaintiff says it cannot provide the information to Defendants, yet plaintiff objects to enabling Defendants to look through their own database to obtain it. That catch-22 has precipitated this Motion to Modify the SPO to enable Defendants to implement their proposal to answer Interrogatory 14 themselves.

Defendants' proposal is the following series of steps:

1. Step 1: Convert a subset of the information in the six PDF spreadsheets Plaintiff produced into Excel spreadsheets (electronically searchable)

    a. The K&L Gates document processing group has already performed this conversion under the direction of Defendants' counsel of record and K&L Gates Partner Philip Van Der Weele. Van Der Weele Decl. ¶ 7.

    b. Attached as Exhibits 8-13 to the Van Der Weele Declaration filed under seal herewith are six Excel spreadsheets: one spreadsheet corresponding to, but containing only a

---

[1] Plaintiff's Second Supplemental Response is attached as Exhibit 7 to the Van Der Weele Declaration filed herewith. The quoted language is found at page 2 of Exhibit 7 (internal page 16 of the Second Supplemental Response). The language in regular font first appeared in Plaintiff's [First] Supplemental Response to Defendants' First Set of Interrogatories provided on April 20, 2021; the language in bold and italics was added in the Second Supplemental Response.

subset of the information in, each of the six PDFs POA produced in response to Interrogatory 13.[2] Van Der Weele Decl. ¶¶ 7, 8.

    c. Per the instructions of Defendants' counsel, most of the columns in the six PDF spreadsheets produced by Plaintiff were <u>not</u> converted into Excel; only the bare minimum of information necessary to answer Interrogatory 14 was converted. The information converted to Excel is customer name and address and the address where the equipment is located. The rest of the information in the six PDFs was not converted to Excel and hence would never reach Pitney Bowes under the proposal.[3] Van Der Weele Decl. ¶ 7.

2. <u>Step 2</u>: Provide the native Excel spreadsheets to a technical person at Pitney Bowes.[4]

    a. The technical person would not have any customer-facing responsibilities.

    b. The technical person would sign the agreement to be bound by the Protective Order set forth in Exhibit A to the SPO.

3. <u>Step 3</u>: The technical person would use the Excel spreadsheets in conjunction with Pitney Bowes' customer database to determine which customers in the spreadsheets had previously been Pitney Bowes customers. In non-technical terms, the customer information (names and addresses) in the Excel spreadsheets would function as search terms that would be run against Pitney Bowes' customer data base. To run this

---

[2] In order to e-file Exhibits 8-13 with the Court, Defendants have had to convert the Excel spreadsheets into PDF format. To be clear, however, Defendants' proposal involves the use of the spreadsheets that are Exhibits 8-13 in native Excel format so that they are electronically searchable. Van Der Weele Decl. ¶ 9.

[3] The information not converted includes the model of FP equipment the customer has; the cost of that equipment; and, if the customer leased the equipment: (i) the amount of the equipment financed through the lease; (ii) the term of the lease; (iii) the monthly lease payment; (iv) the number of remaining payments on the lease; and (v) the outstanding balance on the lease. *See* Exhibits 1-6 to this Declaration filed under seal.

[4] Although persons in Pitney Bowes' legal department and their administrative staff are permitted to view material that has been designated "Attorneys Eyes Only" and hence have every right to view the Excel spreadsheets (SPO, Doc. 29, p. 5, ¶ 8, and p. 4, ¶7(b)), they do not have the technical knowledge to use the Excel spreadsheets to answer Interrogatory 14.

information as search terms, the Excel spreadsheets would be temporarily uploaded to Pitney Bowes' computer system, and they would be removed after the searches had been run.

4. <u>Step 4</u>: For any customer in the Excel spreadsheets that results in a "hit" in the Pitney Bowes' customer data base, that customer would go on a list of "flipped" customers. That list, in turn, would be given to someone at Pitney Bowes for the sole purpose of building a damages model. In order to build this model, the Pitney Bowes person would be using information that is <u>already in Pitney Bowes data base</u> about the customer (*e.g.*, What PBI equipment did the customer last have? When did the customer's last lease with Pitney Bowes end?). The Pitney Bowes person would <u>not</u> receive any of the information in POA's PDF spreadsheets about FP equipment and leases for that FP equipment; indeed, that information is not even in the Excel spreadsheets to be given to the technical person (Exhibits 8-13).

