Philip S. Van Der Weele, OSB #863650
Email: phil.vanderweele@klgates.com
Elizabeth White, OSB #204729
Email: elizabeth.white@klgates.com
K&L GATES LLP
One SW Columbia Street, Suite 1900
Portland, Oregon 97204
Telephone: (503) 228-3200
Facsimile: (503) 248-9085

Attorneys for Defendants Pitney Bowes Inc.,
Pitney Bowes Global Financial Services LLC,
The Pitney Bowes Bank, Inc., and Wheeler
Financial from Pitney Bowes Inc.

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| PACIFIC OFFICE AUTOMATION INC., an Oregon corporation,<br><br>Plaintiff,<br><br>v.<br><br>PITNEY BOWES INC., a Delaware corporation; PITNEY BOWES GLOBAL FINANCIAL SERVICES LLC, a Delaware limited liability company; THE PITNEY BOWES BANK, INC., a federal banking institution; and WHEELER FINANCIAL FROM PITNEY BOWES INC., a Delaware corporation,<br><br>Defendants. | Case No. 3:20-cv-00651-AC<br><br>**DEFENDANTS' THIRD MOTION TO COMPEL (RESPONSES TO INTERROGATORY NO. 17 AND TO THIRD REQUEST FOR PRODUCTION OF DOCUMENTS (REQUESTS 42-45))**<br><br>**Oral Argument Requested** |

DEFENDANTS' THIRD MOTION
TO COMPEL

K&L Gates LLP
One SW Columbia Street, Suite 1900
Portland, Oregon 97204
Telephone: +1 503 228 3200

## L.R. 7-1 CERTIFICATION

Pursuant to L.R. 7-1, the undersigned counsel for Defendants certifies that he made a good faith effort to resolve the disputes described herein, but that the parties have not been able to resolve those disputes.

## MOTION

Pursuant to Federal Rules of Civil Procedure ("FRCP") 26 and 37, and L.R. 37-1, Pitney Bowes Inc. ("PBI"), Pitney Bowes Global Financial Services LLC, The Pitney Bowes Bank, Inc., and Wheeler Financial from Pitney Bowes Inc. (together with PBI, "Defendants") move the Court for an Order compelling Plaintiff Pacific Office Automation Inc. ("POA" or "Plaintiff") to provide responses to Interrogatory No. 17 from Defendants' Second Set of Interrogatories ("Interrogatories") and Requests for Production 42-45 from Defendants' Third Requests for Production ("RFPDs").

## MEMORANDUM

### I. INTRODUCTION AND BACKGROUND

Defendants make this Third Motion to Compel because of Plaintiff's refusal to answer one Interrogatory or to produce any financial statements in response to RFPDs, all of which were timely served, and all of which are relevant to the millions of dollars of damages POA is seeking. On May 21, 2021, Defendants served a single Interrogatory (No. 17) and four document requests (RFPD Nos. 42-45). POA did not serve objections to these requests until July 8, 2021, **more than two weeks after they were due**, and then it refused to answer or provide documents in response to any of them. Exs. A & B (POA Responses to Second Set of Interrogatories (No. 17) and Third Requests for Production (Nos. 42-45)).[1]

---

[1] All references to Exhibits are to the Declaration of Philip S. Van Der Weele in Support of Defendants' Third Motion to Compel (Responses to Interrogatory No. 17 and Third Requests for Production of Documents (Requests 42-45)).

POA's objections for not responding to the discovery requests fail both substantively and procedurally. Substantively, POA's objection to Interrogatory No. 17 on the basis that it exceeds the 25-interrogatory limit under FRCP 33(a) because of "discrete subparts" in Defendant's previously served interrogatories is unfounded. Case law is clear that where interrogatory subparts are logically related to the primary question and seek "who, what, why, where, how" information, they do not count as discrete subparts against the 25-interrogatory limit. Under this settled law, Defendants have only served 19 interrogatories, including discrete subparts: 16 original interrogatories plus two discrete sub-parts in those original sixteen plus one for Interrogatory No. 17. POA's objection that Interrogatory No. 17 is irrelevant to the case also fails. Interrogatory No. 17 seeks information about multiple units of a particular piece of equipment that PBI sold to POA for which POA now wants a refund (as the remedy for a claim of rescission) and which are also included in POA's separate damages calculation of lost profits. POA's relevance objection to the RFPDs likewise fails. The documents requests seek financial statements relevant to POA's damages claim for lost profits. In sum, POA has alleged millions in damages, and Defendants are entitled to assess POA's calculations through evaluation of basic documentary evidence as to its finances.

