Jamison R. McCune, OR Bar No. 135547
mccune@bodyfeltmount.com
**BODYFELT MOUNT, LLP**
319 SW Washington Street, Suite 1200
Portland, Oregon 97204
(503) 243-1022
*Attorneys for Plaintiff*

Veronica L. Manolio, AZ Bar No. 020230
vmanolio@mf-firm.com
**MANOLIO & FIRESTONE, PLC**
8686 E. San Alberto Dr., Suite 200
Scottsdale, Arizona  85258
(480) 222-9100
*Pro Hac Vice Attorney for Plaintiff*

# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

# PORTLAND DIVISION

| | |
|---|---|
| PACIFIC OFFICE AUTOMATION, INC., an Oregon corporation,<br><br>                              Plaintiff,<br><br>v.<br><br>PITNEY BOWES, INC., a Delaware corporation; PITNEY BOWES GLOBAL FINANCIAL SERVICES, LLC, a Delaware limited liability company; THE PITNEY BOWES BANK, INC., a federal banking institution; WHEELER FINANCIAL FROM PITNEY BOWES, INC., a Delaware corp.;<br><br>                              Defendants. | Case No. 3:20-cv-00651-AC<br><br><br>**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO COMPEL FURTHER RESPONSES TO FIRST SET OF INTERROGATORIES AND PRODUCTION OF DOCUMENTS** |

Defendants' Motion to Compel Further Responses to First Set of Interrogatories and First Set of Requests for Documents (Doc. 67) should be denied in its entirety as it is clear that Defendants (collectively "Pitney") rely on technicalities to keep dragging Plaintiff ("POA") POA into discovery disputes.  Pitney argues form over substance but has not articulated any information it lacks to adequately prepare its defenses.

Page 1 – PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO COMPEL FURTHER RESPONSES TO NUI'S AND RFP'S

Pitney's motion first asks this Court to compel a "correct calibration" of Interrogatory-RFP pairs.  Pitney does not suggest that POA failed to provide information, nor could it.  Whether Pitney sought information by NUI or RFP, POA provided fulsome responses and thousands upon thousands of documents.  In fact, Pitney recognizes that POA made six additional production(s) of information since the last Motion to Compel and that POA has supplemented its prior discovery responses.  Pitney's current complaint is that POA's answers are both "under-inclusive" and "over-inclusive."

At the same time, Pitney has disclosed more than **eighty-seven thousand, seven hundred and fifty (87,750)** pages while identifying only roughly five hundred (500) of those as being specific to any one of POA's discovery.  In other words, Pitney disclosed over 87,250 pages as "custodial" documents without specificity but complains that POA's custodial production lacks sufficient "detail" for its benefit.

Next, Pitney asks the Court to compel a search (on RFP No. 30) that Pitney never even asked for before filing this motion (and suggests that POA waived a right to object).

This discovery motion practice is becoming unreasonable.  POA has fully met the purpose and intent of discovery, and this Court should deny Pitney's "renewed" request.

## RESPONSIVE MEMORANDUM

### I.  POA HAS ABSOLUTELY COMPLIED WITH THE COURT'S ORDER.

POA first responded to Pitney's First Set of NUIs and First Set of RFPs in December 2020.  POA provided Pitney information that the documents were a custodial production, and POA provided separate Verifications of in-house counsel, Andrew Salgado, who verified that POA provided the information as it was kept in the normal course of business.  Mr. Salgado verified that he was able and willing to share the processes used to locate this business information.  *See,* Verifications as **Exhibit A** here.

POA's custodial production complied with FRCP 34(b)(2)(E)(i)-(ii) by producing documents as kept in the usual course of business **and** by producing emails in the exact format they have been continuously maintained (native email files that were completely unaltered). *See*, Declaration of POA Counsel attached as **Exhibit B**, incorporated here. On the Interrogatories, POA not only provided business records, but POA also attempted to meet the requirements of FRCP 33(d)(1) by and endeavoring to identify the documents that were responsive to each category requested and/or its corresponding interrogatory.

Pitney complained that POA's original production was inadequate and that its use of business records was insufficient to answer the interrogatories. Although POA disagreed, it readily engaged in the meet and confer process with opposing counsel. POA then responded to Pitney's Motion to Compel (Doc. 38) and its Second Motion to Compel (Doc. 43).

