IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PACIFIC OFFICE AUTOMATION,      )
INC., an Oregon corporation,    )
                                )
            Plaintiff,          )   Case No. 3:20-cv-00651-AC
                                )
        v.                      )
                                )
PITNEY BOWES, INC., a Delaware) February 22, 2022
corporation, et al.,            )
                                )
            Defendants.         )   Portland, Oregon
_____)


**Telephone Oral Argument**

TRANSCRIPT OF PROCEEDINGS

BEFORE THE HONORABLE JOHN V. ACOSTA

UNITED STATES DISTRICT COURT MAGISTRATE JUDGE

APPEARANCES

| | |
|---|---|
| FOR THE PLAINTIFF: | Ms. Veronica L. Manolio<br>Manolio & Firestone, PLC<br>8686 E. San Alberto Drive, Suite 200<br>Scottsdale, AZ 85258 |
| | Mr. Jamison R. McCune<br>Bodyfelt Mount, LLP<br>319 S.W. Washington Street, Suite 1200<br>Portland, OR 97204 |
| FOR THE DEFENDANTS: | Mr. Philip S. Van Der Weele<br>Ms. Elizabeth H. White<br>K&L Gates LLP<br>One S.W. Columbia Street, Suite 1900<br>Portland, OR 97204 |
| COURT REPORTER: | Bonita J. Shumway, CSR, RMR, CRR<br>United States District Courthouse<br>1000 S.W. Third Avenue, Room 301<br>Portland, OR 97204<br>(503)326-8188<br>bonita.shumway@ord.uscourts.gov |

1          (P R O C E E D I N G S)

2          (February 22, 2022; 1:31 p.m.)

3                    * * * * *

4          THE COURT:  Good morning -- or good afternoon, I

5     should say now.  This is Judge Acosta.  I'm going to take roll.

6     Who is there for the plaintiff?

7          MS. MANOLIO:  Good afternoon, Your Honor.  Veronica

8     Manolio, appearing for Plaintiff Pacific Office Automation, or

9     POA.

10         THE COURT:  Thank you.

11         Anyone else there for the plaintiff?

12         MR. MCCUNE:  Good afternoon, Judge Acosta.  Jamison

13     McCune, local counsel for POA.

14         THE COURT:  Thank you.

15         Anyone else for plaintiff?

16         (No response.)

17         THE COURT:  All right.  Thank you.

18         And for defendant?

19         MR. VAN DER WEELE:  Good afternoon, Your Honor.  Phil

20     Van Der Weele from K&L Gates on behalf of the defendants.

21         THE COURT:  Thank you.

22         Anyone else for the defendants?

23         MS. WHITE:  Good afternoon, Your Honor.  Elizabeth

24     White, also from K&L Gates, for the defendant.

25         THE COURT:  Thank you.

1    We do have a court reporter.  Make sure to speak

2  clearly and identify yourselves when you do speak.

3    All right.  We are here to talk about the motion to

4  compel, the third motion which has not yet been resolved.

5    Before we get to that, I have some questions.  First,

6  since the time the motion has been briefed and the parties have

7  engaged in discussions about discovery issues, have any of the

8  disputes in the motion been resolved?

9    Ms. Manolio, I'll start with you.

10    MS. MANOLIO:  Your Honor, let me be very candid with

11  you.  In going back and rereading all of these items, it

12  literally made me cringe, because I believe personally

13  Mr. Van Der Weele and Ms. White and I have come so far since

14  this motion practice.  I honestly believe that the majority of

15  these issues have been addressed, if not resolved.  As we sit

16  here today, I believe only Mr. Van Der Weele or Ms. White could

17  tell you what they think is still outstanding.

18    From my perspective, since August of last year, when

19  I responded, we've had much better communication, much better

20  flow of information, and I thought that this issue would have

21  been resolved until Mr. Van Der Weele brought it up when we

22  were talking about the recent status conference.  So to be

23  honest, I don't know, Your Honor.  I don't understand what

24  could be left.

25    THE COURT:  Thank you.  All right.

1    For defendant, Mr. Van Der Weele, will that be you?

2    MR. VAN DER WEELE:  Yes, Your Honor.

3    First of all, the motion that was scheduled for oral

4 argument today is the defendants' renewed motion on the first

5 and second motions to compel.  That motion presents two narrow

6 issues that have not been resolved in the wake of Your Honor's

7 granting of the original first and second motions to compel.

8 That motion, in earlier status reports, that motion was never

9 represented as having been resolved or on a pathway to

10 resolution.  So the issues that are outstanding in that motion

11 have been outstanding really since June, and they are just two

12 of them, and I'm prepared to present oral argument on that at

13 such time as Your Honor may wish during today's hearing.  So

14 that is the renewed motion.

15    There is -- and I don't know if Your Honor was asking

16 about another motion or if that was the focus of Your Honor's

17 question.  I apologize.

18    THE COURT:  No, let me just start it from that

19 correct place.  The motion that we're talking about right now

20 is No. 67, the renewed motion, and that's been out there for

21 quite some time.

22    I am looking, however, at the parties' joint status

23 report which they filed on December 7th, and on page 2 of that

24 report, it talks about the status of the defendants' three

25 discovery motions.  The renewed motion remains unresolved.

1  That's what we're here talking about.  There was also a motion
2  to modify the stipulated protective order, which the parties
3  represented they had resolved.  That had been my motion, Docket
4  No. 69.
5      There was a third motion to compel that was
6  represented in the joint status report that the parties are
7  close to resolving.  That was Docket No. 71.  And the defendant
8  finally was determining whether a fourth motion to compel might
9  be necessary.  I think that brings us current.
10     MR. VAN DER WEELE:  Your Honor, this is Phil
11 Van Der Weele.  If Your Honor would like us to address the
12 third motion and the potential fourth, I can do that.
13     I would note there was a subsequent joint status
14 report filed after the December one.  It's Docket No. 93.  It
15 was filed on January 24.  It's similar to but not exactly
16 identical to the one filed in December, so I'm just -- just
17 would note that Document 93 is the latest and greatest joint
18 status report.
19     THE COURT:  Thank you.  I see it now.  Thank you.
20     So let's see if we can take care of what might be
21 short issues.
22     In that most recent status report, which is Docket
23 No. 93, filed January 24, the defendants -- that is,
24 Mr. Van Der Weele, your client -- indicates you will advise the
25 Court at the next status conference of whether a hearing on the

1  third motion to compel is necessary.

2          Are we going to need a hearing on that one?

3          MR. VAN DER WEELE:  I'm not sure, Your Honor.  What I

4  can tell you briefly is that it is true that progress has been

5  made since the motion has been filed.  However, I would say

6  that progress has stalled.  As the status report notes on page

7  2 -- this is under the defendants' position -- we've had three

8  meet-and-confer conferences, these are by phone or by Zoom,

9  that encompass the third motion to compel.  POA did produce

10 some documents in response to that, and then on December 1, I

11 sent an email outlining to Ms. Manolio the issues that remained

12 outstanding.

13          Since then I have sent four reminder emails on that,

14 reminding what's outstanding on this third motion.  The fourth

15 and final email I sent on January 21, which was three days

16 before the filing of the joint status report.  And if you look

17 at page 3 of the joint status report, it's kind of the first

18 full paragraph, where it says "plaintiff's position," cutting

19 through -- cutting to the chase, there's a representation in

20 there that additional responses would be forthcoming.  That's

21 in a parenthetical on page 3 under point 2.

22          Well, that was a month ago, and there have not been

23 any additional responses forthcoming since then, so I'm still

24 waiting.  And I don't know when or whether I'm going to get

25 anything more.  But to me, that's what -- if I don't get the

1   items that were outlined in my December 1 email, then I would

2   say a motion would be necessary, but I just don't know whether

3   or when I'm going to get those.

4           THE COURT:  Thank you.

5           And then with respect to a possible fourth motion,

6   where are we on that one?

7           MR. VAN DER WEELE:  So on that one, we have

8   conferred.  I would say once again that progress has stalled,

9   although "progress" is a relative term.

10          This is a request for production that we served in

11  August.  The plaintiff never served any written objections.  To

12  date we have not gotten a single document in response to any of

13  these requests.  Three of requests, there was nothing to

14  discuss, there weren't any questions or problems with them, we

15  just haven't gotten any documents.

16          The other three -- this is three out of six in the

17  fourth -- we've had some discussions on it and some back and

18  forth.  And, again, in plaintiff's position set forth on page 4

19  of the joint status report, in the carryover paragraph at the

20  top of page 4, plaintiff says, "Plaintiff does not believe that

21  the fourth request for production will become an issue for the

22  Court and fully intends to have this matter resolved before the

23  next status conference."

24          Well, the issue is not resolved because I haven't

25  gotten a single document in response to any one of the six

requests, and I again have no idea whether or when I will be
getting anything.

       THE COURT:  All right.  Thank you.

       We'll pick those up at the end, and I'll hear from
Ms. Manolio about that.  Let's resolve the motion that is
before us.

       All right.  We've got issues with respect to the
interrogatories and requests for productions.  I'm going to
start with the interrogatories.  For the record, those are 1,
2, 4, 5(a) through (c), 6(a) through (c), and 7.

       The defendants' overall argument is that the
plaintiff has failed to comply with its duty under Rule
33(d)(1) to specify the records that must be reviewed, quote,
in sufficient detail to enable the interrogating party to
locate and identify them as readily as the responding party
could.

       All right.  One of the notable aspects of this
particular dispute is the defendants' assertion that plaintiff
has provided only examples of responsive documents.  And by
that I believe identified only examples of documents contained
in the broader production of documents in response to the
requests for production.

       All right.  One thing that the defendant also says is
that the spreadsheet provided on December 4, 2020 has not been
updated with respect to the documents referenced in respect to

1   these interrogatories, and that because there are so many

2   emails -- more than 30,000 -- it is difficult to determine what

3   documents plaintiff will rely on by providing only examples.

4          So Mr. Van Der Weele, let me start by just asking if

5   that is generally a correct summary of the interrogatory issue.

6          MR. VAN DER WEELE:  Yes, it is, Your Honor.  And I

7   would start -- I would add that the spreadsheet that we're

8   talking about is Document 68-1, and in form, that spreadsheet

9   is something like you would expect to see when someone is

10  answering an interrogatory by -- in reliance on FRCP 33(d)(1);

11  that is, it identifies documents -- in this case emails.

12  They're not Bates numbered, but they have a date and a "from"

13  and "to" so we can find them.  They identify emails, and then

14  on the column on the right, it lists the interrogatory number.

15  So the spreadsheet explicitly links documents to interrogatory

16  number, and that linkage is both necessary and sufficient to

17  comply with FRCP 33(d)(1).

18         One of the problems, as Your Honor noted, is that

19  these are expressly stated to be only examples, so the

20  spreadsheet is under-inclusive in that regard.

21         The other problem which Your Honor didn't mention,

22  although at least not directly, but I think you may have had it

23  when we talked about the update, is that the responses to the

24  corresponding document request -- that is, the document request

25  that asks what documents did you rely on in answering these

interrogatories -- those responses are over-inclusive, in that the boilerplate response is to identify every single document that the plaintiff produced as documents relied on in responding to the interrogatory.

So what the plaintiff has said is that it relied on every single document it produced in responding to each of six very different interrogatories. That can't possibly be correct, and that over-inclusive response makes the spreadsheet meaningless. So we have under-inclusiveness, we have over-inclusiveness, to the point of making it meaningless.

And then the third column, as Your Honor already noted, it's out of date because it goes back to December of 2020, more than a year ago, and plaintiff has made a number of supplemental document productions since then.

THE COURT: Thank you.

Ms. Manolio, go ahead, please.

MS. MANOLIO: Thank you, Your Honor.

First and foremost, again I'm at a loss here because what I hear Pitney Bowes arguing is that it can do what POA cannot do, and that is, POA produced documentation. It provided a spreadsheet back in December 2020, and said these are the documents relied on.

When we were told that we were needed to supplement it because there were some thousand number of emails, I absolutely took the Court's order to heart. We supplemented,

and the body of our supplemental responses identifies specific

documentation, which I have filed in conjunction with my

declaration, which is No. 79, the Docket 79, and provided

specific documentation related to each of those specific

interrogatories or requests for production.

I did not go back and update the spreadsheet because

I provided supplemental responses.  What I read the motion as

being, Judge, they didn't properly calibrate.  That was the

word that was used.  There's not a correct calibration of the

updated information you gave to me with the updated

spreadsheet.  That does not mean, Your Honor, for one moment

that POA did not go back and specify documents that were relied

on.  Mr. Van Der Weele and I have had this discussion many

times.  In the supplemental responses -- and I did a

supplemental response, a second supplemental response, both of

which are included in a filing No. 79.  I identified the

specific documents relied on.  But, of course, Your Honor, in

the interests and the benefit of my client, I always say we

reserve the right to identify additional documents if they

become necessary to this specific interrogatory.  That does not

mean I'm relying on the overall picture of the some 30,000 or

3,000 -- it keeps going back and forth -- number of emails that

we produced.  It was these are the specific documents, and if

we find something else within these documents that have been --

have already been produced, we reserve the right to later

identify those.  But I'm not intending and have never intended
to leave Pitney Bowes in a guessing game as to which specific
items were relied upon, and the supplemental answers cured
that.

Hearing again the issues of, well, it's
under-inclusive and over-inclusive leaves me in a quandary of
what are you exactly asking me to do?  If you're just asking me
to go back and supplement the December 2020 spreadsheet, then
say that.  But it's already been done in the body of the
supplemental disclosures -- or excuse me, supplemental
discovery responses, Your Honor.

In my opinion, this is form over substance.  Nobody
is saying from either side that we didn't produce the
information, and nobody can legitimately argue that we didn't
produce the information and identify which emails or which
documents correlate to each specific question.  The real issue
that's being argued is we didn't go back and update the
December spreadsheet and correlate, but it makes no difference,
Your Honor.  We're not leaving the defense without the ability
to understand what we're using, what we're relying on or where
the allegations come from.  And that's the frustration that I
have, especially in the light of the fact that we have received
over 87,000 documents from Pitney Bowes without a tie of any of
the discovery responses being tied to specific documents.  It
was, well, we did a custodial dump, here's our dump, you figure

1  it out.  But when it comes to you, POA, we want you to tell us

2  every single document.

3          And, Your Honor, I did do the very best we could to

4  limit those responses and to supplement to identify the

5  particular documents on which each interrogatory response

6  relied.

7          THE COURT:  All right.  I am looking at the

8  declaration -- the declaration and the supplemental responses

9  that is Document No. 79, and specifically I'm looking at Docket

10  No. 79-1, and at page 9.  And at page 9, I see a list of emails

11  by date, author, and recipient.  Is that the kind of

12  supplementation to the December 2020 spreadsheet that you're

13  referring to?

14          MS. MANOLIO:  It is one of the issues, Your Honor.

15  If you look at that -- and I understand exactly where you're

16  looking, and you're looking at page 9.  I'm looking at that

17  supplemental response in its entirety, which actually starts

18  back on page 7.

19          And what you see on page 9, that table, is what we

20  had originally provided in 2020.  So I incorporated that.  The

21  supplement then would be everything that goes before that, Your

22  Honor, starting on page 7, where I give a supplemental response

23  and I explain, you know, the supplement of what they asked us

24  to do, the supplement of answering the questions, and then say

25  these are examples of those emails where I incorporate what was

already previously identified.

And, Your Honor, we say if there are more that we find, we will absolutely update. But to date, Your Honor, that document -- or that email production has been supplemented by additional facts that they asked for. We hadn't found at this point in time -- again, remember we're talking about August of last year. At that point in time, we hadn't found emails that we said would specifically answer that interrogatory. But I do understand my duty to supplement if an additional email is discovered or read that specifically addresses interrogatories, of course we would come back and supplement.

THE COURT: All right. I'm still looking at the same document.

MS. MANOLIO: Uh-huh.

THE COURT: Supplemental response, which actually begins at page 6.

Hang on a minute.

MS. MANOLIO: Sure.

THE COURT: And it pertains to material misrepresentations of fact or material omissions by the defendant, which you say in your supplemental response at the bottom of page 6, "include at least the following items."

Now, when you say "at least," what exactly does "at least" mean?

MS. MANOLIO: Here's what the difference is, Your

1   Honor, and I apologize because I did try to explain this, and

2   obviously I'm not doing a very good job.

3        Some of the representations that were made were not

4   made in an email or a written format, so I couldn't identify an

5   email to go with what my supplement is.  Starting on page 7,

6   where it has a supplemental response, I go through the material

7   representations -- or misrepresentations, and talk about

8   material misrepresentations that could have been made in person

9   as versus an email.  If it was made in person or in a

10  face-to-face meeting, I can't provide a document that

11  demonstrates it.

12       THE COURT:  Right.

13       MS. MANOLIO:  So that's why I used the term "at

14  least," because we know those are the emails that justify the

15  misrepresentations or the omissions I'm talking about.

16  However, if it was something that was done in a face-to-face

17  meeting or an in-person meeting, I couldn't include a document,

18  but I certainly documented the substance and meat of the

19  material misrepresentation or omission.

20       And my goal was, Your Honor, not only to give you the

21  documentation we have so far -- or, excuse me, to give Pitney

22  Bowes the documentation we have so far but also to say there

23  may be additional emails that are discovered when both sides

24  continue to exchange information.  I have no problem updating

25  that email spreadsheet when additional emails pertain

specifically.  And in the subsequent supplemental disclosure, I do identify additional emails that are specifically responsive to this question, because additional emails were reviewed and said, oh, that also falls into line with the response to that request.