## II. ARGUMENT

Paragraph 8 of the SPO authorizes the Court to grant permission for additional persons to receive information that has been designated as "Attorneys Eyes Only," and, more precisely in this instance, to receive information "derived from" information that has been so designated. (Doc. 29, p. 5, ¶ 8.) Although the Ninth Circuit case of *In re Roman Cath. Archbishop of Portland in Oregon* involved, unlike this case, a request to disclose information originally subject to a protective order to the public, that case at least instructs this Court, not surprisingly, to balance the prejudice to PBI of not allowing the modification with the prejudice to POA of allowing the modification. 661 F.3d 417, 424 (9th Cir. 2011).

That balance weighs overwhelming in favor of allowing the limited disclosure requested, subject to the conditions specified in the proposal above. On the one hand, if the Court does not grant the modification of the SPO as requested, the prejudice to PBI is extreme: denial would make it impossible for PBI to prove its counterclaim. Absent the requested modification, PBI

will not be able to systematically identify customers that POA flipped to FP, and Pitney will not be able to prove damages. Thus, denying this Motion would be the equivalent of granting a motion to dismiss with prejudice, even though POA has made no FRCP 12(b)(6) motion and indeed, has filed an answer to the counterclaim instead (Doc. 66). On the other hand, the granting of the requested modification will not prejudice POA in any way. The net result will simply be the creation of a list customers who were formerly Pitney Bowes customers, which will then lead to the accessing of information that Pitney already has in its customer database about those former customers from the time before POA flipped them over to FP.[5]

Based on the meet-and-conferral process, Pitney Bowes expects POA to argue that, despite the limited use of the information and all the safeguards in the proposal, Pitney Bowes cannot be trusted with this information. In other words, POA will in effect ask this Court to assume that Pitney Bowes will not adhere to the SPO. In asking the Court to make that assumption, POA will point out that Pitney Bowes is currently using information about customers to whom POA sold or arranged leases for <u>PBI equipment</u> during the term of the Dealer Agreement to compete with POA, which continues to sell and arrange leases for <u>FP equipment</u>. POA will allege that that is a misuse of customer information.

Even putting aside the threshold hurdle of imputing to Pitney Bowes an unwillingness to follow a Court order, the assumption POA may ask the Court to make is unwarranted for two basic reasons. <u>First</u>, the information POA contends PBI has misused has no connection to the SPO. The allegedly misused information came to PBI in the ordinary course of business during the term of the Dealer Agreement, not through a document production in this litigation. <u>Second</u>, Pitney Bowes has at all times complied with the Dealer Agreement in its treatment of customer

---

[5] Although it would not matter because of section 6.02(5) of the Dealer Agreement as discussed herein, Pitney Bowes would note that the information in Pitney Bowes' customer database about these customers is not information that came from POA in the first place. POA did not bring these customers to Pitney Bowes. These customers were customers of Pitney Bowes until POA flipped them, so Pitney Bowes already had information about them before POA appeared on the scene, and POA did not add to that information.

Page 7 – DEFENDANTS' MOTION TO
MODIFY STIPULATED PROTECTIVE
ORDER

K&L Gates LLP
One SW Columbia Street, Suite 1900
Portland, Oregon 97204
Telephone: +1 503 228 3200

information. Although Pitney Bowes is not, of course, asking the Court to rule now on a forthcoming motion for summary judgment, Pitney Bowes would point the Court to the applicable provisions of the Dealer Agreement so that the Court can see that Pitney Bowes takes its confidentiality obligations under the Dealer Agreement seriously.

Section 6.02(5) of the Dealer Agreement (Doc 1-1) permits PBI to use information about customers in exactly the way PBI has. Section 6.02(5) is a subsection of section 6.02, which is titled "Confidentiality." Section 6.02(5) governs the use of information about "Customers," which is a defined term.[6] Section 6.02(5) provides, in relevant part:

> In addition to the above obligations [set forth in other subsections of 6.02], although PBI may possess (a) the identity of Dealer Customers, (b) the type and kind of service provided to Dealer's Customers in relation to PBI Products, and (c) supplies ordered or received from PBI, PBI will not use such information to market PBI Products, services or supplies to such Dealer Customers, unless otherwise permitted in writing by Dealer, **during (i) the Term and one year thereafter** . . . .

(Doc. 1-1, p. 8 (emphasis added). POA has no evidence that PBI used information about Dealer Customers for competitive purposes before December 25, 2020, which is one year after the expiration of the Dealer Agreement.[7] After December 25, 2020, section 6.02(5) permitted PBI to use information about Dealer Customers competitively.