Procedurally, POA did not respond to the written requests until more than two weeks after the June 21, 2021, deadline for responding had passed. Therefore, by operation of L.R. 26-5(a), POA waived any objections.

## II. ARGUMENT

### A. Interrogatory No. 17 Does Not Exceed the 25-Interrogatory Limit and Seeks Relevant Information.

#### 1. Defendants Do Not Exceed the FRCP 33(a) 25-Interrogatory Limit

POA's primary objection to Defendants' Interrogatory No. 17 is that it exceeds the 25-interrogatory limit under FRCP 33(a). Specifically, POA argues that Defendants have exceeded

Page 2 – DEFENDANTS' THIRD
MOTION TO COMPEL

K&L Gates LLP
One SW Columbia Street, Suite 1900
Portland, Oregon 97204
Telephone: +1 503 228 3200

the "presumptive limit already" based on Defendants' use of subparts in certain of its First Set of Interrogatories.

POA is wrong that Defendants' use of subparts has caused it to exceed the limit under FRCP 33(a).  Use of subparts in interrogatories does not necessarily mean the interrogatory should be counted as multiple requests.  Rather, the standard is whether "the question in the subpart can be answered independently of the 'primary' question." *Ott v. Mortg. Invs. Corp. of Ohio*, No. 3:14-CV-00645-ST, 2015 WL 691643, at *1 (D. Or. Feb. 17, 2015) (citing *Phillips v. Clark Cnty. Sch. Dist.*, No. 10–02068, 2012 WL 135705, at *6 (D. Nev. Jan. 18, 2012)).  When an interrogatory subpart "introduces a line of inquiry that is separate and distinct from the inquiry made by the portion of the interrogatory that precedes it, the subpart must be considered a separate interrogatory no matter how it is designated." *Ott*, 2015 WL 691643, at *1 (citing *Thomas v. Yates*, No. 05–01198, 2009 WL 3273280, at *2 (E.D. Cal. Oct. 9, 2009)).  For example, asking for information and asking a party to identify documents relating to that information properly counts as two separate interrogatories, *Ott* at *1, as does seeking multiple answers to a single interrogatory by reference to other requests.  *See Childs v. T-Mobile, Inc.*, No. 09-CV-768-AC, 2010 WL 11700661, at *3 (D. Or. Mar. 2, 2010) (Acosta, J.) (single interrogatory seeking "facts and legal theory upon which" party's responses to each of 28 requests for admission were based was not in fact single interrogatory because it required "defendants to answer multiple distinct and unrelated questions regarding this case").

Where subparts are aimed at obtaining additional details about the general topic or theme of the primary interrogatory, however, they are properly considered a single request.  *Id.*  An example of subparts that are "logically or factually subsumed within and necessarily related to the primary question" are subparts seeking "who, what, when, where and how" information relating to a common theme.  *Ott,* 2015 WL 691643, at *1 (citation omitted).

Page 3 – DEFENDANTS' THIRD
MOTION TO COMPEL

K&L Gates LLP
One SW Columbia Street, Suite 1900
Portland, Oregon  97204
Telephone: +1 503 228 3200

Five of the seven of Defendants' Interrogatories that used subparts were of the "who, what, when, where and how" variety.[2] *See generally* Ex. C (First Set of Interrogatories). For example, Interrogatory No. 5 reads as follows:

> **INTERROGATORY NO. 5**: For each instance in which any of the Defendants refused to "provide POA with 'buyout' figures and/or necessary information of existing customers" (as alleged in paragraph 62(b) of the Complaint), identify (a) the information POA requested, (b) the employee, representative, agent or contractor of Defendants to whom the request was made, (c) the date of the request, and (d) amount of financial harm POA incurred as a result of Defendants' alleged refusal to provide the information.

Ex. C at 5. The four subparts here seek the "what" (subparts a and d), "who" (subpart b), and "when" (subpart c) related to instances in which POA alleges Defendants refused to provide buyout figures to customers. These subparts seeking factual information are logically subsumed in the theme of the interrogatory, which is POA's allegations regarding Defendants' actions related to buying out accounts.

Another representative example is Interrogatory No. 16:

> **INTERROGATORY NO. 16**: Identify all "other competing brands" that POA excluded from its sales portfolio as a result of alleged misrepresentations and material omissions by Defendants (as alleged in paragraph 97(c) of the Complaint), including (a) the name of the competing brand, and (b) the date POA excluded such competitor from POA's sales portfolio.