On March 29, 2021, the Court ordered POA to supplement multiple of its prior discovery responses/provide additional information. That same date (March 29th), Pitney counsel began arguing about upcoming depositions and the persons POA would designate as 30(b)(6) deponents. *See*, **Exhibit B**. This back-and-forth "discussion" lasted through April 7, 2021, as Pitney counsel continued to raise insignificant issues as disagreements. *Id*. What should have been easy scheduling issues and designating deponents was made miserable by the "interlined" emails and constant quibbling. *Id*. Pitney, of course, threatened further Motion(s) to Compel. *Id*., citing April 7th email.

Despite Pitney's continual arguments and bickering, POA continued to offer good faith compromises. The parties scheduled depositions for April 20-23 in Portland to be held in the office of Pitney's counsel. POA counsel committed to provide supplemental discovery and responses during this same timeframe, and Pitney was well aware that POA was making efforts while it was also devoting significant time to depositions and other discovery responses in this case.

Page 3 – PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO COMPEL
FURTHER RESPONSES TO NUI'S AND RFP'S

### A.    POA's First Supplemental Responses to Discovery

Pursuant to the Court's Order, POA provided Supplemental Responses to both the NUIs and the RFPs on April 20, 2021.  *See*, **Exhibit B**.[1]  In addition to these April supplements, undersigned committed to continue supplementing as necessary.  *Id*. Undersigned discussed multiple discovery issues with Mr. Van Der Weele in-person during the April deposition dates and confirmed that additional information would be forthcoming.  *Id*.

At this same time, POA was working to timely respond to Pitney's Second Request for Documents (provided on April 13th), which contained multiple additional searches for information and explanations.

Nonetheless, POA was continuing to supplement, to communicate with Pitney counsel, and produce documents and discovery responses in total good faith.  *Id*.

### B.    Pitney's Response to POA Discovery

On April 23rd, Pitney responded to POA's discovery requests without producing a single document.  Instead, Pitney informed POA that it would "begin rolling production" of documents the following week.  *See*, **Exhibit B**.  Pitney's responses were mostly objections, and Pitney just refused to answer any questions about its counterclaims.  *Id*. In response to POA's requests for production, Pitney claimed it would "conduct a search" for responsive documents and identify them.  Pitney has never supplemented or updated its response.  *Id*.  Pitney then objected to POA's ability to take any further discovery.

---

[1]  It is important to note that Pitney counsel has only given the Court copies of the "relevant requests" claiming compliance with Local Rule 37-1. However, multiple of Pitney's complaints are further answered/identified with Interrogatory and RFP responses that Pitney omitted/redacted.  POA will file a supplement to include the full versions of the Responses, as there are several answers incorporated into the "relevant" requests.

Page 4 – PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO COMPEL FURTHER RESPONSES TO NUI'S AND RFP'S

Pitney has made a total of five productions in this case:

**PB_POA_001** was uploaded on April 26, 2021.
   This production contains **36,748 pages**, and not one of those pages is identified as being responsive to any specific request by POA.

**PB_POA_002** was uploaded on May 6, 2021.
   This production contains an additional **41,447 pages**, and not one single page is identified as being responsive to any specific request by POA.

**PB_POA_003** was uploaded on May 12, 2021.
   This production contains an additional **1,993 pages**.  Of those pages, Pitney identified 504 pages as responsive to RFP #2 and 1 page as responsive to #9. The remaining 1,488 pages are unidentified as responsive to a specific request.

**PB_POA_004** was uploaded on May 20, 2021.
   This production contains an additional **7,092 pages**, and only 1 page in the production was identified as being responsive to a specific request (#2).

**PB_POA_005** was uploaded on May 25, 2021.
   This production contains an additional **110 pages** without any page identified as being responsive to any specific request by POA.

In total, Pitney has produced **87,790** pages of allegedly relevant and responsive documentation, and precisely 505 pages are tied to specific requests.  POA is left to guess how the other 87,285 pages relate to the case.

### C.    POA's Continued Good Faith Efforts

On April 29th, POA raised Pitney's insufficiency of its discovery responses and asked to meet and confer.  *See*, **Exhibit B**.  Pitney's counsel refused to have a discussion until POA provided him "a complete list/table of POA's issues."  *Id*.