THE COURT:  I'm looking at the supplemental response again, and to make sure the record is clear, still on Document 79-1, and this pertains to Interrogatory No. 7.  The supplemental response begins on the next page -- page 6 -- and contains subparts (a), (b), (c), (d), right.

Now, here's my question.

MS. MANOLIO:  Sure.

THE COURT:  Subsection (d) contains that list of emails by author, recipient, and date.  With respect to subsections (a), (b), and (c), you have provided narrative descriptions but not referred specifically to emails.  So are those narrative descriptions intended to describe conversations rather than information based on emails?

MS. MANOLIO:  Unfortunately, Your Honor, each one specifically -- each one specifically states it.  In other words, the ones that are oral say these were made orally, but written materials include, and then I cite the written materials or the emails that are inclusive.  So -- and I'm not trying to be cute at all, Your Honor.  I'm trying to explain that if -- Let's look very specifically at letter (c), which is

1  on page 8.

2          THE COURT:  Right.

3          MS. MANOLIO:  Where I say many of the representations

4  were made in oral communications throughout a series of

5  meetings.  And, Your Honor, we've now had deposition testimony

6  of those people that I talk about:  Greg Pattison, Bernard

7  Cory, Mr. Murray, and Mr. Pitassi.  Those people have all been

8  deposed and have all talked about the oral representations.

9          I then reference other oral representations were made

10  in phone conversations.  Again, both sides have had the

11  opportunity to depose those witnesses.

12          And then when I say, "written material

13  misrepresentations were made," and I specify where those

14  documents are, those are in the specific emails, Your Honor,

15  that are identified in the table below.

16          And so you're right that what I didn't do is say the

17  written partner agreement and meter price book ties to, you

18  know, email dated blah, blah, blah or email dated blah, blah,

19  blah. But it was very specific, it's regarding the partner

20  meter price book.

21          And again, Your Honor, these are topics that were

22  exhaustively covered in depositions.  So there's really not a

23  good justifiable argument that you didn't know what emails I

24  was referring to.  They were on the list, you produced these

25  documents, and they were discussed extensively during

1   depositions.

2        THE COURT:  So in subsection (c) of that supplemental

3   response, the one that you were using to illustrate your

4   comments, which does start, "Many of these misrepresentations

5   made above were made in oral communications," but in the third

6   sentence, it says, "Written material misrepresentations were

7   made: (1) in the written dealer agreement."

8        I assume that's been produced and there's no dispute

9   or confusion what the written dealer agreement is.

10       MS. MANOLIO:  There could not be.  Absolutely, Your

11  Honor, there could not be any confusion.  It has been the topic

12  of almost every deposition -- I wouldn't say every deposition,

13  that would be a little flippant of me, but in nearly every

14  deposition we've gone through the dealer agreement extensively.

15       THE COURT:  There's subsection (2), and then

16  subsection (3) -- sorry, part (3) of subsection (c) states, "in

17  emails between Pitney and POA, identified on the spreadsheet

18  produced as being specifically responsive to Interrogatory

19  No. 7, but for convenience which are identified again here in

20  the table below."

21       So that table is the emails -- consists of the emails

22  referred to, correct?

23       MS. MANOLIO:  That is correct, Your Honor, yes.

24       THE COURT:  Now, is it also correct that that table

25  is not at this time a necessarily all-inclusive list of the

emails you might rely on?

      MS. MANOLIO:  That is correct.  And the reason I can say that is because there are supplements to this that identify additional documentation that is responsive to this specific question.

      THE COURT:  Okay.

      MS. MANOLIO:  Go ahead.  I didn't mean to interrupt you.

      THE COURT:  No, that's fine.

      All right.  So here is my overarching question.  At what point, meaning at what date will the defendant be able to say with confidence that every document you intend to rely on to support your allegations has either been identified or produced, and it can know that if it goes to trial, the universe of exhibits from which the plaintiff will draw is the universe known to it as a result of discovery?

      MS. MANOLIO:  I think your question is what is the date certain.  And again, I am not being flippant with you at all, Your Honor.  It depends on every time I supplement if there are additional questions, because I have been very, very candid with Mr. Van Der Weele that even though I will produce everything I think he's asking for, if something else comes up and he wants more, I'm happy to produce that as well.

      Now, I do want to -- again, I committed when we did this joint report in January, and I disagree with some of the

assessment earlier about what the conversations were, but when
we filed this with the Court on January 24th, I was clear: I
will have everything to you and we could close fact discovery
by March 31. Are you comfortable with that?

And the response was -- from Mr. Van Der Weele was:
I'm not sure yet because you might think you've given me
everything but I might have supplemental questions.

And you know what? I'm okay with that. I wasn't
offended by that because I thought we were working together in
good faith to say, I'll keep producing, and if you think
there's something more, I'll continue to produce, and you tell
me when you think you have the entire universe. But I
committed to provide the entire universe of documents. No
later than March 31, everything will be in your hands.

THE COURT: All right.

MR. VAN DER WEELE: May I respond, Your Honor?

THE COURT: Not yet.

All right. So when discovery closes, a document not
produced by a party is a document that party will not be able
to rely on to support a summary judgment or response to a
summary judgment or as an exhibit at trial. That means two
things. It means, as my observation suggested, that it was
actually physically produced, whether that was in hard copy or
digital form.

Next, a document produced but not identified in

response to a specific interrogatory that is otherwise not objectionable -- and those are the kinds of interrogatories we're talking about right here, it seems -- cannot be used if it is not tethered to a specific response or supplemental response to an interrogatory.

Now, if we were dealing with a simple case of a relatively contained record of a couple of hundred pages or so, the defendants' concerns wouldn't be as concerning to me as a case like this, where the parties acknowledge there are tens of thousands of documents that are out there in various different forms. So although, of course, the plaintiff is not required to disclose its trial strategy to the defendant at any time, if a proper interrogatory is posed and the response is not complete, for whatever reason -- I'm not for a moment suggesting that you're hiding anything, but if it's not complete, then it falls short of satisfying the obligation under the discovery rules to identify a document in response to a proper question interrogatory. And that's all I want to make sure that happens here.

And it may be that you've not had a chance to go all the way through every single document yet. Sure, okay. But if you're going to prepare exhibits for use in motion practice or trial, then -- and they've been fairly requested, they have to be produced. And that's my basic point here.

And if you believe that the defendants' requests are

1   overbroad, we can talk about that, but I'm not sure I've heard
2   you say that.

3   So now I'll stop there, and just give me a quick
4   answer.  Are there overbreadth issues here?

5   MS. MANOLIO:  Absolutely, Your Honor.  I believe that
6   there are, and I will -- I do just want to note one other thing
7   because I don't know when is the appropriate time to talk about
8   it.  If the Court is making a clear ruling that every response
9   needs to be tethered -- excuse me, every document needs to be
10  tethered, I am okay with that if that goes both ways, because
11  where I have --

12  THE COURT:  Yes, it does.

13  MS. MANOLIO:  Got it.

14  THE COURT:  Yes, it does.  Discovery is a two-way
15  street, to use the cliche, and a document that the defendant
16  does not produce or identify in response to an interrogatory
17  that it later intends to rely on in motion practice or in trial
18  will be stricken.  So in a document-intensive case like this,
19  you just -- both sides have to make sure that they have
20  identified everything properly called for here in the request
21  for production or in an interrogatory.  That's the deal.

22  Mr. Van Der Weele, before I continue, you had wanted
23  to make a comment.  Go ahead.

24  MR. VAN DER WEELE:  Well, I think, Your Honor, that
25  you actually covered largely what I was going to point out in

your statements.  I do think, though, that there are a couple

of different issues being conflated here.  The issue that is

the subject of our motion is compliance with FRCP 33(d), which

applies, of course, when somebody is relying on identification

of documents to answer an interrogatory.

THE COURT:  Right.

MR. VAN DER WEELE:  And I don't think that's an

overbreadth issue.  That's just a sufficiency of the

identification.  And I would just note, even with the example

that -- well, I guess you made your ruling, if it's not

identified, it can't be used, but just the page that you were

talking about, page 9 on Document 79-1 is a list of emails

there.

THE COURT:  Yes.

MR. VAN DER WEELE:  And so just taking that as an

example of the problem I'm having, first of all, the fraud

claim here is a fraud in the inducement for a contract that was

signed in July of 2016.  You will note that all but two of the

documents in the list are after July of 2016.  So we've got

some kind of time warp going on here where these are

misrepresentations in a fraudulent inducement that are coming

long after the contract was signed.

Secondly, the only two documents you see there that

are in the relevant time period -- well, actually only one,

actually, the June 27th of 2016, to the previous page that

plaintiff talks about misrepresentations made in May of 2016,
and we don't have any emails from those, so I assume that if
they're not linked there, they can't be used.

And, of course, this was only one interrogatory --
this was Interrogatory 7, one of the six that we had moved on.
If you were to look at other interrogatories, you would find
the responses are again laced with the words "examples."

But, again, I take it from Your Honor's ruling that
if the linkage isn't provided for these interrogatories -- that
is, if the documents are not specified as being linked to an
interrogatory -- then the plaintiff can't rely on other
documents to prove what -- the issue that the interrogatory was
addressed to.

THE COURT:  All right.  Let me make two observations.
First, with respect to the list on page 9 of Document 79-1,
where there are three columns, the leftmost is "email date or
dates" and the middle column is "email from" and the rightmost
column is "email to."

With respect to the chronology, where many of those
emails identified are after 2016, it seems to me that for
whatever purpose or purposes the plaintiff identified those
emails in response to that particular interrogatory, that is
part of their litigation strategy, meaning their case theory,
their theme, how they intend to prove that these fraudulent
misrepresentations were made.

1          Now, it's a different question whether any of those

2     post-2016 emails are admissible for that purpose, but I'm just

3     going to say simply because it's not apparent on the face of

4     the response how those particular documents might link to the

5     particular claim that you've asked about doesn't mean that

6     that's an improper list.

7          MR. VAN DER WEELE:  Yes, Your Honor.

8          THE COURT:  Next -- all right.  I continue to be a

9     little troubled by reference to examples.  So

10    Mr. Van Der Weele, I share your concern there, so I need to ask

11    Ms. Manolio a question.

12         MS. MANOLIO:  Sure.

13         THE COURT:  Ms. Manolio, what exactly, when you say

14    "examples," do you mean by "examples"?

15         MS. MANOLIO:  Here is my absolute best answer to you,

16    Your Honor.  Let me take, for example, what we're looking at is

17    79.1.  Let's look at Document 79.1, and let's just go to

18    Interrogatory 1, because it is one of the interrogatories on

19    which Mr. Van Der Weele has moved for compelling.  Okay?

20         No. 1, I give a -- the original answer is in regular

21    type format.  That original answer is on page 2.  Where I

22    supplemented, I said:  Since the time of this interrogatory,

23    POA has answered a second request for production, and I give

24    additional information in the bold italicized portion.

25         Correct, Your Honor?  Do you see what I mean?

1          THE COURT:  I see it.

2          MS. MANOLIO:  Then, Your Honor, I would like you to

3    look at 79.4 -- or 79-4.  And I apologize, my version looks

4    like it was -- the formatting looks horrible but the meat of

5    the information is there.  And this is my second supplemental

6    response.  And if you look at the response to No. 1, I

7    supplemented by saying "specific emails include."  And Your

8    Honor, it is always been my practice to say these are examples,

9    but if I identify more, I will continue to supplement and give

10   you more.  And --

11         THE COURT:  All right.

12         MS. MANOLIO:  When I did 79.4, Your Honor, if you go

13   on to the next page, I say now that we have depositions, I'm

14   going to supplementally identify more documentation, and I

15   specifically on page 3 of the second supplement give additional

16   examples of specific Bates numbers that tie back to that exact

17   same interrogatory.  That is the reason why I used the word

18   "examples" in the beginning, so that as additional information

19   is learned, I supplement.  But I don't intend at the end of the

20   day when we're done to say, oh, well, it was just an example,

21   so if I found something after discovery is closed, I get to use

22   it.  I understand I don't get to use something that was not

23   properly disclosed or listed either in a response or a

24   supplement to a response.

25         THE COURT:  All right.  So let me articulate what I

think I hear from your explanation.

MS. MANOLIO:  Okay.

THE COURT:  When you say "examples," what you mean to say is these are the documents which to date we have identified and are responsive either to your request for production or your interrogatory, and under our obligation to supplement, we will provide additional answers as the information comes to light.  Correct?

MS. MANOLIO:  100 percent, yes, Your Honor.  And maybe I should use your words moving forward.

THE COURT:  Well, sure, you may.  But at a minimum, let's just dispense with "examples", because I understand Mr. Van Der Weele's concerns.  If there's a hundred documents and you cite ten, these are the kinds of things -- it tends to suggest it is not inclusive of everything you know to date.

MS. MANOLIO:  Understood.

THE COURT:  So it seems to me we can fairly say that what you have produced and identified is everything you're aware of to date, but it is possible you will continue to find discoverable documents which are responsive to either the RFPs or the interrogatories.  Correct?

MS. MANOLIO:  That is correct, Your Honor.

And I want to take it one step further.  I only intend to find additional documentation in the body of what has been disclosed.  If there's something I'm going out searching

1  for more, that would be troublesome and I would understand

2  that.  But when I say we've disclosed all of the emails, within

3  those emails if I find anything additional, I will identify it.

4  That's what I mean when I say these are examples in the emails,

5  but it's within the body I've already provided, not something

6  I'm going to go find new.

7          THE COURT:  Understood.  And don't use "examples,"

8  because we're just going to get confused again.

9          MS. MANOLIO:  Makes sense.

10         THE COURT:  When I asked you just a few minutes ago

11  by what date can we know that you've identified everything

12  responsive to the interrogatories or the requests for

13  production, it seems to me now that we've had this discussion

14  that everyone is on notice that by that date certain,

15  everything will be identified, and if it's not, it cannot be

16  used.  And so when I refer to the cutoff date, it has to be the

17  cutoff date relevant to making the identification called for

18  either in the request for production or the interrogatories.

19         Again, it seems to me that looking at the

20  supplemental responses, that you are continuing to do that, and

21  here's the key:  that these supplemental responses are in

22  addition or subsequent to what you provided in the December

23  2020 spreadsheet.  Am I correct about that?

24         MS. MANOLIO:  You are correct about that.

25         THE COURT:  All right.  And so when you say it is

1  form over substance to update a spreadsheet because you've

2  already provided by specific identification the additional

3  information in the supplemental responses, that is what you

4  meant, correct?

5          MS. MANOLIO:  That is correct, yes, Your Honor.

6          THE COURT:  All right.  Thank you.

7          Mr. Van Der Weele, go ahead, please.

8          MR. VAN DER WEELE:  I think, Your Honor, that that is

9  really it for the interrogatory responses, which was the first

10  issue, the first of two issues in the motion to compel.

11          I would just make one observation -- this is

12  something that Ms. Manolio and I have talked about before -- is

13  that it is possible that experts -- and this is particularly

14  for the antitrust issue, that experts may rely on -- as part of

15  the preparation of their reports may rely on documents that

16  might not be in the possession of either party or were in the

17  possession of the parties but not necessarily respond to the

18  document requests, and experts would be allowed to, you know,

19  rely on documents that hadn't been produced, but then they

20  would have to be produced in conjunction with the expert's

21  reports.  And so that would be a bit of a qualification I think

22  to what Your Honor said before, but I think that Ms. Manolio

23  and I have that agreement, but I'll -- she'll tell me if I have

24  that wrong.

25          THE COURT:  Expert discovery is different from fact

discovery and, Mr. Van Der Weele, your articulation is
accurate.

Ms. Manolio, any disagreement or anything to add?

MS. MANOLIO:  Yes, unfortunately.  Because this is
something I was going to say when you told us, let me give you
a cutoff date, and that is something that can be used or cannot
be used.  I believe -- and I wrote this in my declaration --
that we are not 100 percent aligned or understanding, and I
just want to make sure we're clear for the record.

When we agreed to put our experts to a second phase,
if you will, the original thought was, in my mind, all the
damage information goes into the experts, because we both
identified we're going to need experts for the issue of
damages.  Right?  So in my head, it was damage information goes
with experts, phase two.

I believe -- and Mr. Van Der Weele, you can certainly
correct me if I'm wrong -- Mr. Van Der Weele's discussion with
me was anything factual related to damages you have to disclose
in fact discovery, but then what the experts choose to rely on
may involve more in phase two.  And I scratched my head and
went, then why did we do it like this?  It should have been all
discovery is phase one, including damages, including all the
financials, including everything, and then just expert reports
are phase two.

I just don't want there to be any gray area, and

right now, Your Honor, I'm afraid and fearful that there is.
The reason I say that -- and I put it in my declaration -- was
because I haven't gotten a single bit of financial information
from the defense, which I understand is going to come from
Mr. Van Der Weele in phase two.  But some of the information
I've agreed to provide is financial and will go strictly to
damages, and I'm being told it needs to be done in phase one.
I just want to clear-cut that again both goes ways.  I don't
care which.

       THE COURT:  Sure.

       MS. MANOLIO:  Go ahead.

       THE COURT:  Mr. Van Der Weele, go ahead.

       MR. VAN DER WEELE:  I strongly disagree I haven't
provided any financial information.  I've provided numerous
voluminous spreadsheets --

       THE COURT:  Sure.

       MR. VAN DER WEELE:  -- of financial information.

       THE COURT:  We don't need to resolve that.  Here's
the thing.  Before you each depose the other's experts, you
should each have everything the opposing expert has relied on.

       MR. VAN DER WEELE:  Yes.

       MS. MANOLIO:  Got it.  Yes.