Rather than providing evidence of a breach of section 6.02(5), POA creates confusion by employing a term of its own making, "Confidential Customer Information" (*e.g.* Complaint, Doc. 1, p. 17, ¶ 82-c). "Confidential Customer Information" is not a term defined anywhere in the Dealer Agreement. Section 1.01(3) of the Dealer Agreement does define the term "Dealer

---

[6] Section 1.01(2) defines "**Customer**" as "a third party that is not an Affiliate of Dealer, and that has purchased or leased PBI Products and/or a license to use PBI Products and/or the right to receive Services from Dealer, but that is not permitted to remarket, sell, license or lease PBI Products to others in the normal course of its business." (Doc. 1-1, p. 1.) "**Dealer**" is also a defined term and refers to POA. (*Id.*, very first paragraph) The term "Dealer Customers" is not a separately defined term; it is simply two defined terms placed back-to-back.

[7] Although the original Term of the Dealer Agreement was for three years from the Effective Date of June 30, 2016 (Doc. 1-1, p. 11, section 7.01(1)), it is undisputed that the parties agreed to extend it three times thereafter, with the third extension expiring December 25, 2019.

Page 8 – DEFENDANTS' MOTION TO MODIFY STIPULATED PROTECTIVE ORDER

K&L Gates LLP
One SW Columbia Street, Suite 1900
Portland, Oregon 97204
Telephone: +1 503 228 3200

Confidential Information," but that definition makes no reference to the defined term "Customer." (Doc 1-1, p. 8.) Similarly, sections 6.02(1) and 6.02(2) govern the use of "Confidential Information" (which includes both "Dealer Confidential Information" and "PBI Confidential Information"), but the defined term "Customers" does *not* appear in those sections either. (Doc. 1-1, pp. 7-8.) In contrast, the defined term "Customers" does appear, repeatedly, in section 6.02(5). That is why the lead-in phrase of section 6.02(5), "In addition to the above obligations," makes sense. That introductory phrase in effect says: "In addition to the above obligations regarding Dealer Confidential Information, here are additional obligations regarding information about 'Dealer Customers.'"

In sum, there is no evidence that PBI has not complied with section 6.02(5) of the Dealer Agreement in its treatment of information about Dealer Customers, and the Court has no basis for assuming that Pitney Bowes would misuse the information in the Excel spreadsheets if one technical person is given access to them and temporarily uploads them to run searches with them against Pitney Bowes' customer data base. Accordingly, Defendants respectfully request that the Court grant the Motion to Modify the SPO for the limited purpose of enabling Defendants to run the searches necessary to answer Interrogatory 14 themselves.

DATED this 2nd day of August, 2021.

        K&L GATES LLP

By:    *s/Philip S. Van Der Weele*
       Philip S. Van Der Weele, OSB # 863650
       Email: phil.vanderweele@klgates.com
       Elizabeth White, OSB #204729
       Email: elizabeth.white@klgates.com
       Phone: (503) 228-3200

Attorneys for Defendants Pitney Bowes Inc., Pitney Bowes Global Financial Services LLC, The Pitney Bowes Bank, Inc., and Wheeler Financial from Pitney Bowes Inc.

# CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of August, 2021, I caused to be served a copy of the foregoing DEFENDANTS' MOTION TO MODIFY STIPULATED PROTECTIVE ORDER FOR THE LIMITED PURPOSE OF OBTAINING AN ANSWER TO INTERROGATORY 14 upon all counsel of record via the Court's CM/ECF electronic service system.

>  Jamison R. McCune, OSB #135547
>  Email: mccune@bodyfeltmount.com
>  BODYFELT MOUNT LLP
>  319 SW Washington St., Suite 1200
>  Portland, OR 97204
>  Tel: 503-243-1022
>      *Attorney for Plaintiff*
>
>  Veronica L. Manolio, *admitted pro hac vice*
>  Email: vmanolio@mf-firm.com
>  MANOLIO & FIRESTONE, PLC
>  8686 E. San Alberto Dr., Suite 200
>  Scottsdale, AZ 85258
>  Tel: 480-222-9100
>      *Attorneys for Plaintiff*

DATED this 2nd day of August, 2021.

>  s/Philip Van Der Weele
>  Philip Van Der Weele, OSB #863650