*Id.* at 8. This Interrogatory merely asks for the name of the competing brand—the "who"—and the date on which the brand was excluded—the "when." The primary question is about competing brands, and the subparts seek information about those brands.

The remaining Interrogatories that use subparts cannot be counted as separate requests. For these Interrogatories, all of the subparts are properly read as being subsumed in the main theme or topic of each request. *See* Ex. C at 4 (Interrogatory No. 1, asking for customer name,

---

[2] Defendants agree that Interrogatory Nos. 6 and 7 should each be counted as two requests each, because they seek both information (several subparts each) and the identification of communications (one subpart each). *See* Ex. C at 5-6. However, the addition of two requests to the 17 propounded puts Defendants at 19, still six interrogatories under the limit.

Page 4 – DEFENDANTS' THIRD
MOTION TO COMPEL

K&L Gates LLP
One SW Columbia Street, Suite 1900
Portland, Oregon 97204
Telephone: +1 503 228 3200

dates, and amount of sales); 4-5 (Interrogatory No. 4, asking for name of individual making accusations and customer name); 6 (Interrogatory No. 9, asking for method of computing alleged damages and date alleged damages were incurred). Therefore, Defendants have not exceeded the limit on interrogatories and POA should be compelled to answer Interrogatory No. 17.

    **2. The Information Interrogatory No. 17 Seeks is Relevant to POA's Claims for a Refund and for Damages of Lost Profits.**

Plaintiff's other objections to Interrogatory No. 17—that it seeks information not relevant to the case, is burdensome and overbroad, and is not proportional to the needs of the case—are unavailing. Interrogatory No. 17 seeks information about the units of a particular piece of equipment manufactured by PBI, the SendPro 300, that PBI sold to POA for resale under the Dealer Agreement that is the subject of this case. Those units are the subject of at least two separate disputes between the parties regarding, among other issues, remedies. RFPD No. 42 corresponds to Interrogatory No. 17 by seeking the documents POA relied on to answer Interrogatory No. 17.

First, Interrogatory No. 17 seeks information that is relevant to POA's claim that it is entitled to a refund of $373,500 that it spent in buying SendPro 300s on a theory of rescission. *See* Exs. D (POA's Second Supplemental Response to Interrogatory No. 9) at 4, E.[3] Among the many other elements of rescission POA would have to satisfy to get a refund is an obvious one: return the SendPro 300s to PBI, which POA has not offered to do. *See, e.g.*, *Snyder v. Rhoads*, 615 P.2d 1058, 1063 (1980) (holding that party "waived power of rescission" where "[h]e retained the property and attempted to operate it for a year and a half after discovering the alleged fraud and continued his own performance").

Interrogatory No. 17 is designed to find out what happened to the SendPro 300s to determine if the rescission that POA seeks, which would necessarily include a return/refund, is

---

[3] POA's response to Interrogatory No. 9 references purchase order 296451, which was for SendPro 300s. Exhibit E is a copy of this purchase order as used at Mr. Pitassi's deposition.

even a possibility. The SendPro 300s fall into one of three categories relevant to POA's claim for refund: (1) Currently in possession of the customer, in which case POA would not be able to return to PBI for a refund; (2) originally placed with a customer (either through sale or lease), but subsequently returned to POA and sitting in POA's warehouse (in which case the return element of rescission would be disputed); or (3) never placed with a customer but instead has been sitting in a POA warehouse since the time of purchase in 2017 (in which case at least the return element for rescission could be satisfied, though not necessarily any of the other elements).[4] Given that POA could not say whether POA had any unsold SendPro 300s in its warehouse,[5] POA has no basis for objecting to Interrogatory No. 17 on either relevance or burdensomeness grounds.

Interrogatory No. 17 is also relevant to POA's claim for lost profits of $1.75 million. *See* Ex. D at 4-5. Any lost profits calculation must include a revenue number. Interrogatory No. 17 asks for the prices at which POA sold the SendPro 300s, and the answer to that will generate a

---

[4] The existence or non-existence of the Customer BPN ("Business Partner Number") requested in Interrogatory 17 would indicate whether POA had ever placed a given SendPro 300 with a customer. If a SendPro 300 never left POA's warehouse, it would not have a Customer BPN.