Although multiple emails were exchanged in the early part of May, and although undersigned counsel offered to meet and confer in Portland (counsel was back in Portland on May 17-18 for more depositions in this case and offered to meet at K&L Gates), Pitney's lawyer refused. *See*, **Exhibit B**. Mr. Van Der Weele reiterated that Pitney would not address any deficiencies unless POA provided him a "table" in advance. *Id.*

It became clear that Pitney would only address discovery on a one-way street. Nonetheless, POA continued to cooperate.

Pitney had given POA a "table" of deficiencies on May 20, 2021, which POA painstakingly responded to point-by-point in advance of a scheduled meet and confer. *See*, **Exhibit B**. Even though POA did not see the issues the same way Pitney did, POA attended the meet and confer in good faith and readily agreed to perform **<u>new</u>** searches that Pitney had not previously asked. As a follow up to the June 2 meet and confer, and based on POA's prior commitments, POA provided:

- POA's Second Supplemental Responses to NUIs

- 2,973 pages of additional documentation tied to specific categories requested

  - *Financial Data and Back-Up Information for Training Costs (including American Express Statements for all of 2017, 2018 and 2019)*

  - *Financial Data and corresponding Purchase Order (PO) information*

  - *Communications with a competing vendor ("FP")*

  - *Emails showing Pitney distributed POA's Customer Account List to POA's Competitor*

- Email productions based on new/broadened search terms Pitney requested

- A Privilege Log

By July 23, 2021, POA confirmed that it had fully resolved every issue that Pitney raised and that it had provided all information it could locate as responsive to the various requests. *See*, **Exhibit B**.

Page 6 – PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO COMPEL
FURTHER RESPONSES TO NUI'S AND RFP'S

II.    **PITNEY'S COMPLAINTS IGNORE THE PURPOSE OF DISCOVERY.**

A.    **Requests for Production and Interrogatory Responses 1, 2, 4-7**

In its original Response to Request for Production, POA provided Pitney with custodial documentation kept by POA.  To comply with FRCP 34(b)(2)(E), it provided:

(i)    Documents as they were kept in the usual course of business; and

(ii)    Electronically stored information (email) produced in the identical form to which it is ordinarily maintained by POA.

FRCP 34(b)(2)(E)(i) provides an "or" method of production.  Documents must be produced as kept in the usual course of business *or* the business must organize and label them to correspond with specific requests.  Part (2)(E)(ii) required POA to produce electronically stored information in the form POA ordinarily maintains, and it did so entirely.  POA produced .pst email files (Outlook) that maintained all the integrity, root data, and metadata, just as if Pitney had accessed POA's email server itself.

Pitney complained that these responses were "over-inclusive" because they referred to the entirety of POA's custodial production.  However, POA's responses fully and adequately provided the information precisely how Rule 34 requires it to be stated.  There cannot be any confusion that POA met its custodial production requirements.

In its March 29, 2021 Order, this Court instructed POA to supplement its responses to RFP Nos. 9, 30, 20 and 35.  For some of the RFPs, Pitney wanted specificity and for others, Pitney wanted documentation that it was promised would be forthcoming.  POA, indeed, supplemented its responses to the specific requests the Court ordered.  *See*, **Exhibit B**.    In good faith, however, POA also supplemented its answers to RFPs 1-8, 13, 14, 19, 22, 26, 33-34.  *Id*.  Every one of those RFPs was detailed with further and specific Bates/disclosed documentation specific to the requests made.  *Id*.

Pitney's current complaint is that RFPs 1, 2 and 4-7 continue to be deficient because they generally cite the email production as "documents relied on" in answering the Interrogatories. Rule 34 expressly allows POA to generally cite the custodial production as information it relied on, and there is no requirement to provide specificity. More importantly, though, <u>POA tied its Interrogatory Responses to the RFPs</u>, which eliminates any need for what Pitney argues is "guesswork."

It remains undisputed that each one of the RFPs at issue (Nos. 1, 2, 4-7) ties directly to the corresponding number Interrogatory. For example, NUI No. 1 asks about Confidential Customer Information, and RFP No. 1 asks POA to produce any/all documents used to answer the NUI. That same "matching" applies to every question at issue in the current dispute. Thus, POA not only provided detail in its RFP Responses, but it also identified with "detail" what documents it used by answering that within the body of responses to Interrogatories. *See*, **Exhibit B**.

FRCP 33(d)(1) is clear that a party responding to interrogatories may rely on business records, and it may "summarize" those business records that are used. The only requirement is that the party relying on business records must specify those records in sufficient detail to enable the interrogating party to locate and identify the documents as readily as the responding party could.