       THE COURT:  Everything.  That's the deal.  So if
something wasn't produced in fact discovery, if it's produced
in conjunction with expert discovery and the expert is relying

on it, that's okay.  Plenty of time to look at it, ask your own

experts about it, prepare for the deposition to question them

about it.

So if something -- if somebody makes a good faith

determination that this is really expert material and not

responsive to a request for production or interrogatory and my

expert is going to use it and it comes out in expert discovery,

that's fine.  If the expert relies on it, it needs to be

produced in expert discovery.

Ms. Manolio, clear?

MS. MANOLIO:  Yes.  It is helpful, Your Honor.  And I

do want to make clear I wasn't meaning to throw

Mr. Van Der Weele under the bus, I just want to make sure we're

all on the same page.  That's all.

THE COURT:  That's fine.  Thank you for that.

Mr. Van Der Weele, you said that's one of the two

issues when you referred to interrogatories.  Of course, we

still have requests for production.

I'm just going to take a flyer at this one.  It seems

to me that there's a lot of overlap, but there is one

difference that you point out, and that is documents that were

produced but produced as they are kept in the usual course of

business, which I think you take issue with, and then a

supplemental search.  So is that the remaining second issue we

need to talk about?

1          MR. VAN DER WEELE:  I think the remaining second

2    issue is actually -- well, we may be talking about the same

3    thing, but it may even be narrower than that, Your Honor.  The

4    second issue is simply Document Request 30.

5          THE COURT:  Okay.

6          MR. VAN DER WEELE:  And I think the searching part

7    might have been different ways that the plaintiff might comply

8    with that request, but frankly I don't -- as long as they

9    comply, we tried to give them some help on search terms, and if

10   it wasn't helpful, I don't care.  Whatever they come up with is

11   up to them.

12         But Document Request 30 was part of our second motion

13   to compel, and Your Honor granted it.  And in response -- after

14   Your Honor's ruling, we received a single document, and that

15   document was a letter to the plaintiff from another one of its

16   suppliers, a company called Francotyp-Postalia.  I'll spell

17   that.  It's F-r-a-n-c-o hyphen P-o-s-t-a-l-i-a.  With that

18   spelling you can understand why we call it FP for short.

19         THE COURT:  Right.

20         MR. VAN DER WEELE:  And in that letter, FP canceled

21   its supplier relation with the plaintiff.  Now, if that were

22   the end of the story, plaintiff would have fully complied with

23   Document Request 30, but that is not the end of the story.  At

24   some point after FP canceled its relation with the plaintiffs,

25   plaintiff got reinstated as a dealer of FP.  And we know that

1    for a lot of reasons, because the plaintiff told us that in the

2    interrogatory answer.

3         So we are seeking -- Document Request 30 is seeking

4    the communications between the plaintiff and FP that led to

5    that reinstatement.  And the reason those communications are

6    relevant is that the plaintiff blames Pitney Bowes, blames the

7    defendant for the fact that FP canceled its dealer relation

8    with the plaintiff, and plaintiff is seeking damages for what

9    it had to go through to get reinstated as a dealer of FP.

10        And that explanation, if Your Honor wants to get more

11   granular, it's in the plaintiff's second supplemental response

12   to defendants' interrogatories.  It's document 68-4, page 14.4,

13   with an itemization of damages.  I can read it if you want or I

14   can just keep going.

15        But anyway, the point is that that's the relevance.

16   They are saying we got canceled, FP canceled us as a dealer,

17   and it's your fault, Pitney.  We had to spend money to get

18   reinstated, those are damages.  And so I believe, based on

19   that, that we are entitled to the communications that led to

20   the reinstatement of FP as a dealer -- I'm sorry, led to the

21   restatement of plaintiff as a dealer of FP, what were the

22   negotiations, how did it come about, what were the terms of

23   that reinstatement, and what large investment did the plaintiff

24   have to make, or it says it had to make in its interrogatory

25   answer, what is that.

 1        You know, I guess we'll save for another day whether

 2   that's a viable theory of damages, but I'm sure we'll be

 3   talking about that later, but the plaintiffs here, they've

 4   advanced the theory, so we believe that we're entitled to the

 5   documents requested by Request No. 30.

 6        Now, how they go about it, what searches they do to

 7   get those documents, that's really up to them.  I've made it

 8   clear that we are not asking for all the transactional

 9   documents that exist between FP, a supplier, and the plaintiff,

10   that is all the purchase orders, that sort of thing, and

11   because again that's -- that's not what we're talking about

12   here.  We're talking about the communications that led to the

13   reinstatement, and what did the plaintiff have to do in order

14   to get reinstated.  That's the subset of documents that we're

15   looking for here and that's what Request 30 asks for.

16        THE COURT:  Understood.

17        Ms. Manolio.

18        MS. MANOLIO:  Thank you, Your Honor.

19        First of all, I want the Court to actually look at

20   the Request for Production No. 30.  And I am looking, Your

21   Honor, just for clarity's sake, at Document 79-2.  Request for

22   Production No. 30 appears on page 13 of that document.

23        The request that was asked of us was give us all

24   documents evidencing communications or negotiations other than

25   Pitney to become an authorized dealer.

1    Our response to that was there were no communications

2  regarding becoming an authorized dealer during the relevant

3  time period.  The reason for that is simple, Your Honor.  POA

4  was an authorized dealer of SP well before Pitney Bowes came in

5  the picture.  When Pitney Bowes came in the picture, POA agreed

6  to not become an authorized dealer for anyone else.  So in the

7  relevant time period that Mr. Van Der Weele identified, there

8  are none, there are no responsive documents because we didn't

9  become an authorized dealer.

10    In an abundance of caution, I say, "However, I am

11  notifying you that FP did cancel its dealer agreement with

12  POA."  And, Your Honor, we have produced the cancellation

13  letter.  There is no dispute about that.  There couldn't be.

14    THE COURT:  Okay.

15    MS. MANOLIO:  We also know, Your Honor -- Your Honor,

16  that there were several communications or questions during

17  depositions about what happened and how POA got reinstated.

18  However, what Mr. Van Der Weele has done is morphed his request

19  for -- his Interrogatory No. 30 -- or excuse me, his Request

20  for Production No. 30, and said, oh, well, now that really

21  meant all communications.  It didn't mean becoming an

22  authorized dealer, it meant subsequent actions, subsequent

23  endeavors, whatever you needed to do.  It's not what was asked.

24    But I still didn't have a problem with cooperating,

25  Your Honor, and when I hear today that now it's I want purchase

orders and financial data, that information I've already agreed
to provide, that's not a problem.  But I have made it clear in
subsequent responses, including our supplement to that same
request for production, there are other additional written
communications, because when that dealership agreement got
canceled, the president went and met with POA in person -- or
went and met with SP in person and agreed to make a large
purchase to get reinstated.  I can't produce documents that do
not exist.

        THE COURT:  True.

        MS. MANOLIO:  And I can't agree that
Mr. Van Der Weele gets the opportunity to say, well, because
the information changed, my question changes, and now you are
on the hook to answer the interrogatory -- the request for
production in any manner in which I morph it to be.  That's not
what the question was.

        THE COURT:  Understood.

        So before I hear from Mr. Van Der Weele, I'm going to
tell you what I think you should be providing, and then I'll
hear from Mr. Van Der Weele.

        MS. MANOLIO:  Okay.

        THE COURT:  You should be providing two, I'm going to
say, distinct groups of documents, both of which pertain to the
relationship between POA and SP.  The first group are the
communications -- not the transaction documents, the

communications that went to the initial business relationship.

The second group is the set of communications -- and if there's only one document, there's only one document -- that pertain to the renewal or reinstatement of the business relationship between POA and SP.

Now, with that second group, if there is only a single document to produce, then there's only a single document to produce, and you simply need to make sure that that's clear, if you haven't already made that clear. Understood?

MS. MANOLIO: I understand completely. My main concern is there was never a discussion or a request for anything about the initial relationship with SP. That would be an entire new subset of documents, because it was well outside of the date range that Mr. Van Der Weele gave me. And I'm telling you, Your Honor, that POA was in business with SP for many, many years before this. I don't even know if those documents still exist or if there are any, because we've never ever been asked for that so I've never looked for it, Your Honor. I can't tell you one way or the other.

MR. VAN DER WEELE: Your Honor --

THE COURT: Hang on, hang on.

You might not have to produce it if -- depending on your answer to this question.

MS. MANOLIO: Sure.

THE COURT: With respect to the initial

1  relationship -- not the transaction documents but how the

2  relationship came to be -- do you anticipate using any of those

3  documents to support your damages claims?

4      MS. MANOLIO:  No, Your Honor.  Not at all.

5      THE COURT:  All right.  Mr. Van Der Weele, go ahead.

6      MR. VAN DER WEELE:  Well, so I'm not asking for the

7  ones that -- where the plaintiff originally became a dealer of

8  FP, because that was before the dealer agreement -- entered

9  into the agreement with Pitney.  So I don't care about those.

10 That would have been prior to, you know, sometime prior to the

11 year 2016.  So I'm not asking for those.

12      What I am asking for, though -- and I can't believe

13 there are no documents, given what the plaintiff is -- what

14 they've said and what the letter is, is that they -- again, the

15 chronology is they're a dealer and then they get a letter

16 that's been produced that says you're no longer a dealer.  What

17 happened after that is what I am looking for, where there would

18 have to be some documents that have to at least say you're a

19 dealer again, or something that says if you buy -- you know, if

20 you buy a million dollars of product then you'll become a

21 dealer, and then there's a purchase order for a million

22 dollars.  Well, whatever it is, there had to be some

23 communications to get them reinstated.

24      When Ms. Manolio says, well, that's not what it asks

25 for, you're morphing the request, well, no, because after

plaintiff got that cancellation letter, it was no longer an
authorized dealer, so to get reinstated, it did have to be --
it became an authorized dealer for a second time, and that's
squarely within the Request No. 30.

THE COURT:  Sure.  All right.

Ms. Manolio, it seems a fair request to ask for any
documents that memorialize or reflect or pertain to or
establish the business relationship between POA and FP.  And my
question is, have all those documents been produced?

MS. MANOLIO:  If, Your Honor, that were the case,
then you're right.  But POA was sent a cancellation letter and
was told it was going to be canceled.  The subsequent
information was done in person because the president of POA
immediately went and met in person with SP.  There will be
financial documentation which I absolutely will provide as part
of the subsequent stuff.  I do owe those documents, there's no
doubt about that.  They're just not in front of the Court right
now, what we've agreed that I will produce, and I absolutely
will produce the financial documents, including the PO that
shows what they had to pay or agreed to to keep their FP
sponsorship, if you will, or relationship.

THE COURT:  Okay.

MS. MANOLIO:  But the reason there's not going to be
a trail of documents is because those documents don't exist.
This was a long-term relationship, with the president of the

1    company negotiating in person with the other side.

2         THE COURT:  Let's assume the letter was received that

3    you're going to be terminated.  The CEO or whoever gets on a

4    plane or however and meets in person with the FP CEO, and they

5    reach an agreement in person.  All right.  And so the

6    relationship isn't actually formally terminated.

7         Just to be clear, there's no follow-up letter from

8    POA's person or email that confirms the agreement reached

9    between us that our relationship will continue and/or continue

10   under the following circumstances.  There's nothing else like

11   that?

12        MS. MANOLIO:  Your Honor, I want to say there is not,

13   but in an abundance of caution, I will tell you that we will do

14   the search again, but I will tell you for a fact that no, we've

15   never seen that as of today, and we did do the searches, and

16   exact search terms that were requested by Pitney Bowes.  And my

17   client's response was that's because when I got this letter

18   saying we're going to be canceled -- they weren't canceled,

19   you're going to be in 90 days, they resolved it before it

20   became an issue, and they resolved it by committing to a huge

21   purchase order, which I will produce.

22        THE COURT:  All right.  Good.  Then just have your

23   client run the search again to be sure.

24        MS. MANOLIO:  Absolutely.

25        THE COURT:  Confirm that to Mr. Van Der Weele that

1  it's been completed and no further documents were found, or if

2  they were, produce them.

3         MS. MANOLIO:  Absolutely.  No problem.

4         THE COURT:  Mr. Van Der Weele, does that take care of

5  No. 30 at least for now?

6         MR. VAN DER WEELE:  Yes, it does, Your Honor.

7         THE COURT:  Good.

8         Let's go back to the third motion to compel and the

9  possible fourth motion.

10        With respect to the third motion, Mr. Van Der Weele,

11  just to summarize, you said you're still waiting for a response

12  from POA.

13        Ms. Manolio, your thoughts?

14        MS. MANOLIO:  I have absolutely been working with

15  Mr. Van Der Weele, have given subsequent information, still

16  have subsequent information to give.  And so that everyone

17  feels comfortable, I'm actually flying up to Portland tomorrow

18  to meet with POA and go through documents in person to produce

19  what I know is still outstanding to Mr. Van Der Weele, but I've

20  been trying to just get a time with their CFO to sit down and

21  go through documentation.

22        But I don't believe it's -- that the third is at

23  issue or is going to become an issue, as I don't believe that

24  the fourth is going to become an issue because I've committed

25  to certain things and I intend to abide by what I've committed

1  to, it's just been a matter of logistics and that's it.

2          THE COURT:  Let me ask you this question.

3          MS. MANOLIO:  Sure.

4          THE COURT:  For you to produce all the documents that

5  you believe will put the third motion to compel to rest and

6  avoid a fourth motion to compel, how much time will you need?

7          MS. MANOLIO:  Again, Your Honor, my position is that

8  everything should be inclusively provided by the end of March,

9  but I intend to get Mr. Van Der Weele the documents that I know

10  are outstanding probably within the next two weeks.  I'm going

11  up not tomorrow but the day after, and hope to make production

12  next week.  I know there will be subsequent questions, I just

13  know there will.  But I'm committed to work with him in good

14  faith to get him anything subsequent, as, Your Honor, I've also

15  committed to allow him to have informal interviews rather than

16  depositions of the financial information or the witness for the

17  financial information that we're providing.

18          THE COURT:  Thank you.

19          Hang on a minute, please.

20          MS. MANOLIO:  Sure.

21          THE COURT:  All right.  I'm looking at the most

22  recent joint status report, Docket 93, filed on January 24, and

23  I'm looking at that section really that begins on page 4, case

24  schedule following completion of fact discovery.

25          Right now does everyone agree fact discovery closes

1  on March 31?  Ms. Manolio?

2          MS. MANOLIO:  I am good with it, Your Honor, yes.

3          THE COURT:  Good.

4          Mr. Van Der Weele?

5          MR. VAN DER WEELE:  I guess I'd rather -- just

6  because it's taken so long to get some documents, I would

7  rather either add some time to that or wait until I see what I

8  get from Ms. Manolio and what I think is still open.  The last

9  time we got anything was in November, and I know there are

10 issues outstanding, and I'd be thrilled if I got anything next

11 week or whatever, but I just don't have a high degree of

12 confidence, and there may be additional things.  So that's an

13 equivocal answer, I realize, but I just don't have a great deal

14 of confidence that it will be done by March 31.

15          THE COURT:  All right.  Here's what we're going to

16 do.  Fact discovery will close on Friday, April 22nd, and

17 that's it for fact discovery.  That is a hard date.  Everything

18 must be produced by then, all depositions of fact witnesses

19 taken by then.

20          I am looking at your chart of agreed-upon case

21 schedule following the completion of fact discovery, and it

22 seems to me you're -- I'm looking.  It seems you're in

23 agreement on both the sequence and timing for expert discovery.

24          Ms. Manolio, correct?

25          MS. MANOLIO:  Yes, Your Honor.

1          THE COURT:  Mr. Van Der Weele, correct?

2          MR. VAN DER WEELE:  Yes.  Yes, we are, Your Honor.

3   There was one -- there was one date in there I thought we could

4   make a little clearer, but we certainly could, based on what is

5   in this chart for phase one, because phase two doesn't -- you

6   know, doesn't kick in until after your ruling on summary

7   judgment.  But it seems to me that with an April 22 discovery

8   date cutoff, close of fact discovery, we should be able to put

9   together a proposed, you know, case schedule for Your Honor

10  that takes us through phase one.

11         THE COURT:  Yes.  Good.  That takes care of item 5 on

12  page 7 of your joint status report, the deadline for completion

13  of fact discovery, but I will add this clarification with

14  respect to item 6.  I'm extending fact discovery for the

15  purpose of allowing the parties to complete the discovery that

16  is in process, fact discovery, which means that all requests

17  for production and interrogatories that have been served is

18  what there will be, and you are working with that, and any

19  supplements to those on either side.

20         I do not think at this point in the case we need any

21  additional requests or interrogatories.  I'm allowing the

22  additional time so that the parties can complete the steps

23  we've talked about today in response to the renewed motion to

24  compel and in an attempt to avoid the Court having to rule on

25  the third motion and the defendant having to file a fourth.

1          All right.  And then expert discovery will commence,

2   and you agreed on the timing of that.

3          We have cleared up our examples confusion.  We know

4   where we are on that.

5          Ms. Manolio will ask her client to run an additional

6   check on the POA-FP relationship after the "we're going to

7   terminate you letter," and apparently in her effort to make

8   sure all documents are produced, but have not yet been

9   produced, one thing she'll be doing is come up here to Portland

10  to assist her client in that effort.

11         Ms. Manolio, when you come up here, be aware it's

12  very cold and clear.

13         MS. MANOLIO:  I've heard, I've heard.

14         THE COURT:  Wear warm clothes.

15         MS. MANOLIO:  Thank you.

16         THE COURT:  All right.  Because it's also windy.

17         MS. MANOLIO:  Things we're not used to in Phoenix,

18  Arizona.

19         THE COURT:  Well, there's that, although we had some

20  of your weather last summer up here, so there you go.