[5] POA President Doug Pitassi was identified in POA's First Supplemental Response to Defendants' First Set of Interrogatories as the individual who "may offer the damage calculation(s) and estimations extrapolating from known data of the amount of Pitney equipment that POA was able to place/sell during the parties' relationship." Ex. G. at 5 (POA's supplemental response to Interrogatory No. 9, which is part of Deposition Exhibit 29 used in Mr. Pitassi's deposition). Yet Mr. Pitassi could not say whether POA had any unsold SendPro 300s in its warehouse:

> Q. Well, but I want to draw a distinction here between equipment that you sold - I'm just talking about SP300s here. Okay?
> A. Right.
> Q. I want to draw a distinction between equipment that you sold and then came back to you for one reason or another versus equipment -- SP300s that you never sold in the first place. As you sit here today can you tell me how many SP300s are in the POA warehouse that POA never sold in the first place?
> A. I don't know that.

Ex. F (May 17, 2021, D. Pitassi Dep.) at 189:17-190:3.

revenue number, which is relevant to any lost profits calculation. POA should therefore be compelled to answer Interrogatory No. 17 and RFPD No. 42.

### B. RFPD Nos. 43-45 Seek Financial Statements that Are Relevant and Proportional to the Needs of the Case.

Defendants are entitled to POA's financial statements in order to test the validity of POA's calculation of $1.75 million in lost equipment sales profit. Ex. D at 4-5. The lost profits calculation that appears in POA's most recent interrogatory response – the Second Supplemental Response—is incoherent. That calculation is:

> Lost Profits = $5.15 million "true cost of goods sold" minus $3.4 million "actual cost paid to Pitney for products, which equals 1.75 million.

*Id.* This calculation is incoherent because it does not include a revenue number. POA's president suggested during his deposition that the $5.1 million is actually a revenue number,[6] which would mean that POA is claiming a profit margin of $1.75 million/$5.15 million = 34%. The income statements Defendants seek are relevant to test the validity of that claimed profit margin.

The income statements are further relevant because the deposition testimony of POA President Doug Pitassi revealed that this $1.75 million is a gross profit number, after subtracting only the cost of equipment purchased from PBI (the $3.4 million), rather than a net profit number that further subtracts POA's costs of reselling the equipment that it purchased from PBI. Mr. Pitassi testified in his deposition that POA did not include selling costs in its lost profits computation, and that, if they were included, the net profit margin would actually be negative:

> Q. What I'm getting at is do you have a line
> item on your income statement that captures - put
> aside the nuances of net of rebates and that sort
> of thing - but do you have a line item on POA's
> income statements that reference -- that captures

---

[6] Ex. F at 221:9-10. Although Defendants have numbered Exhibit F in accordance with the Local Rules, references are to the page and line numbers of the deposition transcript for ease of reference.
Page 7 – DEFENDANTS' THIRD
MOTION TO COMPEL

K&L Gates LLP
One SW Columbia Street, Suite 1900
Portland, Oregon 97204
Telephone: +1 503 228 3200

> the purchase price that you paid manufacturers for equipment?
> A. Correct. Yes.
> Q. And do you have another -- a different line item or line items on the income statement for sales expenses?
> A. Right. Direct expenses.
> Q. I'm sorry?
> A. Direct expenses. Sales expense. Exactly.
> Q. Right.
> A. And then after paying all the salespeople which - you know, it doesn't hurt to get into this to let everybody know that the business model, a hundred percent of the revenue, 50 percent give or take goes to sales of equipment in the model to what you're talking about.
> Q. I'm talking about an income statement; I'm not talking about a model.
> A. It's the same -- well, answer your question. So the revenue less cost of goods, less cost of direct cost, which would include sales compensation, benefits that we pay the salespeople, all the costs - and then that has nothing to do with indirect cost. Right? The sales department loses between zero - and I said this before earlier - between maybe zero-two to four percent in the department to get the after-market. So we're paying out commissions and costs and sales engineers and all those costs to lose a little bit of money in the sales department to get the after-market, the service, the supplies that we sell. Things like this. And so when you ask that question, the million seven is off of the equipment revenue versus the cost of goods. **We made a million seven** [*i.e.*, $1.7 million] **before all those other costs hit.**

Ex. F (May 17, 2021, D. Pitassi Dep.) at 217:22-219:11 (emphasis added). Therefore, Defendants are entitled to POA's income statements to see what gross margins are (revenues minus cost of equipment purchased) and what net profit margins (gross profit margins minus the costs of selling the equipment that POA purchases from manufacturers).