Pitney does not suggest that POA's production withheld information or that its NUI responses lack sufficient detail. Pitney complains that POA has a duty to "update" its spreadsheet and to "correctly calibrate" the RFP and NUI answers. Pitney further argues that POA may not cite examples of proof while reserving a right to supplement.

Given the nature of Pitney's complaints, it is obvious that Pitney is arguing **form**, not the lack of substantive answers and receipt of relevant information.

Page 8 – PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO COMPEL
FURTHER RESPONSES TO NUI'S AND RFP'S

### B.    Request for Production No. 30

RFP No. 30 is **specific**.  Pitney asked POA to produce documents evidencing communications or negotiations that POA had with any entity other than Pitney "to become an authorized dealer of postage meters."  Pitney's instructions clearly stated that the date range applied to discovery should be January 1, 2016 to present.

From January 1, 2016 to date, <u>POA did not negotiate with any other entity to become an authorized dealer</u>.  Thus, the RFP indicated that there were no responsive documents (excepting a possibility of legal communications).  Nothing has changed.

At the time POA signed up to be a dealer of Pitney, POA was **<u>already</u>** a dealer of FP products.  Pitney knew that, and FP was included as an existing brand in the POA/ Pitney Dealer Agreement.  In an abundance of caution, undersigned counsel informed Pitney that FP had canceled its Dealer Agreement and provided the cancellation letter.

Pitney now argues that it is permitted to morph RFP No. 30 from asking about communications "to become an authorized dealer" into a new request for "communications with FP regarding either entering or existing agreements with FP." *See*, **Exhibit B**.  Pitney further argues that POA waived any right to object.

During the June 2 meet and confer, Pitney counsel suggested for the first time that POA was required to run new searches and provide all communications with FP.  Such a request was new, but it was also astonishing.  Pitney knew all along that POA had a relationship with FP, and none of the discovery requests sought FP information.  Pitney was now trying to "bootstrap" a new request into a totally unrelated question.

If Pitney had originally asked for any/all communications between POA and FP related to their ongoing dealer relationship, the request would have been objectionable. POA did not object because the RFP was limited to seeking documents with other brands about "becoming an authorized dealer."  But POA cannot be told that it "waived" a right to object because Pitney decided to change its question.

If Pitney wants more information about the FP relationship and the damages arising from that termination, POA will accommodate that limited request. To be clear, though, **<u>Pitney has never asked for that</u>**. POA cannot be compelled or sanctioned when Pitney unilaterally changed its RFP No. 30 and demanded that POA produce because it "waived" its right to object. Pitney should not be rewarded for filing on this issue.

Additionally, POA feels obligated to respond to the "footnote" comments made by Pitney counsel as fn. 7, 8. First, Pitney counsel suggests that it provided POA a "narrow search" to conduct that would only capture communications between POA and FP in which Defendants are referenced. (*See*, fn. 7.) That allegedly helpful "narrow search" was offered on July 26, after Pitney argued that POA waived all objections to producing FP/POA communications. The offer also came tied to a yet another threat of "do this or we will file a motion to compel." Had Pitney made a good faith effort to receive additional information without the threat that POA had "waived" all objections and was subject to a discovery motion, there would have been a discussion. Next, Pitney makes an argument (fn. 8) that POA excluded a search term ("PB") that it had promised to run. That is not a truthful statement.[2] *See*, **Exhibit B**. Rather, Pitney made suggestions that POA run additional searches using "PB" and "PBI" as search terms and asked that POA report back how many "hits" were captured. The parties agreed to work together if the search produced too many results. POA ran the searches and reported to Pitney that the term "PB" produced more than **94,000** additional emails; POA held back that large production until the parties could have further discussion. A few days later, Pitney

---

[2] In writing this statement, undersigned counsel is very mindful of the Court's comments about professionalism and attacks on opposing counsel. This is not an issue taken lightly, and counsel makes this argument knowing the strength of the words chosen. However, footnote 8 is seriously misleading, and POA cannot ignore such a bold representation that is followed up with Defendants alleged "reservation" to file yet another motion to compel "if POA is not cooperative."