21         MS. MANOLIO:  I remember.

22         THE COURT:  116 degrees, it's pretty hot, I'll tell

23  you that.

24         MS. MANOLIO:  I can't imagine it in a place like

25  Portland where you're not used to it.  Here we're used to it,

1    we're prepared for it.

2              THE COURT:  Well, it killed a lot of things up here,

3    trees, plants, flowers.  Wow, it was something.

4              Mr. Van Der Weele, anything else we should cover?

5              MR. VAN DER WEELE:  No, Your Honor.  Thank you.

6              THE COURT:  Ms. Manolio, anything else?

7              MS. MANOLIO:  A side question.  How is your mother?

8              THE COURT:  She's in memory care.  Thank you for

9    asking.

10             MS. MANOLIO:  I'm apologize.  I'm sorry to hear that.

11             THE COURT:  No apology needed.  She's going on 93, so

12   it was not entirely unexpected.  Thank you for inquiring.

13             MS. MANOLIO:  Thank you.  I thought about you many

14   times, and I know Mr. Van Der Weele and I both feel the same,

15   family is always first, so just wanted you to know it's been on

16   my mind.

17             THE COURT:  Thank you.

18             All right, everyone.  Thank you for being present

19   today.  I appreciate it.  I hope you all have a good day, and

20   with that, we're adjourned.

21             MS. MANOLIO:  Thank you, Your Honor.

22             Thanks, Phil.

23             MR. VAN DER WEELE:  Thank you, Your Honor.

24             THE COURT:  Bye-bye.

25             (Proceedings concluded at 2:50 p.m.)

--o0o--

I certify, by signing below, that the foregoing is a correct transcript of the record of proceedings in the above-entitled cause.  A transcript without an original signature or conformed signature is not certified.


*/s/Bonita J. Shumway*                    *March 1, 2022*
_____          _____
BONITA J. SHUMWAY, CSR, RMR, CRR      DATE
Official Court Reporter

MR. MCCUNE: [1] 3/11
MR. VAN DER WEELE: [25]
3/18 5/1 6/9 7/2 8/6 10/5 21/15
23/23 24/6 24/14 26/6 30/7
32/12 32/16 32/20 33/25 34/5
34/19 39/19 40/5 43/5 45/4
46/1 48/4 48/22
MS. MANOLIO: [60]
MS. WHITE: [1] 3/22
THE COURT: [86]

-

--o0o [1] 49/2

/

/s/Bonita [1] 49/9

1

100 percent [2] 28/9 31/8
1000 [1] 2/18
116 [1] 47/22
1200 [1] 2/8
13 [1] 36/22
14.4 [1] 35/12
1900 [1] 2/12
1:31 [1] 3/2

2

200 [1] 2/5
2016 [7] 24/18 24/19 24/25
25/1 25/20 26/2 40/11
2020 [7] 9/24 11/13 11/21 13/8
14/12 14/20 29/23
2022 [3] 1/6 3/2 49/9
21 [1] 7/15
22 [3] 1/6 3/2 46/7
22nd [1] 45/16
24 [3] 6/15 6/23 44/22
24th [1] 21/2
27th [1] 24/25
2:50 [1] 48/25

3

3,000 [1] 12/22
30 [12] 34/4 34/12 34/23 35/3
36/5 36/15 36/20 36/22 37/19
37/20 41/4 43/5
30,000 [2] 10/2 12/21
301 [1] 2/18
31 [4] 21/4 21/14 45/1 45/14
319 [1] 2/8
326-8188 [1] 2/19
33 [4] 9/13 10/10 10/17 24/3
3:20-cv-00651-AC [1] 1/4

5

503 [1] 2/19

6

67 [1] 5/20
68-1 [1] 10/8
68-4 [1] 35/12
69 [1] 6/4

7

71 [1] 6/7
79 [4] 12/3 12/3 12/16 14/9
79-1 [3] 17/8 24/12 25/15
79-2 [1] 36/21
79-4 [1] 27/3
79.1 [2] 26/17 26/17
79.4 [2] 27/3 27/12
7th [1] 5/23

8

8188 [1] 2/19
85258 [1] 2/5
8686 [1] 2/5
87,000 [1] 13/23

9

90 [1] 42/19
93 [5] 6/14 6/17 6/23 44/22
48/11
97204 [3] 2/8 2/13 2/18

A

abide [1] 43/25
ability [1] 13/19
able [3] 20/11 21/19 46/8
about [41] 4/3 4/7 4/22 5/16
5/19 5/24 6/1 9/5 10/8 10/23
15/6 16/7 16/15 18/6 18/8 21/1
22/3 23/1 23/7 24/12 25/1 26/5
29/23 29/24 30/12 33/2 33/3
33/25 34/2 35/22 36/3 36/6
36/11 36/12 37/13 37/17 39/12
40/9 41/17 46/23 48/13
above [2] 19/5 49/6
above-entitled [1] 49/6
absolute [1] 26/15
absolutely [9] 11/25 15/3
19/10 23/5 41/15 41/18 42/24
43/3 43/14
abundance [2] 37/10 42/13
AC [1] 1/4
accurate [1] 31/2
acknowledge [1] 22/9
ACOSTA [3] 1/17 3/5 3/12
actions [1] 37/22

actually [10] 14/17 15/15 21/23
23/25 24/24 24/25 34/2 36/19
42/6 43/17
add [4] 10/7 31/3 45/7 46/13
addition [1] 29/22
additional [23] 7/20 7/23 12/19
15/5 15/9 16/23 16/25 17/2
17/3 20/4 20/20 26/24 27/15
27/18 28/7 28/24 29/3 30/2
38/4 45/12 46/21 46/22 47/5
address [1] 6/11
addressed [2] 4/15 25/13
addresses [1] 15/10
adjourned [1] 48/20
admissible [1] 26/2
advanced [1] 36/4
advise [1] 6/24
afraid [1] 32/1
after [12] 6/14 24/19 24/22
25/20 27/21 34/13 34/24 40/17
40/25 44/11 46/6 47/6
afternoon [5] 3/4 3/7 3/12 3/19
3/23
again [23] 8/8 8/18 9/1 11/18
13/5 15/6 17/7 18/10 18/21
19/19 20/18 20/24 25/7 25/8
29/8 29/19 32/8 36/11 40/14
40/19 42/14 42/23 44/7
ago [3] 7/22 11/13 29/10
agree [2] 38/11 44/25
agreed [9] 31/10 32/6 37/5
38/1 38/7 41/18 41/20 45/20
47/2
agreed-upon [1] 45/20
agreement [12] 18/17 19/7
19/9 19/14 30/23 37/11 38/5
40/8 40/9 42/5 42/8 45/23
ahead [7] 11/16 20/7 23/23
30/7 32/11 32/12 40/5
al [1] 1/7
Alberto [1] 2/5
aligned [1] 31/8
all [56]
all-inclusive [1] 19/25
allegations [2] 13/21 20/13
allow [1] 44/15
allowed [1] 30/18
allowing [2] 46/15 46/21
almost [1] 19/12
already [8] 11/11 12/25 13/9
15/1 29/5 30/2 38/1 39/9
also [9] 3/24 6/1 9/23 16/22
17/4 19/24 37/15 44/14 47/16
although [4] 8/9 10/22 22/11
47/19

# A

**always [3]** 12/18 27/8 48/15
**am [11]** 5/22 14/7 20/18 23/10 29/23 36/20 37/10 40/12 40/17 45/2 45/20
**and/or [1]** 42/9
**another [3]** 5/16 34/15 36/1
**answer [11]** 15/8 23/4 24/5 26/15 26/20 26/21 35/2 35/25 38/14 39/23 45/13
**answered [1]** 26/23
**answering [3]** 10/10 10/25 14/24
**answers [2]** 13/3 28/7
**anticipate [1]** 40/2
**antitrust [1]** 30/14
**any [21]** 4/7 7/23 8/11 8/12 8/14 8/15 8/25 13/23 19/11 22/12 25/2 26/1 31/3 31/25 32/14 38/15 39/17 40/2 41/6 46/18 46/20
**anyone [4]** 3/11 3/15 3/22 37/6
**anything [12]** 7/25 9/2 22/15 29/3 31/3 31/18 39/12 44/14 45/9 45/10 48/4 48/6
**anyway [1]** 35/15
**apologize [4]** 5/17 16/1 27/3 48/10
**apology [1]** 48/11
**apparent [1]** 26/3
**apparently [1]** 47/7
**APPEARANCES [1]** 2/2
**appearing [1]** 3/8
**appears [1]** 36/22
**applies [1]** 24/4
**appreciate [1]** 48/19
**appropriate [1]** 23/7
**April [2]** 45/16 46/7
**April 22nd [1]** 45/16
**are [78]**
**area [1]** 31/25
**argue [1]** 13/14
**argued [1]** 13/17
**arguing [1]** 11/19
**argument [5]** 1/15 5/4 5/12 9/11 18/23
**Arizona [1]** 47/18
**articulate [1]** 27/25
**articulation [1]** 31/1
**as [36]** 4/15 5/9 5/13 7/6 9/15 9/15 10/18 11/3 11/11 12/7 13/2 16/9 19/18 20/16 20/23 21/21 21/22 22/8 22/8 24/15 25/10 27/18 28/7 30/14 33/22

34/8 34/8 34/25 35/9 35/16 35/20 35/21 41/15 42/15 43/23 44/14
**ask [5]** 26/10 33/1 41/6 44/2 47/5
**asked [7]** 14/23 15/5 26/5 29/10 36/23 37/23 39/18
**asking [10]** 5/15 10/4 13/7 13/7 20/22 36/8 40/6 40/11 40/12 48/9
**asks [3]** 10/25 36/15 40/24
**aspects [1]** 9/17
**assertion [1]** 9/18
**assessment [1]** 21/1
**assist [1]** 47/10
**assume [3]** 19/8 25/2 42/2
**attempt [1]** 46/24
**August [3]** 4/18 8/11 15/6
**author [2]** 14/11 17/14
**authorized [8]** 36/25 37/2 37/4 37/6 37/9 37/22 41/2 41/3
**AUTOMATION [2]** 1/3 3/8
**Avenue [1]** 2/18
**avoid [2]** 44/6 46/24
**aware [2]** 28/19 47/11
**AZ [1]** 2/5

# B

**back [13]** 4/11 8/17 11/12 11/21 12/6 12/12 12/22 13/8 13/17 14/18 15/11 27/16 43/8
**based [3]** 17/18 35/18 46/4
**basic [1]** 22/24
**Bates [2]** 10/12 27/16
**be [74]**
**became [3]** 40/7 41/3 42/20
**because [40]** 4/12 8/24 10/1 10/11 11/12 11/18 11/24 12/6 16/1 16/14 17/3 20/3 20/20 21/6 21/9 23/7 23/10 26/3 26/18 28/12 29/8 30/1 31/4 31/12 32/3 35/1 36/11 37/8 38/5 38/12 39/13 39/17 40/8 40/25 41/13 41/24 42/17 43/24 45/6 46/5 47/16
**become [8]** 8/21 12/20 36/25 37/6 37/9 40/20 43/23 43/24
**becoming [2]** 37/2 37/21
**been [41]** 4/4 4/6 4/8 4/15 4/21 5/6 5/9 5/11 5/20 6/3 7/4 7/5 7/22 9/24 12/24 12/25 13/9 15/4 16/8 18/7 19/8 19/11 20/13 20/20 22/23 27/8 28/25 30/19 31/21 34/7 39/18 40/10 40/16 41/9 43/1 43/14 43/20

44/1 46/17 47/8 48/15
**before [15]** 1/17 4/5 7/16 8/22 9/6 14/21 23/22 30/12 30/22 32/19 37/4 38/18 39/16 40/8 42/19
**beginning [1]** 27/18
**begins [3]** 15/16 17/9 44/23
**behalf [1]** 3/20
**being [9]** 12/8 13/17 13/24 19/18 20/18 24/2 25/10 32/7 48/18
**believe [15]** 4/12 4/14 4/16 8/20 9/20 22/25 23/5 31/7 31/16 35/18 36/4 40/12 43/22 43/23 44/5
**below [3]** 18/15 19/20 49/4
**benefit [1]** 12/18
**Bernard [1]** 18/6
**best [2]** 14/3 26/15
**better [2]** 4/19 4/19
**between [7]** 19/17 35/4 36/9 38/24 39/5 41/8 42/9
**bit [2]** 30/21 32/3
**blah [6]** 18/18 18/18 18/18 18/18 18/18 18/19
**blames [2]** 35/6 35/6
**body [4]** 12/1 13/9 28/24 29/5
**Bodyfelt [1]** 2/7
**boilerplate [1]** 11/2
**bold [1]** 26/24
**Bonita [3]** 2/17 49/9 49/10
**bonita.shumway [1]** 2/19
**book [2]** 18/17 18/20
**both [11]** 10/16 12/15 16/23 18/10 23/10 23/19 31/12 32/8 38/23 45/23 48/14
**bottom [1]** 15/22
**BOWES [9]** 1/6 11/19 13/2 13/23 16/22 35/6 37/4 37/5 42/16
**briefed [1]** 4/6
**briefly [1]** 7/4
**brings [1]** 6/9
**broader [1]** 9/21
**brought [1]** 4/21
**bus [1]** 33/13
**business [5]** 33/23 39/1 39/4 39/15 41/8
**buy [2]** 40/19 40/20
**bye [2]** 48/24 48/24
**Bye-bye [1]** 48/24

# C

**calibrate [1]** 12/8
**calibration [1]** 12/9

# C

**call [1]** 34/18
**called [3]** 23/20 29/17 34/16
**came [3]** 37/4 37/5 40/2
**can [17]** 6/12 6/20 7/4 10/13 11/19 13/14 20/2 20/14 23/1 28/17 29/11 31/6 31/16 34/18 35/13 35/14 46/22
**can't [10]** 11/7 16/10 24/11 25/3 25/11 38/8 38/11 39/19 40/12 47/24
**cancel [1]** 37/11
**canceled [9]** 34/20 34/24 35/7 35/16 35/16 38/6 41/12 42/18 42/18
**cancellation [3]** 37/12 41/1 41/11
**candid [2]** 4/10 20/21
**cannot [4]** 11/20 22/3 29/15 31/6
**care [7]** 6/20 32/9 34/10 40/9 43/4 46/11 48/8
**carryover [1]** 8/19
**case [11]** 1/4 10/11 22/6 22/9 23/18 25/23 41/10 44/23 45/20 46/9 46/20
**cause [1]** 49/6
**caution [2]** 37/10 42/13
**CEO [2]** 42/3 42/4
**certain [3]** 20/18 29/14 43/25
**certainly [3]** 16/18 31/16 46/4
**certified [1]** 49/7
**certify [1]** 49/4
**CFO [1]** 43/20
**chance [1]** 22/20
**changed [1]** 38/13
**changes [1]** 38/13
**chart [2]** 45/20 46/5
**chase [1]** 7/19
**check [1]** 47/6
**choose [1]** 31/19
**chronology [2]** 25/19 40/15
**circumstances [1]** 42/10
**cite [2]** 17/22 28/14
**claim [2]** 24/17 26/5
**claims [1]** 40/3
**clarification [1]** 46/13
**clarity's [1]** 36/21
**clear [13]** 17/7 21/2 23/8 31/9 32/8 33/10 33/12 36/8 38/2 39/8 39/9 42/7 47/12
**clear-cut [1]** 32/8
**cleared [1]** 47/3
**clearer [1]** 46/4

**clearly [1]** 4/2
**cliche [1]** 23/15
**client [5]** 6/24 12/18 42/23 47/5 47/10
**client's [1]** 42/17
**close [4]** 6/7 21/3 45/16 46/8
**closed [1]** 27/21
**closes [2]** 21/18 44/25
**clothes [1]** 47/14
**cold [1]** 47/12
**Columbia [1]** 2/12
**column [4]** 10/14 11/11 25/17 25/18
**columns [1]** 25/16
**come [8]** 4/13 13/21 15/11 32/4 34/10 35/22 47/9 47/11
**comes [4]** 14/1 20/22 28/7 33/7
**comfortable [2]** 21/4 43/17
**coming [1]** 24/21
**commence [1]** 47/1
**comment [1]** 23/23
**comments [1]** 19/4
**committed [6]** 20/24 21/13 43/24 43/25 44/13 44/15
**committing [1]** 42/20
**communication [1]** 4/19
**communications [15]** 18/4 19/5 35/4 35/5 35/19 36/12 36/24 37/1 37/16 37/21 38/5 38/25 39/1 39/2 40/23
**company [2]** 34/16 42/1
**compel [13]** 4/4 5/5 5/7 6/5 6/8 7/1 7/9 30/10 34/13 43/8 44/5 44/6 46/24
**compelling [1]** 26/19
**complete [4]** 22/14 22/16 46/15 46/22
**completed [1]** 43/1
**completely [1]** 39/10
**completion [3]** 44/24 45/21 46/12
**compliance [1]** 24/3
**complied [1]** 34/22
**comply [4]** 9/12 10/17 34/7 34/9
**concern [2]** 26/10 39/11
**concerning [1]** 22/8
**concerns [2]** 22/8 28/13
**concluded [1]** 48/25
**confer [1]** 7/8
**conference [3]** 4/22 6/25 8/23
**conferences [1]** 7/8
**conferred [1]** 8/8
**confidence [3]** 20/12 45/12 45/14