As to proportionality, the burden on POA of producing audited financial statements is not great—there is only one set of audited financial statements and income statements for federal tax purposes for each year, and this case involves only on only a few years. On the other side of the balance, POA is claiming lost profits of $1.75 million on equipment and $1.3 million in lost service revenue profit, Ex. D at 4-5, without providing any actual documentary evidence to

Page 8 – DEFENDANTS' THIRD
MOTION TO COMPEL

K&L Gates LLP
One SW Columbia Street, Suite 1900
Portland, Oregon 97204
Telephone: +1 503 228 3200

support the same. POA's income statements are obvious starting documents relevant to test the validity of these claims.

POA's additional objections that the requests for financial documents are overbroad and seek proprietary and highly confidential financial data are unavailing for two reasons. First, Defendants have kept the requests narrow. It is only in the highly unlikely event that POA does not have documents responsive to RFPD No. 43 (audited income and cash flow statements) that it would have to produce documents in response to RFPD No. 44, which seeks income statements and cash flow statements as used for maintenance of lines and credit and loans.[7] Therefore, POA needs to produce documents only in response to RFPD No. 43 *or* 44. Further, in RFPD No. 45, Defendants seek income statements used to prepare tax returns, but Defendants are clear that they are not seeking copies of certain federal schedules and forms, only the income statements used to create those schedules or forms. Moreover, Defendants seek these documents only for a limited time—the three calendar years of the Dealer Agreement (2016-19), two years prior to the Dealer Agreement to establish a baseline (2014-15), and the year following the Dealer Agreement (2020). Defendants require documents for the years surrounding the dates the Dealer Agreement was in effect in order to assess whether the alleged impact on POA's revenues and profit may have been due to factors beyond the POA-PBI relationship. Second, POA can mark the documents it produces pursuant to the Stipulated Protective Order, ECF No. 29, which permits POA to mark the documents as Confidential or Attorneys' Eyes Only.

POA therefore requests that the Court compel POA to respond to RFPD Nos. 43 (or 44) and 45.

---

[7] RFPD No. 44 is a fallback request for different types of financial documents in the unlikely event that POA does not have audited financials. Thus, RFPD No. 44 is subject to this Third Motion to Compel, if, but only if, POA does not have audited financial statements.

### C. POA Has Waived Its Objections to the Requests.

In response to the single Interrogatory and four RFPDs at issue in this Motion, POA did not respond until July 8, more than ***two weeks*** after the June 21 deadline for responding had passed. POA never approached Defendants for an extension of time. Accordingly, pursuant to L.R. 26-5(a), POA waived any objections to Interrogatory No. 17 and RFPD Nos. 42-45.

## III. REQUEST FOR ATTORNEY'S FEES

Without waiving its right to seek attorney's fees under any other law, including under section 6.05(1) of the Dealer Agreement, Defendants respectfully request, pursuant to FRCP 37(a)(5), an order requiring POA and/or POA's attorneys to pay Defendants' reasonable expenses incurred in making this motion, including attorney's fees.

DATED this 2nd day of August, 2021.

               K&L GATES LLP

               By: */s/Philip S. Van Der Weele*
                   Philip S. Van Der Weele, OSB # 863650
                   Email: phil.vanderweele@klgates.com
                   Elizabeth White, OSB #204729
                   Email: elizabeth.white@klgates.com
                   Phone: (503) 228-3200

               Attorneys for Defendants Pitney Bowes Inc., Pitney Bowes Global Financial Services LLC, The Pitney Bowes Bank, Inc., and Wheeler Financial from Pitney Bowes Inc.

# CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of August, 2021, I caused to be served a copy of the foregoing DEFENDANTS' THIRD MOTION TO COMPEL (RESPONSES TO INTERROGATORY NO. 17 AND THIRD REQUESTS FOR PRODUCTION OF DOCUMENTS), upon all counsel of record via the Court's CM/ECF electronic service system.

> Jamison R. McCune, OSB #135547
> Email: mccune@bodyfeltmount.com
> BODYFELT MOUNT LLP
> 319 SW Washington St., Suite 1200
> Portland, OR 97204
> Tel: 503-243-1022
>
> *Attorney for Plaintiff*
>
> Veronica L. Manolio, *admitted pro hac vice*
> Email: vmanolio@mf-firm.com
> MANOLIO & FIRESTONE, PLC
> 8686 E. San Alberto Dr., Suite 200
> Scottsdale, AZ 85258
> Tel: 480-222-9100
>
> *Attorneys for Plaintiff*

DATED this 2nd day of August, 2021.

    */s/Philip S. Van Der Weele*
    Philip S. Van Der Weele, OSB #863650