Page 10 – PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO COMPEL FURTHER RESPONSES TO NUI'S AND RFP'S

followed up by claiming that POA "failed to run the search term" and that POA's report was "unacceptable." Pitney demanded another search (with a slight tweak) and offered to work with POA if too many results came up a second time. POA has never refused to work on this issue to find a solution of less than 94,000 additional emails.

Pitney has not moved to compel on the issue of a "PB" search term, so this argument should not have been included in its filing whatsoever. It appears that Pitney is attempting to paint POA/POA counsel as being difficult when that is far from being true. POA has **continually** accommodated Pitney's requests, even when Pitney has expanded its requested items, given specific/suggested search terms, and made the same objections that it complains POA is not entitled to make. POA has consistently taken the high road.

The general purpose of discovery is "to remove surprise from trial preparation so that parties can obtain the evidence necessary to evaluate and resolve their dispute." *Duran v. Cisco Sys., Inc*., 258 F.R.D. 375 (C.D. Cal 2009) (internal citations omitted). Discovery is a "mechanism for making relevant information available to the litigants," and it violates the spirit of the rules when parties use discovery tactically rather than to "expose the facts and illuminate the issues" of a case. *Burlington Northern & Santa Fe Ry. v. United States District Court*, 408 F.3d 1142, 1148-49 (9th Cir. 2005). Perhaps best explained by U.S. District Court Magistrate Judge, J. Richard Creatura:

> "The purpose of the discovery rules is to facilitate the exchange of relevant information - not to give one side or the other the right to receive sanctions. Although sanctions should properly be awarded in egregious circumstances, it is not unusual, even expected, that parties involved in difficult and document-intensive cases will not get it right every time…. It takes diligence, persistence, and patience by all parties for the discovery rules to be practically applied so that relevant information can be exchanged."

*Kincaid v. Dept. of Social and Health Services*, 2011 U.S. Dist. LEXIS 129312 (W.D. Wash 2011).

Page 11 – PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO COMPEL
FURTHER RESPONSES TO NUI'S AND RFP'S

If this Court relies on the purpose of the discovery rules and asks the parties to employ the "practical application" of the rules as Judge Creatura highlights, it can easily conclude there are better ways of handling disputes (if any really exist) without continued discovery motion practice. If the Court requires **both** sides to equally participate in discovery, Pitney will stop filing these motions.

While Pitney claims no "meaningful ability to understand the factual basis for critical allegations" and that Pitney cannot understand what POA thinks the Defendants "did wrong," compelling POA to match RFP/NUI pairs would not resolve those issues.

### 1. *Pitney cannot legitimately argue a lack of factual understanding.*

First of all, Pitney suggested that the parties forego the exchange of initial disclosures. If Pitney did not understand the allegations and the factual bases for those allegations, getting an early disclosure of relevant witnesses, documents and damages would have been ideal. Secondly, Pitney suggested that the parties "phase" discovery in this matter. (*See*, Doc. 30). Pitney asked to conduct fact discovery first, then the parties would hire experts and provide expert reports on liability and damages next. *Id*. Pitney even suggested that Phase 2 (experts) be further "bifurcated" to separate specific factors of antitrust proof into yet another stage. Pitney's "phase" suggestion has created confusion. The parties cannot agree on the scope/extent of damage discovery (or other topics) to be handled in Phase 1, and Pitney seems confused by its own suggested phasing. Finally, in addition to written discovery, Pitney has conducted six (6) depositions of POA employees (and has another set). In other words, Pitney has had multiple opportunities to discover the facts and learn what POA believes the Defendants "did wrong." If Pitney lacks understanding at this point, it must accept partial blame based on the procedures it chose to employ.

Nonetheless, if Pitney truly believes it is missing an understanding of the facts/allegations, having POA "calibrate" responses to existing discovery will not help. Pitney crafted the discovery it wanted answered, but if the answers are not helping, it failed to ask the right questions. Rather than compelling POA to supplement the same questions yet again, the parties should exchange disclosures with comprehensive factual backgrounds and/or find a solution that does not involve repeating a useless endeavor.

### 2. *Pitney cannot legitimately argue "over-inclusive" discovery responses.*

As outlined above, Pitney has made 5 productions in this case for a total of **87,790** pages responsive to POA's Requests for Production and Interrogatories. Of that, only 505 pages were "tied" or "calibrated" to specific requests from POA.