**Confirm [1]** 42/25
**confirms [1]** 42/8
**conflated [1]** 24/2
**conformed [1]** 49/7
**confused [1]** 29/8
**confusion [3]** 19/9 19/11 47/3
**conjunction [3]** 12/2 30/20 32/25
**consists [1]** 19/21
**contained [2]** 9/20 22/7
**contains [2]** 17/10 17/13
**continue [8]** 16/24 21/1 23/22 26/8 27/9 28/19 42/9 42/9
**continuing [1]** 29/20
**contract [2]** 24/17 24/22
**convenience [1]** 19/19
**conversations [3]** 17/17 18/10 21/1
**cooperating [1]** 37/24
**copy [1]** 21/23
**corporation [2]** 1/3 1/7
**correct [20]** 5/19 10/5 11/8 12/9 19/22 19/23 19/24 20/2 26/25 28/8 28/21 28/22 29/23 29/24 30/4 30/5 31/17 45/24 46/1 49/5
**correlate [2]** 13/16 13/18
**corresponding [1]** 10/24
**Cory [1]** 18/7
**could [10]** 4/16 4/24 9/16 14/3 16/8 19/10 19/11 21/3 46/3 46/4
**couldn't [3]** 16/4 16/17 37/13
**counsel [1]** 3/13
**couple [2]** 22/7 24/1
**course [7]** 12/17 15/11 22/11 24/4 25/4 33/17 33/22
**court [12]** 1/1 1/18 2/17 4/1 6/25 8/22 21/2 23/8 36/19 41/17 46/24 49/11
**Court's [1]** 11/25
**Courthouse [1]** 2/17
**cover [1]** 48/4
**covered [2]** 18/22 23/25
**cringe [1]** 4/12
**CRR [2]** 2/17 49/10
**CSR [2]** 2/17 49/10
**cured [1]** 13/3
**current [1]** 6/9
**custodial [1]** 13/25
**cut [1]** 32/8
**cute [1]** 17/24
**cutoff [4]** 29/16 29/17 31/6 46/8
**cutting [2]** 7/18 7/19

**C**

cv [1] 1/4

**D**

damage [2] 31/12 31/14
damages [9] 31/14 31/18
31/22 32/7 35/8 35/13 35/18
36/2 40/3
data [1] 38/1
date [22] 8/12 10/12 11/12
14/11 15/3 17/14 20/11 20/18
25/16 28/4 28/15 28/19 29/11
29/14 29/16 29/17 31/6 39/14
45/17 46/3 46/8 49/10
dated [2] 18/18 18/18
dates [1] 25/17
day [4] 27/20 36/1 44/11 48/19
days [2] 7/15 42/19
deadline [1] 46/12
deal [3] 23/21 32/23 45/13
dealer [24] 19/7 19/9 19/14
34/25 35/7 35/9 35/16 35/20
35/21 36/25 37/2 37/4 37/6
37/9 37/11 37/22 40/7 40/8
40/15 40/16 40/19 40/21 41/2
41/3
dealership [1] 38/5
dealing [1] 22/6
December [12] 5/23 6/14 6/16
7/10 8/1 9/24 11/12 11/21 13/8
13/18 14/12 29/22
December 1 [2] 7/10 8/1
December 2020 [2] 13/8 14/12
December 4 [1] 9/24
December 7th [1] 5/23
declaration [5] 12/3 14/8 14/8
31/7 32/2
defendant [11] 3/18 3/24 5/1
6/7 9/23 15/21 20/11 22/12
23/15 35/7 46/25
defendants [5] 1/8 2/11 3/20
3/22 6/23
defendants' [8] 5/4 5/24 7/7
9/11 9/18 22/8 22/25 35/12
defense [2] 13/19 32/4
degree [1] 45/11
degrees [1] 47/22
Delaware [1] 1/6
demonstrates [1] 16/11
depending [1] 39/22
depends [1] 20/19
depose [2] 18/11 32/19
deposed [1] 18/8
deposition [5] 18/5 19/12

19/12 19/14 33/2
depositions [6] 18/22 19/1
27/13 37/17 44/16 45/18
Der [41] 2/11 3/20 4/13 4/16
4/21 5/1 6/11 6/24 10/4 12/13
20/21 21/5 23/22 26/10 26/19
28/13 30/7 31/1 31/16 31/17
32/5 32/12 33/13 33/16 37/7
37/18 38/12 38/18 38/20 39/1
40/5 42/25 43/4 43/10 43/15
43/19 44/9 45/4 46/1 48/4
48/14
describe [1] 17/17
descriptions [2] 17/16 17/17
detail [1] 9/14
determination [1] 33/5
determine [1] 10/2
determining [1] 6/8
did [17] 7/9 10/25 12/6 12/12
12/14 13/25 14/3 16/1 20/24
27/12 31/21 35/22 35/23 36/13
37/11 41/2 42/15
didn't [11] 10/21 12/8 13/13
13/14 13/17 18/16 18/23 20/7
37/8 37/21 37/24
difference [3] 13/18 15/25
33/21
different [6] 11/7 22/10 24/2
26/1 30/25 34/7
difficult [1] 10/2
digital [1] 21/24
directly [1] 10/22
disagree [2] 20/25 32/13
disagreement [1] 31/3
disclose [2] 22/12 31/18
disclosed [3] 27/23 28/25 29/2
disclosure [1] 17/1
disclosures [1] 13/10
discoverable [1] 28/20
discovered [2] 15/10 16/23
discovery [31] 4/7 5/25 13/11
13/24 20/16 21/3 21/18 22/17
23/14 27/21 30/25 31/1 31/19
31/22 32/24 32/25 33/7 33/9
44/24 44/25 45/16 45/17 45/21
45/23 46/7 46/8 46/13 46/14
46/15 46/16 47/1
discuss [1] 8/14
discussed [1] 18/25
discussion [4] 12/13 29/13
31/17 39/11
discussions [2] 4/7 8/17
dispense [1] 28/12
dispute [3] 9/18 19/8 37/13
disputes [1] 4/8

distinct [1] 38/23
DISTRICT [4] 1/1 1/2 1/18 2/17
do [29] 4/1 4/2 6/12 11/19
11/20 13/7 14/3 14/24 15/8
17/2 18/16 20/24 23/6 24/1
26/14 26/25 29/20 31/21 33/12
36/6 36/13 37/23 38/8 40/2
41/16 42/13 42/15 45/16 46/20
Docket [7] 6/3 6/7 6/14 6/22
12/3 14/9 44/22
document [42] 6/17 8/12 8/25
10/8 10/24 10/24 11/2 11/6
11/14 14/2 14/9 15/4 15/13
16/10 16/17 17/7 20/12 21/18
21/19 21/25 22/17 22/21 23/9
23/15 23/18 24/12 25/15 26/17
30/18 34/4 34/12 34/14 34/15
34/23 35/3 35/12 36/21 36/22
39/3 39/3 39/7 39/7
document-intensive [1] 23/18
documentation [10] 11/20
12/2 12/4 16/21 16/22 20/4
27/14 28/24 41/15 43/21
documented [1] 16/18
documents [64]
does [11] 8/20 12/11 12/20
15/23 19/4 23/12 23/14 23/16
43/4 43/6 44/25
doesn't [3] 26/5 46/5 46/6
doing [2] 16/2 47/9
dollars [2] 40/20 40/22
don't [24] 4/23 4/23 5/15 7/24
7/25 8/2 23/7 24/7 25/2 27/19
27/22 29/7 31/25 32/8 32/18
34/8 34/10 39/16 40/9 41/24
43/22 43/23 45/11 45/13
done [7] 13/9 16/16 27/20 32/7
37/18 41/13 45/14
doubt [1] 41/17
down [1] 43/20
draw [1] 20/15
Drive [1] 2/5
dump [2] 13/25 13/25
during [4] 5/13 18/25 37/2
37/16
duty [2] 9/12 15/9

**E**

each [8] 11/6 12/4 13/16 14/5
17/19 17/20 32/19 32/20
earlier [2] 5/8 21/1
effort [2] 47/7 47/10
either [9] 13/13 20/13 27/23
28/5 28/20 29/18 30/16 45/7
46/19

## E

Elizabeth [2]  2/11 3/23
else [9]  3/11 3/15 3/22 12/24 20/22 37/6 42/10 48/4 48/6
email [15]  7/11 7/15 8/1 15/4 15/9 16/4 16/5 16/9 16/25 18/18 18/18 25/16 25/17 25/18 42/8
emails [34]  7/13 10/2 10/11 10/13 11/24 12/22 13/15 14/10 14/25 15/7 16/14 16/23 16/25 17/2 17/3 17/14 17/16 17/18 17/23 18/14 18/23 19/17 19/21 19/21 20/1 24/12 25/2 25/20 25/22 26/2 27/7 29/2 29/3 29/4
enable [1]  9/14
encompass [1]  7/9
end [5]  9/4 27/19 34/22 34/23 44/8
endeavors [1]  37/23
engaged [1]  4/7
entered [1]  40/8
entire [3]  21/12 21/13 39/13
entirely [1]  48/12
entirety [1]  14/17
entitled [3]  35/19 36/4 49/6
equivocal [1]  45/13
especially [1]  13/22
establish [1]  41/8
et [1]  1/7
even [4]  20/21 24/9 34/3 39/16
ever [1]  39/18
every [11]  11/2 11/6 14/2 19/12 19/12 19/13 20/12 20/19 22/21 23/8 23/9
everyone [4]  29/14 43/16 44/25 48/18
everything [15]  14/21 20/22 21/3 21/7 21/14 23/20 28/15 28/18 29/11 29/15 31/23 32/20 32/23 44/8 45/17
evidencing [1]  36/24
exact [2]  27/16 42/16
exactly [5]  6/15 13/7 14/15 15/23 26/13
example [4]  24/9 24/16 26/16 27/20
examples [17]  9/19 9/20 10/3 10/19 14/25 25/7 26/9 26/14 26/14 27/8 27/16 27/18 28/3 28/12 29/4 29/7 47/3
exchange [1]  16/24
excuse [4]  13/10 16/21 23/9 37/19

exhaustively [1]  18/22
exhibit [1]  21/21
exhibits [2]  20/15 22/22
exist [4]  36/9 38/9 39/17 41/24
expect [1]  10/9
expert [12]  30/25 31/23 32/20 32/25 32/25 33/5 33/7 33/7 33/8 33/9 45/23 47/1
expert's [1]  30/20
experts [10]  30/13 30/14 30/18 31/10 31/12 31/13 31/15 31/19 32/19 33/2
explain [3]  14/23 16/1 17/24
explanation [2]  28/1 35/10
explicitly [1]  10/15
expressly [1]  10/19
extending [1]  46/14
extensively [2]  18/25 19/14

## F

F-r-a-n-c-o [1]  34/17
face [5]  16/10 16/10 16/16 16/16 26/3
face-to-face [2]  16/10 16/16
fact [18]  13/22 15/20 21/3 30/25 31/19 32/24 35/7 42/14 44/24 44/25 45/16 45/17 45/18 45/21 46/8 46/13 46/14 46/16
facts [1]  15/5
factual [1]  31/18
failed [1]  9/12
fair [1]  41/6
fairly [2]  22/23 28/17
faith [3]  21/10 33/4 44/14
falls [2]  17/4 22/16
family [1]  48/15
far [3]  4/13 16/21 16/22
fault [1]  35/17
fearful [1]  32/1
February [2]  1/6 3/2
feel [1]  48/14
feels [1]  43/17
few [1]  29/10
figure [1]  13/25
file [1]  46/25
filed [9]  5/23 6/14 6/15 6/16 6/23 7/5 12/2 21/2 44/22
filing [2]  7/16 12/16
final [1]  7/15
finally [1]  6/8
financial [9]  32/3 32/6 32/14 32/17 38/1 41/15 41/19 44/16 44/17
financials [1]  31/23
find [8]  10/13 12/24 15/3 25/6

28/19 28/24 29/3 29/6
fine [3]  20/9 33/8 33/15
Firestone [1]  2/4
first [13]  4/5 5/3 5/4 5/7 7/17 11/18 24/16 25/15 30/9 30/10 36/19 38/24 48/15
flippant [2]  19/13 20/18
flow [1]  4/20
flowers [1]  48/3
flyer [1]  33/19
flying [1]  43/17
focus [1]  5/16
follow [1]  42/7
follow-up [1]  42/7
following [4]  15/22 42/10 44/24 45/21
foregoing [1]  49/4
formally [1]  42/6
foremost [1]  11/18
form [4]  10/8 13/12 21/24 30/1
formally [1]  42/6
format [2]  16/4 26/21
formatting [1]  27/4
forms [1]  22/11
forth [3]  8/18 8/18 12/22
forthcoming [2]  7/20 7/23
forward [1]  28/10
found [4]  15/5 15/7 27/21 43/1
four [1]  7/13
fourth [10]  6/8 6/12 7/14 8/5 8/17 8/21 43/9 43/24 44/6 46/25
FP [17]  34/18 34/20 34/24 34/25 35/4 35/7 35/9 35/16 35/20 35/21 36/9 37/11 40/8 41/8 41/20 42/4 47/6
Francotyp [1]  34/16
Francotyp-Postalia [1]  34/16
frankly [1]  34/8
fraud [2]  24/16 24/17
fraudulent [2]  24/21 25/24
FRCP [3]  10/10 10/17 24/3
Friday [1]  45/16
front [1]  41/17
frustration [1]  13/21
full [1]  7/18
fully [2]  8/22 34/22
further [2]  28/23 43/1

## G

game [1]  13/2
Gates [3]  2/12 3/20 3/24
gave [2]  12/10 39/14
generally [1]  10/5
get [21]  4/5 7/24 7/25 8/3 27/21 27/22 29/8 35/9 35/10

## G

**get... [12]**  35/17 36/7 36/14 38/8 40/15 40/23 41/2 43/20 44/9 44/14 45/6 45/8
**gets [2]**  38/12 42/3
**getting [1]**  9/2
**give [12]**  14/22 16/20 16/21 23/3 26/20 26/23 27/9 27/15 31/5 34/9 36/23 43/16
**given [3]**  21/6 40/13 43/15
**go [24]**  11/16 12/6 12/12 13/8 13/17 16/5 16/6 20/7 22/20 23/23 26/17 27/12 29/6 30/7 32/6 32/11 32/12 35/9 36/6 40/5 43/8 43/18 43/21 47/20
**goal [1]**  16/20
**goes [7]**  11/12 14/21 20/14 23/10 31/12 31/14 32/8
**going [34]**  3/5 4/11 7/2 7/24 8/3 9/8 12/22 22/22 23/25 24/20 26/3 27/14 28/25 29/6 29/8 31/5 31/13 32/4 33/7 33/19 35/14 38/18 38/22 41/12 41/23 42/3 42/18 42/19 43/23 43/24 44/10 45/15 47/6 48/11
**gone [1]**  19/14
**good [17]**  3/4 3/4 3/7 3/12 3/19 3/23 16/2 18/23 21/10 33/4 42/22 43/7 44/13 45/2 45/3 46/11 48/19
**got [12]**  9/7 23/13 24/19 32/22 34/25 35/16 37/17 38/5 41/1 42/17 45/9 45/10
**gotten [4]**  8/12 8/15 8/25 32/3
**granted [1]**  34/13
**granting [1]**  5/7
**granular [1]**  35/11
**gray [1]**  31/25
**great [1]**  45/13
**greatest [1]**  6/17
**Greg [1]**  18/6
**group [3]**  38/24 39/2 39/6
**groups [1]**  38/23
**guess [3]**  24/10 36/1 45/5
**guessing [1]**  13/2

## H

**had [20]**  4/19 6/3 6/3 7/7 8/17 10/22 12/13 14/20 18/5 18/10 22/20 23/22 25/5 29/13 35/9 35/17 35/24 40/22 41/20 47/19
**hadn't [3]**  15/5 15/7 30/19
**hands [1]**  21/14
**hang [4]**  15/17 39/21 39/21

44/19
**happened [2]**  37/17 40/17
**happens [1]**  22/19
**happy [1]**  20/23
**hard [2]**  21/23 45/17
**has [21]**  4/4 4/6 6/7 6/8 6/8 9/12 9/19 9/24 11/5 11/13 15/4 16/6 19/11 20/13 26/19 26/23 28/24 29/16 32/20 37/18
**have [78]**
**haven't [5]**  8/15 8/24 32/3 32/13 39/9
**having [4]**  5/9 24/16 46/24 46/25
**he [1]**  20/23
**he's [1]**  20/22
**head [2]**  31/14 31/20
**hear [7]**  9/4 11/19 28/1 37/25 38/18 38/20 48/10
**heard [3]**  23/1 47/13 47/13
**hearing [4]**  5/13 6/25 7/2 13/5
**heart [1]**  11/25
**help [1]**  34/9
**helpful [2]**  33/11 34/10
**her [3]**  47/5 47/7 47/10
**here [23]**  4/3 4/16 6/1 11/18 19/19 20/10 22/3 22/19 22/24 23/4 23/20 24/2 24/17 24/20 26/15 36/3 36/12 36/15 47/9 47/11 47/20 47/25 48/2
**here's [6]**  13/25 15/25 17/11 29/21 32/18 45/15
**hiding [1]**  22/15
**high [1]**  45/11
**him [3]**  44/13 44/14 44/15
**his [3]**  37/18 37/19 37/19
**honest [1]**  4/23
**honestly [1]**  4/14
**Honor [77]**
**Honor's [4]**  5/6 5/16 25/8 34/14
**HONORABLE [1]**  1/17
**hook [1]**  38/14
**hope [2]**  44/11 48/19
**horrible [1]**  27/4
**hot [1]**  47/22
**how [8]**  25/24 26/4 35/22 36/6 37/17 40/1 44/6 48/7
**however [6]**  5/22 7/5 16/16 37/10 37/18 42/4
**huge [1]**  42/20
**huh [1]**  15/14
**hundred [2]**  22/7 28/13
**hyphen [1]**  34/17