It is disingenuous that Pitney argues it has been given a "guessing game." Pitney complains that POA provided over 33,000 emails but ignores that it **asked** POA to do supplemental searches for a large amount of those emails. Pitney also ignores that it has done the same thing – providing over **87,000 documents** that are unidentified. Next, while Pitney argues that POA must specifically reference each and every email or document relied upon to form its allegations, that question avoids: a) oral representations that led to the allegations; b) actions taken that led to the allegations; and c) documents in Pitney's sole custody and control that led to the allegations. Pitney appears to be trying to pigeon-hole POA into specifically referencing "any and all" documents relied upon to form allegations so that it can later prohibit POA from arguing relevant facts, oral representations, and/or other evidence that is later discovered. POA cannot be made to provide an exhaustive list and/or to give Pitney its entire trial strategy in advance.

If Pitney truly believes POA had no evidence for the allegations it made, it would have filed a **substantive** motion. This discovery motion is an attempt to stop POA from developing its case and evidence as discovery unfolds.

Page 13 – PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO COMPEL FURTHER RESPONSES TO NUI'S AND RFP'S

## III.    ATTORNEYS' FEES ARE NOT WARRANTED.

Pitney should not be awarded attorneys' fees because it insists on making "persistent filings" against POA.  Pitney's complaints are a matter of quibbling over form, not substance.  As noted in the Declaration of Counsel (**Exhibit B**), POA has been willing to work with Pitney counsel, and POA has made **multiple** suggestions that counsel work cooperatively to change the tone of this litigation.  Pitney's approach has been a rigid one, insisting on conformity with Pitney's unilateral preferences and creating disputes even where they are unnecessary.  One of the biggest hurdles has been Pitney's insistence on writing page-after-page of email complaints.  Pitney's counsel refuses to have personal communication (either by phone or in person) to discuss issues that could likely be resolved quicker and easier than with emails.  During the <u>one</u> personal consultation Pitney participated (Zoom call on June 2, 2021), the parties were able to reach "middle ground" on multiple issues and create strategies to get Pitney what documents it truly wanted.  Follow-up emails ruined a lot of the progress that was made.

Rather than awarding fees, Pitney should be asked to take a more **practical** application to discovery:

- Ask for what you need.

- Focus on the substance of discovery, not the form.

- Talk to opposing counsel rather than insisting on written/email complaints.

If Pitney would engage with a less adversarial approach, there be no need for these "persistent" motions.  This is a difficult, document-intensive case with multiple witnesses and millions of dollars at stake.  If the parties wish to get to the end of the road, they should not be spending time on discovery motion practice or properly "calibrating" discovery responses.  Thus, the Court should not reward discovery motion practice but should instruct both sides to be more approachable in getting discovery completed.

## IV. CONCLUSION

For all the reasons stated herein, POA should not be compelled to supplement its prior responses. POA should not be compelled to supplement its answer RFP No. 30. Pitney should not be awarded attorneys' fees but instructed to take a more collaborative approach to get the discovery it truly wants/needs to establish its claims and defenses.

DATED this 18th day of August, 2021.

BODYFELT MOUNT LLP                    MANOLIO & FIRESTONE, PLC

By: _/s/ Jamison R. McCune_____      By: _/s/ Veronica L. Manolio____
    Jamison R. McCune, OSB #135547      Veronica L. Manolio, AZ Bar No. 020230
    Email: mccune@bodyfeltmount.com     Email: vmanolio@mf-firm.com
    Phone: (503) 243-1022               Phone: (480) 222-9100
    *Local Attorneys for Plaintiff*     *Pro Hac Vice Attorneys for Plaintiff*


## CERTIFICATE OF SERVICE

I hereby certify that I caused a true and correct copy of the foregoing to be served upon all counsel of record to this matter via the Court's CM/ECF System.

Philip Van Der Weele, OSB #863650      Jamison R. McCune, OSB #135547
K&L GATES LLP                          BODYFELT MOUNT LLP
One SW Columbia Street, Suite 1900     319 SW Washington St., Suite 1200
Portland, OR 97204                     Portland, OR 97204
Tel.: (503) 226-5727\Fax: (503) 248-9085   Tel: 503-243-1022
Email: phil.vanderweele@klgates.com    Email: mccune@bodyfeltmount.com
    *Attorneys for Defendants*          *Local Attorney for Plaintiff*


By: _/s/ Veronica Manolio___


Page 15 – PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO COMPEL
FURTHER RESPONSES TO NUI'S AND RFP'S