## I

**I'd [2]**  45/5 45/10
**I'll [9]**  4/9 9/4 21/10 21/11 23/3 30/23 34/16 38/19 47/22
**I'm [50]**
**I've [13]**  23/1 29/5 32/6 32/14 36/7 38/1 39/18 43/19 43/24 43/25 44/14 47/13 47/13
**idea [1]**  9/1
**identical [1]**  6/16
**identification [4]**  24/4 24/9 29/17 30/2
**identified [18]**  9/20 12/16 15/1 18/15 19/17 19/19 20/13 21/25 23/20 24/11 25/20 25/21 28/4 28/18 29/11 29/15 31/13 37/7
**identifies [2]**  10/11 12/1
**identify [16]**  4/2 9/15 10/13 11/2 12/19 13/1 13/15 14/4 16/4 17/2 20/3 22/17 23/16 27/9 27/14 29/3
**illustrate [1]**  19/3
**imagine [1]**  47/24
**immediately [1]**  41/14
**improper [1]**  26/6
**in-person [1]**  16/17
**INC [2]**  1/3 1/6
**include [4]**  15/22 16/17 17/22 27/7
**included [1]**  12/16
**including [5]**  31/22 31/22 31/23 38/3 41/19
**inclusive [8]**  10/20 11/1 11/8 13/6 13/6 17/23 19/25 28/15
**inclusively [1]**  44/8
**inclusiveness [2]**  11/9 11/10
**incorporate [1]**  14/25
**incorporated [1]**  14/20
**indicates [1]**  6/24
**inducement [2]**  24/17 24/21
**informal [1]**  44/15
**information [24]**  4/20 12/10 13/14 13/15 16/24 17/18 26/24 27/5 27/18 28/7 30/3 31/12 31/14 32/3 32/5 32/14 32/17 38/1 38/13 41/13 43/15 43/16 44/16 44/17
**initial [3]**  39/1 39/12 39/25
**inquiring [1]**  48/12
**intend [6]**  20/12 25/24 27/19 28/24 43/25 44/9
**intended [2]**  13/1 17/17
**intending [1]**  13/1
**intends [2]**  8/22 23/17

**I**

**intensive** [1] 23/18
**interests** [1] 12/18
**interrogating** [1] 9/14
**interrogatories** [18]  9/8 9/9
10/1 11/1 11/7 12/5 15/10 22/2
25/6 25/9 26/18 28/21 29/12
29/18 33/17 35/12 46/17 46/21
**interrogatory** [32]  10/5 10/10
10/14 10/15 11/4 12/20 14/5
15/8 17/8 19/18 22/1 22/5
22/13 22/18 23/16 23/21 24/5
25/4 25/5 25/11 25/12 25/22
26/18 26/22 27/17 28/6 30/9
33/6 35/2 35/24 37/19 38/14
**interrupt** [1] 20/7
**interviews** [1] 44/15
**investment** [1] 35/23
**involve** [1] 31/20
**is** [164]
**isn't** [2] 25/9 42/6
**issue** [19]  4/20 8/21 8/24 10/5
13/16 24/2 24/8 25/12 30/10
30/14 31/13 33/23 33/24 34/2
34/4 42/20 43/23 43/23 43/24
**issues** [14]  4/7 4/15 5/6 5/10
6/21 7/11 9/7 13/5 14/14 23/4
24/2 30/10 33/17 45/10
**it** [135]
**it's** [28]  6/14 6/15 7/17 11/12
13/5 13/9 18/19 22/15 24/10
26/1 26/3 29/5 29/15 32/24
34/17 35/11 35/12 35/17 37/23
37/25 43/1 43/22 44/1 45/6
47/11 47/16 47/22 48/15
**italicized** [1] 26/24
**item** [2] 46/11 46/14
**itemization** [1] 35/13
**items** [4] 4/11 8/1 13/3 15/22
**its** [9]  9/12 14/17 22/12 34/15
34/21 34/24 35/7 35/24 37/11

**J**

**Jamison** [2] 2/7 3/12
**January** [6] 6/15 6/23 7/15
20/25 21/2 44/22
**January 21** [1] 7/15
**January 24** [3] 6/15 6/23 44/22
**January 24th** [1] 21/2
**job** [1] 16/2
**JOHN** [1] 1/17
**joint** [10]  5/22 6/6 6/13 6/17
7/16 7/17 8/19 20/25 44/22
46/12

**JUDGE** [4]  1/18 3/5 3/12 12/8
**judgment** [3]  21/20 21/21 46/7
**July** [2]  24/18 24/19
**June** [2]  5/11 24/25
**June 27th** [1] 24/25
**just** [41]  5/11 5/18 6/16 6/16
8/2 8/15 10/4 13/7 23/3 23/6
23/19 24/8 24/9 24/11 24/15
26/2 26/17 27/20 28/12 29/8
29/10 30/11 31/9 31/23 31/25
32/8 33/13 33/19 35/14 36/21
41/17 42/7 42/22 43/11 43/20
44/1 44/12 45/5 45/11 45/13
48/15
**justifiable** [1] 18/23
**justify** [1] 16/14

**K**

**keep** [3]  21/10 35/14 41/20
**keeps** [1] 12/22
**kept** [1] 33/22
**key:** [1] 29/21
**key: that** [1] 29/21
**kick** [1] 46/6
**killed** [1] 48/2
**kind** [3]  7/17 14/11 24/20
**kinds** [2]  22/2 28/14
**know** [30]  4/23 5/15 7/24 8/2
14/23 16/14 18/18 18/23 20/14
21/8 23/7 28/15 29/11 30/18
34/25 36/1 37/15 39/16 40/10
40/19 43/19 44/9 44/12 44/13
45/9 46/6 46/9 47/3 48/14
48/15
**known** [1] 20/16

**L**

**laced** [1] 25/7
**large** [2]  35/23 38/7
**largely** [1] 23/25
**last** [4]  4/18 15/7 45/8 47/20
**later** [4]  12/25 21/14 23/17
36/3
**latest** [1] 6/17
**learned** [1] 27/19
**least** [7]  10/22 15/22 15/23
15/24 16/14 40/18 43/5
**leave** [1] 13/2
**leaves** [1] 13/6
**leaving** [1] 13/19
**led** [4]  35/4 35/19 35/20 36/12
**left** [1] 4/24
**leftmost** [1] 25/16
**legitimately** [1] 13/14
**let** [8]  4/10 5/18 10/4 25/14

26/16 27/25 31/5 44/2
**let's** [8]  6/20 9/5 17/25 26/17
26/17 28/12 42/2 43/8
**letter** [12]  17/25 34/15 34/20
37/13 40/14 40/15 41/1 41/11
42/2 42/7 42/17 47/7
**light** [2]  13/22 28/8
**like** [9]  6/11 10/9 22/9 23/18
27/2 27/4 31/21 42/10 47/24
**limit** [1] 14/4
**line** [1] 17/4
**link** [1] 26/4
**linkage** [2]  10/16 25/9
**linked** [2]  25/3 25/10
**links** [1] 10/15
**list** [8]  14/10 17/13 18/24 19/25
24/12 24/19 25/15 26/6
**listed** [1] 27/23
**lists** [1] 10/14
**literally** [1] 4/12
**litigation** [1] 25/23
**little** [3]  19/13 26/9 46/4
**LLP** [2]  2/7 2/12
**local** [1] 3/13
**locate** [1] 9/15
**logistics** [1] 44/1
**long** [4]  24/22 34/8 41/25 45/6
**long-term** [1] 41/25
**longer** [2]  40/16 41/1
**look** [9]  7/16 14/15 17/25 25/6
26/17 27/3 27/6 33/1 36/19
**looked** [1] 39/18
**looking** [17]  5/22 14/7 14/9
14/16 14/16 14/16 15/12 17/6
26/16 29/19 36/15 36/20 40/17
44/21 44/23 45/20 45/22
**looks** [2]  27/3 27/4
**loss** [1] 11/18
**lot** [3]  33/20 35/1 48/2

**M**

**made** [20]  4/12 7/5 11/13 16/3
16/4 16/8 16/9 17/21 18/4 18/9
18/13 19/5 19/5 19/7 24/10
25/1 25/25 36/7 38/2 39/9
**MAGISTRATE** [1] 1/18
**main** [1] 39/10
**majority** [1] 4/14
**make** [17]  4/1 17/7 22/18 23/19
23/23 25/14 30/11 31/9 33/12
33/13 35/24 35/24 38/7 39/8
44/11 46/4 47/7
**makes** [4]  11/8 13/18 29/9 33/4
**making** [3]  11/10 23/8 29/17
**manner** [1] 38/15

# M

**Manolio [23]** 2/4 2/4 3/8 4/9 7/11 9/5 11/16 26/11 26/13 30/12 30/22 31/3 33/10 36/17 40/24 41/6 43/13 45/1 45/8 45/24 47/5 47/11 48/6

**many [8]** 10/1 12/13 18/3 19/4 25/19 39/16 39/16 48/13

**March [6]** 21/4 21/14 44/8 45/1 45/14 49/9

**March 31 [3]** 21/4 21/14 45/1

**material [8]** 15/19 15/20 16/6 16/8 16/19 18/12 19/6 33/5

**materials [2]** 17/22 17/23

**matter [2]** 8/22 44/1

**may [13]** 5/13 10/22 16/23 21/16 22/20 25/1 28/11 30/14 30/15 31/20 34/2 34/3 45/12

**maybe [1]** 28/10

**McCune [2]** 2/7 3/13

**me [34]** 4/10 4/12 5/18 7/25 10/4 12/10 13/6 13/7 13/7 13/10 16/21 19/13 21/6 21/12 22/8 23/3 23/9 25/14 25/20 26/16 27/25 28/17 29/13 29/19 30/23 31/5 31/17 31/18 33/20 37/19 39/14 44/2 45/22 46/7

**mean [10]** 12/11 12/21 15/24 20/7 26/5 26/14 26/25 28/3 29/4 37/21

**meaning [3]** 20/11 25/23 33/12

**meaningless [2]** 11/9 11/10

**means [3]** 21/21 21/22 46/16

**meant [3]** 30/4 37/21 37/22

**meat [2]** 16/18 27/4

**meet [2]** 7/8 43/18

**meet-and-confer [1]** 7/8

**meeting [3]** 16/10 16/17 16/17

**meetings [1]** 18/5

**meets [1]** 42/4

**memorialize [1]** 41/7

**memory [1]** 48/8

**mention [1]** 10/21

**met [3]** 38/6 38/7 41/14

**meter [2]** 18/17 18/20

**middle [1]** 25/17

**might [10]** 6/8 6/20 20/1 21/6 21/7 26/4 30/16 34/7 34/7 39/22

**million [2]** 40/20 40/21

**mind [2]** 31/11 48/16

**minimum [1]** 28/11

**minute [2]** 15/17 44/19

**minutes [1]** 29/10

**misrepresentation [1]** 16/19

**misrepresentations [10]** 15/20 16/7 16/8 16/15 18/13 19/4 19/6 24/21 25/1 25/25

**modify [1]** 6/2

**moment [2]** 12/11 22/14

**money [1]** 35/17

**month [1]** 7/22

**more [12]** 7/25 10/2 11/13 15/2 20/23 21/11 27/9 27/10 27/14 29/1 31/20 35/10

**morning [1]** 3/4

**morph [1]** 38/15

**morphed [1]** 37/18

**morphing [1]** 40/25

**most [2]** 6/22 44/21

**mother [1]** 48/7

**motion [41]** 4/3 4/4 4/6 4/8 4/14 5/3 5/4 5/5 5/8 5/8 5/10 5/14 5/16 5/19 5/20 5/25 6/1 6/3 6/5 6/8 6/12 7/1 7/5 7/9 7/14 8/2 8/15 9/5 12/7 22/22 23/17 24/3 30/10 34/12 43/8 43/9 43/10 44/5 44/6 46/23 46/25

**motions [3]** 5/5 5/7 5/25

**Mount [1]** 2/7

**moved [2]** 25/5 26/19

**moving [1]** 28/10

**Mr [3]** 2/7 2/11 32/12

**Mr. [39]** 4/13 4/16 4/21 5/1 6/24 10/4 12/13 18/7 18/7 20/21 21/5 23/22 26/10 26/19 28/13 30/7 31/1 31/16 31/17 32/5 33/13 33/16 37/7 37/18 38/12 38/18 38/20 39/14 40/5 42/25 43/4 43/10 43/15 43/19 44/9 45/4 46/1 48/4 48/14

**Mr. Murray [1]** 18/7

**Mr. Pitassi [1]** 18/7

**Mr. Van [32]** 4/16 4/21 5/1 10/4 12/13 20/21 21/5 23/22 26/19 28/13 30/7 31/1 31/16 31/17 32/5 33/16 37/7 37/18 38/18 38/20 39/14 40/5 42/25 43/4 43/10 43/15 43/19 44/9 45/4 46/1 48/4 48/14

**Mr. Van Der [2]** 4/13 6/24

**Mr. Van Der Weele [3]** 26/10 33/13 38/12

**Ms [3]** 2/4 2/11 40/24

**Ms. [21]** 4/9 4/13 4/16 7/11 9/5 11/16 26/11 26/13 30/12 30/22 31/3 33/10 36/17 41/6 43/13 45/1 45/8 45/24 47/5 47/11 48/6

**Ms. Manolio [19]** 4/9 7/11 9/5 11/16 26/11 26/13 30/12 30/22 31/3 33/10 36/17 41/6 43/13 45/1 45/8 45/24 47/5 47/11 48/6

**Ms. White [2]** 4/13 4/16

**much [3]** 4/19 4/19 44/6

**Murray [1]** 18/7

**must [2]** 9/13 45/18

**my [29]** 4/18 6/3 8/1 12/2 12/18 13/12 15/9 16/5 16/20 17/11 20/10 21/22 22/24 26/15 27/3 27/5 27/8 31/7 31/11 31/14 31/20 32/2 33/6 38/13 39/10 41/8 42/16 44/7 48/16

# N

**narrative [2]** 17/15 17/17

**narrow [1]** 5/5

**narrower [1]** 34/3

**nearly [1]** 19/13

**necessarily [2]** 19/25 30/17

**necessary [5]** 6/9 7/1 8/2 10/16 12/20

**need [8]** 7/2 26/10 31/13 32/18 33/25 39/8 44/6 46/20

**needed [3]** 11/23 37/23 48/11

**needs [4]** 23/9 23/9 32/7 33/8

**negotiating [1]** 42/1

**negotiations [2]** 35/22 36/24

**never [7]** 5/8 8/11 13/1 39/11 39/17 39/18 42/15

**new [2]** 29/6 39/13

**next [9]** 6/25 8/23 17/9 21/25 26/8 27/13 44/10 44/12 45/10

**no [25]** 1/4 3/16 5/18 9/1 13/18 16/24 19/8 20/9 21/13 36/5 37/1 37/8 37/13 40/4 40/13 40/16 40/25 41/1 41/16 42/7 42/14 43/1 43/3 48/5 48/11

**No. [19]** 5/20 6/4 6/7 6/14 6/23 12/3 12/16 14/9 14/10 17/8 19/19 26/20 27/6 36/20 36/22 37/19 37/20 41/4 43/5

**No. 1 [2]** 26/20 27/6

**No. 30 [6]** 36/20 36/22 37/19 37/20 41/4 43/5

**No. 67 [1]** 5/20

**No. 69 [1]** 6/4

**No. 7 [2]** 17/8 19/19

**No. 71 [1]** 6/7

**No. 79 [3]** 12/3 12/16 14/9

**No. 79-1 [1]** 14/10

**No. 93 [2]** 6/14 6/23

48/6

**N**

**nobody [2]** 13/12 13/14
**none [1]** 37/8
**not [80]**
**notable [1]** 9/17
**note [5]** 6/13 6/17 23/6 24/9 24/18
**noted [2]** 10/18 11/12
**notes [1]** 7/6
**nothing [2]** 8/13 42/10
**notice [1]** 29/14
**notifying [1]** 37/11
**November [1]** 45/9
**now [23]** 3/5 5/19 6/19 15/23 17/11 18/5 19/24 20/24 22/6 23/3 26/1 27/13 29/13 32/1 34/21 36/6 37/20 37/25 38/13 39/6 41/18 43/5 44/25
**number [5]** 10/14 10/16 11/13 11/24 12/22
**numbered [1]** 10/12
**numbers [1]** 27/16
**numerous [1]** 32/14

**O**

**o0o [1]** 49/2
**objectionable [1]** 22/2
**objections [1]** 8/11
**obligation [2]** 22/16 28/6
**observation [2]** 21/22 30/11
**observations [1]** 25/14
**obviously [1]** 16/2
**offended [1]** 21/9
**OFFICE [2]** 1/3 3/8
**Official [1]** 49/11
**oh [3]** 17/4 27/20 37/20
**okay [11]** 20/6 21/8 22/21 23/10 26/19 28/2 33/1 34/5 37/14 38/21 41/22
**omission [1]** 16/19
**omissions [2]** 15/20 16/15
**once [1]** 8/8
**one [36]** 2/12 6/14 6/16 7/2 8/6 8/7 8/25 9/17 9/23 10/18 12/11 14/14 17/19 17/20 19/3 23/6 24/24 25/4 25/5 26/18 28/23 30/11 31/22 32/7 33/16 33/19 33/20 34/15 39/3 39/3 39/19 46/3 46/3 46/5 46/10 47/9
**ones [2]** 17/21 40/7
**only [14]** 4/16 9/19 9/20 10/3 10/19 16/20 24/23 24/24 25/4 28/23 39/3 39/3 39/6 39/7
**open [1]** 45/8

**opinion [1]** 13/12
**opportunity [2]** 18/11 38/12
**opposing [1]** 32/20
**oral [8]** 1/15 5/3 5/12 17/21 18/4 18/8 18/9 19/5
**orally [1]** 17/21
**ord.uscourts.gov [1]** 2/19
**order [5]** 6/2 11/25 36/13 40/21 42/21
**orders [2]** 36/10 38/1
**OREGON [3]** 1/2 1/3 1/8
**original [5]** 5/7 26/20 26/21 31/11 49/6
**originally [2]** 14/20 40/7
**other [11]** 8/16 10/21 17/20 18/9 23/6 25/6 25/11 36/24 38/4 39/19 42/1
**other's [1]** 32/19
**otherwise [1]** 22/1
**our [10]** 12/1 13/25 24/3 28/6 31/10 34/12 37/1 38/3 42/9 47/3
**out [9]** 5/20 8/16 11/12 14/1 22/10 23/25 28/25 33/7 33/21
**outlined [1]** 8/1
**outlining [1]** 7/11
**outside [1]** 39/13
**outstanding [8]** 4/17 5/10 5/11 7/12 7/14 43/19 44/10 45/10
**over [7]** 11/1 11/8 11/10 13/6 13/12 13/23 30/1
**over-inclusive [3]** 11/1 11/8 13/6
**over-inclusiveness [1]** 11/10
**overall [2]** 9/11 12/21
**overarching [1]** 20/10
**overbreadth [2]** 23/4 24/8
**overbroad [1]** 23/1
**overlap [1]** 33/20
**owe [1]** 41/16
**own [1]** 33/1

**P**

**P-o-s-t-a-l-i-a [1]** 34/17
**p.m [2]** 3/2 48/25
**PACIFIC [2]** 1/3 3/8
**page [30]** 5/23 7/6 7/17 7/21 8/18 8/20 14/10 14/10 14/16 14/18 14/19 14/22 15/16 15/22 16/5 17/9 17/9 18/1 24/11 24/12 24/25 25/15 26/21 27/13 27/15 33/14 35/12 36/22 44/23 46/12
**pages [1]** 22/7
**paragraph [2]** 7/18 8/19

**parenthetical [1]** 7/21
**part [6]** 19/16 25/23 30/14 34/6 34/12 41/15
**particular [5]** 9/18 14/5 25/22 26/4 26/5
**particularly [1]** 30/13
**parties [7]** 4/6 6/2 6/6 22/9 30/17 46/15 46/22
**parties' [1]** 5/22
**partner [2]** 18/17 18/19
**party [5]** 9/14 9/15 21/19 21/19 30/16
**pathway [1]** 5/9
**Pattison [1]** 18/6
**pay [1]** 41/20
**people [2]** 18/6 18/7
**percent [2]** 28/9 31/8
**period [3]** 24/24 37/3 37/7
**person [12]** 16/8 16/9 16/17 38/6 38/7 41/13 41/14 42/1 42/4 42/5 42/8 43/18
**personally [1]** 4/12
**perspective [1]** 4/18
**pertain [4]** 16/25 38/23 39/4 41/7
**pertains [2]** 15/19 17/8
**phase [10]** 31/10 31/15 31/20 31/22 31/24 32/5 32/7 46/5 46/5 46/10
**Phil [3]** 3/19 6/10 48/22
**Philip [1]** 2/11
**Phoenix [1]** 47/17
**phone [2]** 7/8 18/10
**physically [1]** 21/23
**pick [1]** 9/4
**picture [3]** 12/21 37/5 37/5
**Pitassi [1]** 18/7
**PITNEY [13]** 1/6 11/19 13/2 13/23 16/21 19/17 35/6 35/17 36/25 37/4 37/5 40/9 42/16
**place [2]** 5/19 47/24
**plaintiff [37]** 1/4 2/4 3/6 3/8 3/11 3/15 8/11 8/20 8/20 9/12 9/18 10/3 11/3 11/5 11/13 10/15 22/11 25/1 25/11 25/21 34/7 34/15 34/21 34/22 34/25 35/1 35/4 35/6 35/8 35/8 35/21 35/23 36/9 36/13 40/7 40/13 41/1
**plaintiff is [1]** 40/13
**plaintiff's [3]** 7/18 8/18 35/11
**plaintiffs [2]** 34/24 36/3
**plane [1]** 42/4
**plants [1]** 48/3
**PLC [1]** 2/4

# P

**please [3]** 11/16 30/7 44/19
**Plenty [1]** 33/1
**PO [1]** 41/19
**POA [23]** 3/9 3/13 7/9 11/19 11/20 12/12 14/1 19/17 26/23 37/3 37/5 37/12 37/17 38/6 38/24 39/5 39/15 41/8 41/11 41/13 43/12 43/18 47/6
**POA's [1]** 42/8
**POA-FP [1]** 47/6
**point [11]** 7/21 11/10 15/6 15/7 20/11 22/24 23/25 33/21 34/24 35/15 46/20
**portion [1]** 26/24
**Portland [7]** 1/8 2/8 2/13 2/18 43/17 47/9 47/25
**posed [1]** 22/13
**position [4]** 7/7 7/18 8/18 44/7
**possession [2]** 30/16 30/17
**possible [4]** 8/5 28/19 30/13 43/9
**possibly [1]** 11/7
**post [1]** 26/2
**post-2016 [1]** 26/2
**Postalia [1]** 34/16
**potential [1]** 6/12
**practice [4]** 4/14 22/22 23/17 27/8
**preparation [1]** 30/15
**prepare [2]** 22/22 33/2
**prepared [2]** 5/12 48/1
**present [2]** 5/12 48/18
**presents [1]** 5/5
**president [3]** 38/6 41/13 41/25
**pretty [1]** 47/22
**previous [1]** 24/25
**previously [1]** 15/1
**price [2]** 18/17 18/20
**prior [2]** 40/10 40/10
**probably [1]** 44/10
**problem [6]** 10/21 16/24 24/16 37/24 38/2 43/3
**problems [2]** 8/14 10/18
**proceedings [3]** 1/16 48/25 49/5
**process [1]** 46/16
**produce [17]** 7/9 13/13 13/15 20/21 20/23 21/11 23/16 38/8 39/7 39/8 39/22 41/18 41/19 42/21 43/2 43/18 44/4
**produced [27]** 11/3 11/6 11/20 12/23 12/25 18/24 19/8 19/18 20/14 21/19 21/23 21/25 22/24 28/18 30/19 30/20 32/24 32/24 33/9 33/22 33/22 37/12 40/16 41/9 45/18 47/8 47/9
**producing [1]** 21/10
**product [1]** 40/20
**production [20]** 8/10 8/21 9/21 9/22 12/5 15/4 23/21 26/23 28/5 29/13 29/18 33/6 33/18 36/20 36/22 37/20 38/4 38/15 44/11 46/17
**productions [2]** 9/8 11/14
**progress [4]** 7/4 7/6 8/8 8/9
**proper [2]** 22/13 22/18
**properly [3]** 12/8 23/20 27/23
**proposed [1]** 46/9
**protective [1]** 6/2
**prove [2]** 25/12 25/24
**provide [6]** 16/10 21/13 28/7 32/6 38/2 41/15
**provided [14]** 9/19 9/24 11/21 12/3 12/7 14/20 17/15 25/9 29/5 29/22 30/2 32/14 32/14 44/8
**providing [4]** 10/3 38/19 38/22 44/17
**purchase [5]** 36/10 37/25 38/8 40/21 42/21
**purpose [3]** 25/21 26/2 46/15
**purposes [1]** 25/21
**put [4]** 31/10 32/2 44/5 46/8

# Q

**qualification [1]** 30/21
**quandary [1]** 13/6
**question [17]** 5/17 13/16 17/3 17/11 20/5 20/10 20/17 22/18 26/1 26/11 33/2 38/13 38/16 39/23 41/9 44/2 48/7
**questions [7]** 4/5 8/14 14/24 20/20 21/7 37/16 44/12
**quick [1]** 23/3
**quite [1]** 5/21
**quote [1]** 9/13

# R

**range [1]** 39/14
**rather [4]** 17/18 44/15 45/5 45/7
**reach [1]** 42/5
**reached [1]** 42/8
**read [3]** 12/7 15/10 35/13
**readily [1]** 9/15
**real [1]** 13/16
**realize [1]** 45/13
**really [7]** 5/11 18/22 30/9 33/5

**reason [7]** 20/2 22/14 27/17 32/2 35/5 37/3 41/23
**reasons [1]** 35/1
**received [3]** 13/22 34/14 42/2
**recent [3]** 4/22 6/22 44/22
**recipient [2]** 14/11 17/14
**record [5]** 9/9 17/7 22/7 31/9 49/5
**records [1]** 9/13
**refer [1]** 29/16
**reference [2]** 18/9 26/9
**referenced [1]** 9/25
**referred [3]** 17/16 19/22 33/17
**referring [2]** 14/13 18/24
**reflect [1]** 41/7
**regard [1]** 10/20
**regarding [2]** 18/19 37/2
**regular [1]** 26/20
**reinstated [8]** 34/25 35/9 35/18 36/14 37/17 38/8 40/23 41/2
**reinstatement [5]** 35/5 35/20 35/23 36/13 39/4
**related [2]** 12/4 31/18
**relation [3]** 34/21 34/24 35/7
**relationship [12]** 38/24 39/1 39/5 39/12 40/1 40/2 41/8 41/21 41/25 42/6 42/9 47/6
**relative [1]** 8/9
**relatively [1]** 22/7
**relevance [1]** 35/15
**relevant [5]** 24/24 29/17 35/6 37/2 37/7
**reliance [1]** 10/10
**relied [8]** 11/3 11/5 11/22 12/12 12/17 13/3 14/6 32/20
**relies [1]** 33/8
**rely [11]** 10/3 10/25 20/1 20/12 21/20 23/17 25/11 30/14 30/15 30/19 31/19
**relying [4]** 12/21 13/20 24/4 32/25
**remained [1]** 7/11
**remaining [2]** 33/24 34/1
**remains [1]** 5/25
**remember [2]** 15/6 47/21
**reminder [1]** 7/13
**reminding [1]** 7/14
**renewal [1]** 39/4
**renewed [5]** 5/4 5/14 5/20 5/25 46/23
**report [13]** 5/23 5/24 6/6 6/14 6/18 6/22 7/6 7/16 7/17 8/19 20/25 44/22 46/12
**reporter [3]** 2/17 4/1 49/11

# R

**reports [4]** 5/8 30/15 30/21 31/23
**representation [1]** 7/19
**representations [5]** 16/3 16/7 18/3 18/8 18/9
**represented [3]** 5/9 6/3 6/6
**request [28]** 8/10 8/21 10/24 10/24 17/5 23/20 26/23 28/5 29/18 33/6 34/4 34/8 34/12 34/23 35/3 36/5 36/15 36/20 36/21 36/23 37/18 37/19 38/4 38/14 39/11 40/25 41/4 41/6
**requested [3]** 22/23 36/5 42/16
**requests [12]** 8/13 8/13 9/1 9/8 9/22 12/5 22/25 29/12 30/18 33/18 46/16 46/21
**required [1]** 22/11
**rereading [1]** 4/11
**reserve [2]** 12/19 12/25
**resolution [1]** 5/10
**resolve [2]** 9/5 32/18
**resolved [11]** 4/4 4/8 4/15 4/21 5/6 5/9 6/3 8/22 8/24 42/19 42/20
**resolving [1]** 6/7
**respect [10]** 8/5 9/7 9/25 9/25 17/14 25/15 25/19 39/25 43/10 46/14
**respond [2]** 21/16 30/17
**responded [1]** 4/19
**responding [3]** 9/15 11/4 11/6
**response [40]** 3/16 7/10 8/12 8/25 9/21 11/2 11/8 12/15 12/15 14/5 14/17 14/22 15/15 15/21 16/6 17/4 17/6 17/9 19/3 21/5 21/20 22/1 22/4 22/5 22/13 22/17 23/8 23/16 25/22 26/4 27/6 27/6 27/23 27/24 34/13 35/11 37/1 42/17 43/11 46/23
**responses [17]** 7/20 7/23 10/23 11/1 12/1 12/7 12/14 13/11 13/24 14/4 14/8 25/7 29/20 29/21 30/3 30/9 38/3
**responsive [9]** 9/19 17/2 19/18 20/4 28/5 28/20 29/12 33/6 37/8
**rest [1]** 44/5
**restatement [1]** 35/21
**result [1]** 20/16
**reviewed [2]** 9/13 17/3
**RFPs [1]** 28/20
**right [43]** 3/17 4/3 4/25 5/19 9/3 9/7 9/17 9/23 10/14 12/19 12/25 14/7 15/12 16/12 17/10 18/2 18/16 20/10 21/15 21/18 22/3 24/6 25/14 26/8 27/11 27/25 29/25 30/6 31/14 32/1 34/19 40/5 41/5 41/11 41/17 42/5 42/22 44/21 44/25 45/15 47/1 47/16 48/18
**rightmost [1]** 25/17
**RMR [2]** 2/17 49/10
**roll [1]** 3/5
**Room [1]** 2/18
**rule [2]** 9/12 46/24
**rules [1]** 22/17
**ruling [5]** 23/8 24/10 25/8 34/14 46/6
**run [2]** 42/23 47/5

# S

**S.W [3]** 2/8 2/12 2/18
**said [10]** 11/5 11/21 15/8 17/4 26/22 30/22 33/16 37/20 40/14 43/11
**sake [1]** 36/21
**same [6]** 15/12 27/17 33/14 34/2 38/3 48/14
**San [1]** 2/5
**satisfying [1]** 22/16
**save [1]** 36/1
**say [38]** 3/5 7/5 8/2 8/8 12/18 13/9 14/24 15/2 15/21 15/23 16/22 17/21 18/3 18/12 18/16 19/12 20/3 20/12 21/10 23/2 26/3 26/13 27/8 27/13 27/20 28/3 28/4 28/17 29/2 29/4 29/25 31/5 32/2 37/10 38/12 38/23 40/18 42/12
**saying [4]** 13/13 27/7 35/16 42/18
**says [8]** 7/18 8/20 9/23 19/6 35/24 40/16 40/19 40/24
**schedule [3]** 44/24 45/21 46/9
**scheduled [1]** 5/3
**Scottsdale [1]** 2/5
**scratched [1]** 31/20
**search [5]** 33/24 34/9 42/14 42/16 42/23
**searches [2]** 36/6 42/15
**searching [2]** 28/25 34/6
**second [15]** 5/5 5/7 12/15 26/23 27/5 27/15 31/10 33/24 34/1 34/4 34/12 35/11 39/2 39/6 41/3
**Secondly [1]** 24/23
**section [1]** 44/23
**see [9]** 6/19 6/20 10/9 14/10 14/19 24/23 26/25 27/1 45/7
**seeking [3]** 35/3 35/3 35/8
**seems [10]** 22/3 25/20 28/17 29/13 29/19 33/19 41/6 45/22 45/22 46/7
**seen [1]** 42/15
**sense [1]** 29/9
**sent [4]** 7/11 7/13 7/15 41/11
**sentence [1]** 19/6
**sequence [1]** 45/23
**series [1]** 18/4
**served [3]** 8/10 8/11 46/17
**set [2]** 8/18 39/2
**several [1]** 37/16
**share [1]** 26/10
**she'll [2]** 30/23 47/9
**She's [2]** 48/8 48/11
**short [3]** 6/21 22/16 34/18
**should [9]** 3/5 28/10 31/21 32/20 38/19 38/22 44/8 46/8 48/4
**shows [1]** 41/20
**Shumway [3]** 2/17 49/9 49/10
**side [4]** 13/13 42/1 46/19 48/7
**sides [3]** 16/23 18/10 23/19
**signature [2]** 49/7 49/7
**signed [2]** 24/18 24/22
**signing [1]** 49/4
**similar [1]** 6/15
**simple [2]** 22/6 37/3
**simply [3]** 26/3 34/4 39/8
**since [9]** 4/6 4/13 4/18 5/11 7/5 7/13 7/23 11/14 26/22
**single [10]** 8/12 8/25 11/2 11/6 14/2 22/21 32/3 34/14 39/7 39/7
**sit [2]** 4/15 43/20
**six [4]** 8/16 8/25 11/6 25/5
**so [66]**
**some [18]** 4/5 5/21 7/10 8/17 8/17 11/24 12/21 16/3 20/25 24/20 32/5 34/9 34/24 40/18 40/22 45/6 45/7 47/19
**somebody [2]** 24/4 33/4
**someone [1]** 10/9
**something [16]** 10/9 12/24 16/16 20/22 21/11 27/21 27/22 28/25 29/5 30/12 31/5 31/6 32/24 33/4 40/19 48/3
**sometime [1]** 40/10
**sorry [3]** 19/16 35/20 48/10
**sort [1]** 36/10
**SP [7]** 37/4 38/7 38/24 39/5 39/12 39/15 41/14

## S

**speak [2]** 4/1 4/2
**specific [17]** 12/1 12/4 12/4 12/17 12/20 12/23 13/2 13/16 13/24 18/14 18/19 20/4 22/1 22/4 27/7 27/16 30/2
**specifically [11]** 14/9 15/8 15/10 17/1 17/2 17/16 17/20 17/20 17/25 19/18 27/15
**specified [1]** 25/10
**specify [3]** 9/13 12/12 18/13
**spell [1]** 34/16
**spelling [1]** 34/18
**spend [1]** 35/17
**sponsorship [1]** 41/21
**spreadsheet [16]** 9/24 10/7 10/8 10/15 10/20 11/8 11/21 12/6 12/11 13/8 13/18 14/12 16/25 19/17 29/23 30/1
**spreadsheets [1]** 32/15
**squarely [1]** 41/4
**stalled [2]** 7/6 8/8
**start [6]** 4/9 5/18 9/9 10/4 10/7 19/4
**starting [2]** 14/22 16/5
**starts [1]** 14/17
**stated [1]** 10/19
**statements [1]** 24/1
**states [5]** 1/1 1/18 2/17 17/20 19/16
**status [16]** 4/22 5/8 5/22 5/24 6/6 6/13 6/18 6/22 6/25 7/6 7/16 7/17 8/19 8/23 44/22 46/12
**step [1]** 28/23
**steps [1]** 46/22
**still [11]** 4/17 7/23 15/12 17/7 33/18 37/24 39/17 43/11 43/15 43/19 45/8
**still didn't [1]** 37/24
**stipulated [1]** 6/2
**stop [1]** 23/3
**story [2]** 34/22 34/23
**strategy [2]** 22/12 25/23
**street [3]** 2/8 2/12 23/15
**stricken [1]** 23/18
**strictly [1]** 32/6
**strongly [1]** 32/13
**stuff [1]** 41/16
**subject [1]** 24/3
**subparts [1]** 17/10
**subsection [5]** 17/13 19/2 19/15 19/16 19/16
**subsections [1]** 17/15

**subsequent [12]** 6/13 17/1 29/22 37/22 37/22 38/3 41/12 41/16 43/15 43/16 44/12 44/14
**subset [2]** 36/14 39/13
**substance [3]** 13/12 16/18 30/1
**such [1]** 5/13
**sufficiency [1]** 24/8
**sufficient [2]** 9/14 10/16
**suggest [1]** 28/15
**suggested [1]** 21/22
**suggesting [1]** 22/15
**Suite [3]** 2/5 2/8 2/12
**summarize [1]** 43/11
**summary [4]** 10/5 21/20 21/21 46/6
**summer [1]** 47/20
**supplement [16]** 11/23 13/8 14/4 14/21 14/23 14/24 15/9 15/11 16/5 20/19 27/9 27/15 27/19 27/24 28/6 38/3
**supplemental [27]** 11/14 12/1 12/7 12/14 12/15 12/15 13/3 13/10 13/10 14/8 14/17 14/22 15/15 15/21 16/6 17/1 17/6 17/9 19/2 21/7 22/4 27/5 29/20 29/21 30/3 33/24 35/11
**supplementally [1]** 27/14
**supplementation [1]** 14/12
**supplemented [4]** 11/25 15/4 26/22 27/7
**supplements [2]** 20/3 46/19
**supplier [2]** 34/21 36/9
**suppliers [1]** 34/16
**support [3]** 20/13 21/20 40/3
**sure [24]** 4/1 7/3 15/18 17/7 17/12 21/6 22/19 22/21 23/1 23/19 26/12 28/11 31/9 32/10 32/16 33/13 36/2 39/8 39/24 41/5 42/23 44/3 44/20 47/8

## T

**table [5]** 14/19 18/15 19/20 19/21 19/24
**take [8]** 3/5 6/20 25/8 26/16 28/23 33/19 33/23 43/4
**taken [2]** 45/6 45/19
**takes [2]** 46/10 46/11
**taking [1]** 24/15
**talk [6]** 4/3 16/7 18/6 23/1 23/7 33/25
**talked [4]** 10/23 18/8 30/12 46/23
**talking [12]** 4/22 5/19 6/1 10/8 15/6 16/15 22/3 24/12 34/2

**talks [2]** 5/24 25/1
**Telephone [1]** 1/15
**tell [10]** 4/17 7/4 14/1 21/11 30/23 38/19 39/19 42/13 42/14 47/22
**telling [1]** 39/15
**ten [1]** 28/14
**tends [1]** 28/14
**tens [1]** 22/9
**term [8]** 8/9 16/13 41/25
**terminate [1]** 47/7
**terminated [2]** 42/3 42/6
**terms [3]** 34/9 35/22 42/16
**testimony [1]** 18/5
**tethered [3]** 22/4 23/9 23/10
**than [7]** 10/2 11/13 17/18 21/14 34/3 36/24 44/15
**Thank [25]** 3/10 3/14 3/17 3/21 3/25 4/25 6/19 6/19 8/4 9/3 11/15 11/17 30/6 33/15 36/18 44/18 47/15 48/5 48/8 48/12 48/13 48/17 48/18 48/21 48/23
**Thanks [1]** 48/22
**that [337]**
**that's [39]** 5/20 6/1 7/20 7/25 13/17 13/21 16/13 19/8 20/9 22/18 22/24 23/21 24/7 24/8 26/6 29/4 32/23 33/1 33/8 33/14 33/15 33/16 35/15 36/2 36/7 36/11 36/11 36/14 36/15 38/2 38/15 39/8 40/16 40/24 41/3 42/17 44/1 45/12 45/17
**their [6]** 25/23 25/24 25/24 30/15 41/20 43/20
**them [10]** 5/12 8/14 9/15 10/13 33/2 34/9 34/11 36/7 40/23 43/2
**theme [1]** 25/24
**then [34]** 7/10 7/13 7/23 8/1 8/5 10/13 11/11 11/14 13/8 14/21 14/24 17/22 18/9 18/12 19/15 22/16 22/23 25/11 27/2 30/19 31/19 31/21 31/23 33/23 38/19 39/7 40/15 40/20 40/21 41/11 42/22 45/18 45/19 47/1
**theory [3]** 25/23 36/2 36/4
**there [58]**
**there's [18]** 7/19 12/9 18/22 19/8 19/15 21/11 28/13 28/25 33/20 39/3 39/3 39/7 40/21 41/16 41/23 42/7 42/10 47/19
**these [23]** 4/11 4/15 7/8 8/13 10/1 10/19 10/25 11/21 12/23 12/24 14/25 17/21 18/21 18/24

# T

**these... [9]** 19/4 24/20 25/9 25/24 27/8 28/4 28/14 29/4 29/21

**they [31]** 4/17 5/11 5/23 6/3 10/12 10/13 12/8 12/19 14/23 15/5 18/24 18/25 22/23 23/19 25/3 25/24 30/19 33/22 34/8 34/10 35/16 36/6 36/6 40/14 40/15 41/20 42/4 42/18 42/19 42/20 43/2

**they're [4]** 10/12 25/3 40/15 41/17

**they've [3]** 22/23 36/3 40/14

**thing [6]** 9/23 23/6 32/19 34/3 36/10 47/9

**things [6]** 21/22 28/14 43/25 45/12 47/17 48/2

**think [21]** 4/17 6/9 10/22 20/17 20/22 21/6 21/10 21/12 23/24 24/1 24/7 28/1 30/8 30/21 30/22 33/23 34/1 34/6 38/19 45/8 46/20

**third [14]** 2/18 4/4 6/5 6/12 7/1 7/9 7/14 11/11 19/5 43/8 43/10 43/22 44/5 46/25

**this [45]** 3/5 4/14 4/20 6/10 7/7 7/14 8/10 8/16 8/22 9/17 10/11 12/13 12/20 13/12 15/5 16/1 17/3 17/8 19/25 20/3 20/4 20/25 21/2 22/9 23/18 25/4 25/5 26/22 27/5 29/13 30/11 30/13 31/4 31/7 31/21 33/5 33/19 39/16 39/23 41/25 42/17 44/2 46/5 46/13 46/20

**those [33]** 8/3 9/4 9/9 11/1 12/4 13/1 14/4 14/25 16/14 17/17 18/6 18/7 18/11 18/13 18/14 22/2 25/2 25/19 25/21 26/1 26/4 29/3 35/5 35/18 36/7 39/16 40/2 40/9 40/11 41/9 41/16 41/24 46/19

**though [3]** 20/21 24/1 40/12

**thought [5]** 4/20 21/9 31/11 46/3 48/13

**thoughts [1]** 43/13

**thousand [1]** 11/24

**thousands [1]** 22/10

**three [7]** 5/24 7/7 7/15 8/13 8/16 8/16 25/16

**thrilled [1]** 45/10

**through [10]** 7/19 9/10 9/10 16/6 19/14 22/21 35/9 43/18 43/21 46/10

**throughout [1]** 18/4

**throw [1]** 33/12

**tie [2]** 13/23 27/16

**tied [1]** 13/24

**ties [1]** 18/17

**time [21]** 4/6 5/13 5/21 15/6 15/7 19/25 20/19 22/12 23/7 24/20 24/24 26/22 33/1 37/3 37/7 41/3 43/20 44/6 45/7 45/9 46/22

**times [2]** 12/14 48/14

**timing [2]** 45/23 47/2

**to be [1]** 41/2

**today [6]** 4/16 5/4 37/25 42/15 46/23 48/19

**today's [1]** 5/13

**together [2]** 21/9 46/9

**told [5]** 11/23 31/5 32/7 35/1 41/12

**tomorrow [2]** 43/17 44/11

**took [1]** 11/25

**top [1]** 8/20

**topic [1]** 19/11

**topics [1]** 18/21

**trail [1]** 41/24

**transaction [2]** 38/25 40/1

**transactional [1]** 36/8

**transcript [3]** 1/16 49/5 49/6

**trees [1]** 48/3

**trial [5]** 20/14 21/21 22/12 22/23 23/17

**tried [1]** 34/9

**troubled [1]** 26/9

**troublesome [1]** 29/1

**true [2]** 7/4 38/10

**try [1]** 16/1

**trying [3]** 17/24 17/24 43/20

**two [16]** 5/5 5/11 21/21 23/14 24/18 24/23 25/14 30/10 31/15 31/20 31/24 32/5 33/16 38/22 44/10 46/5

**two-way [1]** 23/14

**type [1]** 26/21

# U

**Uh [1]** 15/14

**Uh-huh [1]** 15/14

**under [10]** 7/7 7/21 9/12 10/20 11/9 13/6 22/17 28/6 33/13 42/10

**under-inclusive [2]** 10/20 13/6

**under-inclusiveness [1]** 11/9

**understand [10]** 4/23 13/20 14/15 15/9 27/22 28/12 29/1 32/4 34/18 39/10

**understanding [1]** 31/8

**Understood [5]** 28/16 29/7 36/16 38/17 39/9

**unexpected [1]** 48/12

**unfortunately [2]** 17/19 31/4

**UNITED [3]** 1/1 1/18 2/17

**universe [4]** 20/15 20/16 21/12 21/13

**unresolved [1]** 5/25

**until [3]** 4/21 45/7 46/6

**up [14]** 4/21 9/4 20/22 34/10 34/11 36/7 42/7 43/17 44/11 47/3 47/9 47/11 47/20 48/2

**update [5]** 10/23 12/6 13/17 15/3 30/1

**updated [3]** 9/25 12/10 12/10

**updating [1]** 16/24

**upon [2]** 13/3 45/20

**us [12]** 6/9 6/11 9/6 14/1 14/23 31/5 35/1 35/16 36/23 36/23 42/9 46/10

**use [7]** 22/22 23/15 27/21 27/22 28/10 29/7 33/7

**used [12]** 12/9 16/13 22/3 24/11 25/3 27/17 29/16 31/6 31/7 47/17 47/25 47/25

**using [3]** 13/20 19/3 40/2

**usual [1]** 33/22

# V

**Van [41]** 2/11 3/20 4/13 4/16 4/21 5/1 6/11 6/24 10/4 12/13 20/21 21/5 23/22 26/10 26/19 28/13 30/7 31/1 31/16 31/17 32/5 32/12 33/13 33/16 37/7 37/18 38/12 38/18 38/20 39/14 40/5 42/25 43/4 43/10 43/15 43/19 44/9 45/4 46/1 48/4 48/14

**Van Der Weele [1]** 6/11

**various [1]** 22/10

**Veronica [2]** 2/4 3/7

**version [1]** 27/3

**versus [1]** 16/9

**very [9]** 4/10 11/7 14/3 16/2 17/25 18/19 20/20 20/20 47/12

**viable [1]** 36/2

**voluminous [1]** 32/15

# W

**wait [1]** 45/7

**waiting [2]** 7/24 43/11

**wake [1]** 5/6

**want [14]** 14/1 20/24 22/18 23/6 28/23 31/9 31/25 32/8

# W

want... [6]  33/12 33/13 35/13 36/19 37/25 42/12
wanted [2]  23/22 48/15
wants [2]  20/23 35/10
warm [1]  47/14
warp [1]  24/20
was [70]
Washington [1]  2/8
wasn't [4]  21/8 32/24 33/12 34/10
way [3]  22/21 23/14 39/19
ways [3]  23/10 32/8 34/7
we [88]
we'll [3]  9/4 36/1 36/2
we're [26]  5/19 6/1 10/7 13/19 13/20 13/20 15/6 22/3 26/16 27/20 29/8 31/9 31/13 33/13 36/4 36/11 36/12 36/14 42/18 44/17 45/15 47/6 47/17 47/25 48/1 48/20
we've [13]  4/19 7/7 8/17 9/7 18/5 19/14 24/19 29/2 29/13 39/17 41/18 42/14 46/23
Wear [1]  47/14
weather [1]  47/20
week [2]  44/12 45/11
weeks [1]  44/10
Weele [39]  2/11 3/20 4/13 4/16 4/21 5/1 6/11 6/24 10/4 12/13 20/21 21/5 23/22 26/10 26/19 30/7 31/1 31/16 32/5 32/12 33/13 33/16 37/7 37/18 38/12 38/18 38/20 39/14 40/5 42/25 43/4 43/10 43/13 43/19 44/9 45/4 46/1 48/4 48/14
Weele's [2]  28/13 31/17
well [21]  7/22 8/24 13/5 13/25 20/23 23/24 24/10 24/24 27/20 28/11 34/2 37/4 37/20 38/12 39/13 40/6 40/22 40/24 40/25 47/19 48/2
went [5]  31/21 38/6 38/7 39/1 41/14
were [37]  4/22 8/1 11/23 11/23 11/24 12/12 13/3 16/3 16/3 17/3 17/21 18/4 18/9 18/13 18/21 18/24 18/25 19/3 19/5 19/6 21/1 21/9 22/6 24/11 25/6 25/25 30/16 33/21 34/21 35/21 35/22 37/1 37/16 41/10 42/16 43/1 43/2
weren't [2]  8/14 42/18
what [75]

what's [1]  7/14
whatever [6]  22/14 25/21 34/10 37/23 40/22 45/11
when [38]  4/2 4/18 4/21 7/24 8/3 9/1 10/9 10/23 11/23 14/1 15/23 16/23 16/25 18/12 20/24 21/1 21/12 21/18 23/7 24/4 26/13 27/12 27/20 28/3 29/2 29/4 29/10 29/16 29/25 31/5 31/10 33/17 37/5 37/25 38/5 40/24 42/17 47/11
where [19]  7/18 8/6 13/20 14/15 14/22 14/25 16/6 18/3 18/13 22/9 23/11 24/20 25/16 25/19 26/21 40/7 40/17 47/4 47/25
whether [8]  6/8 6/25 7/24 8/2 9/1 21/23 26/1 36/1
which [33]  4/4 5/23 6/2 6/22 7/15 10/21 12/2 12/3 12/16 13/2 13/15 13/15 14/5 14/17 15/15 15/21 17/25 19/4 19/19 20/15 24/3 26/19 28/4 28/20 30/9 32/4 32/9 33/23 38/15 38/23 41/15 42/21 46/16
White [4]  2/11 3/24 4/13 4/16
Who [1]  3/6
whoever [1]  42/3
why [4]  16/13 27/17 31/21 34/18
will [42]  5/1 6/24 8/21 9/1 10/3 15/3 20/11 20/15 20/21 21/3 21/14 21/19 23/6 23/18 24/18 27/9 28/7 28/19 29/3 29/15 31/11 32/6 41/14 41/15 41/18 41/19 41/21 42/9 42/13 42/13 42/14 42/21 44/5 44/6 44/12 44/13 45/14 45/16 46/13 46/18 47/1 47/5
windy [1]  47/16
wish [1]  5/13
within [5]  12/24 29/2 29/5 41/4 44/10
without [3]  13/19 13/23 49/6
witness [1]  44/16
witnesses [2]  18/11 45/18
word [2]  12/9 27/17
words [3]  17/21 25/7 28/10
work [1]  44/13
working [3]  21/9 43/14 46/18
would [30]  4/20 6/11 6/13 6/17 7/5 7/20 8/1 8/2 8/8 10/7 10/7 10/9 14/21 15/8 15/11 19/13 24/9 25/6 27/2 29/1 29/1 30/11 30/18 30/20 30/21 34/22 39/12

40/10 40/17 45/6
wouldn't [2]  19/12 22/8
Wow [1]  48/3
written [10]  8/11 16/4 17/22 17/22 18/12 18/17 19/6 19/7 19/9 38/4
wrong [2]  30/24 31/17
wrote [1]  31/7

# Y

year [4]  4/18 11/13 15/7 40/11
years [1]  39/16
yes [19]  5/2 10/6 19/23 23/12 23/14 24/14 26/7 28/9 30/5 31/4 32/21 32/22 33/11 43/6 45/2 45/25 46/2 46/2 46/11
yet [5]  4/4 21/6 21/17 22/21 47/8
you [146]
you'll [1]  40/20
you're [18]  13/7 14/12 14/15 14/16 18/16 22/15 22/22 28/18 40/16 40/18 40/25 41/11 42/3 42/19 43/11 45/22 45/22 47/25
you've [5]  21/6 22/20 26/5 29/11 30/1
your [106]
yourselves [1]  4/2

# Z

Zoom [1]  7/8