Philip S. Van Der Weele, OSB #863650
Email: phil.vanderweele@klgates.com
Elizabeth White, OSB #204729
Email: elizabeth.white@klgates.com
K&L GATES LLP
One SW Columbia Street, Suite 1900
Portland, Oregon 97204
Telephone: (503) 228-3200
Facsimile: (503) 248-9085

Attorneys for Defendants Pitney Bowes Inc.,
Pitney Bowes Global Financial Services LLC,
The Pitney Bowes Bank, Inc., and Wheeler
Financial from Pitney Bowes Inc.

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| PACIFIC OFFICE AUTOMATION INC., an Oregon corporation, <br><br> Plaintiff, <br><br> v. <br><br> PITNEY BOWES INC., a Delaware corporation; PITNEY BOWES GLOBAL FINANCIAL SERVICES LLC, a Delaware limited liability company; THE PITNEY BOWES BANK, INC., a federal banking institution; and WHEELER FINANCIAL FROM PITNEY BOWES INC., a Delaware corporation, <br><br> Defendants. | Case No. 3:20-cv-00651-AR <br><br> **DECLARATION OF PHILIP S. VAN DER WEELE IN SUPPORT OF DEFENDANTS' REQUEST FOR HEARING ON THIRD MOTION TO COMPEL (AS MODIFIED)** |

I, Philip S. Van Der Weele, hereby declare under penalty of perjury:

1.      I am a Partner at law firm K&L Gates LLP, located at One SW Columbia Street, Suite 1900, Portland, Oregon 97204.

2.      I make this Declaration in support of Defendants' Defendants' Request for Hearing on Third Motion to Compel (As Modified).

3.      I make the statements in this Declaration based on my personal knowledge and could and would testify competently thereto if called to do so.

4.      Attached hereto as Exhibit A is a true and correct copy an email chain between Veronica Manolio, counsel for Plaintiff POA, and me, counsel for Defendants, spanning November 15, 2021 through March 25, 2022.  The email chain includes a December 1, 2021 email from me that outlines the issues Defendants identified as outstanding regarding their Third Requests for Production of Documents (as modified) and Interrogatory 17, as well as information about the conceptually-agreed-upon interview of POA employee Brooks Newsom.  (Ex. A at 2-4.)

5.      Attached hereto as Exhibit B is a true and correct copy of an email dated November 24, 2021 excerpted from an email chain between Ms. Manolio and me.  My November 24 email sets forth questions for my interview of Mr. Newsom, some of which might require additional documents to answer.  Financial information referenced in the email that POA produced on an attorneys'-eyes-only basis has been redacted, and the redacted information is not relevant to the discovery dispute.

6.      I re-sent the December 1, 2021 email contained in Exhibit A to POA four times prior to submission of the parties' January 24, 2022 Joint Status Report: on December 15, 2021, January 11, 2022, January 12, 2022, and January 21, 2022.  POA has never denied that it owes the documents and information listed in the December 1 email.  POA has nevertheless not produced any of the requested documents or information.

7.      I re-sent the December 1, 2021 email contained in Exhibit A to POA an additional two times following the February 22, 2022 status conference—on March 2 and March 25, 2022. (Ex. A at 1-2.)  POA has never responded to these emails.  POA has not provided any information or documents since the February 22, 2022 status conference.

8.      Attached hereto as Exhibit C is a true and correct copy of excerpts of the transcript of the Feb. 22, 2022 status conference before Judge Acosta.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED this 6th day of April, 2022.

_____s/ Philip S. Van Der Weele_____
Philip S. Van Der Weele

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of April, 2022, I caused to be served a copy of the foregoing **DECLARATION OF PHILIP S. VAN DER WEELE IN SUPPORT OF DEFENDANTS' REQUEST FOR HEARING ON THIRD MOTION TO COMPEL (AS MODIFIED)**, upon all counsel of record via the Court's CM/ECF electronic service system.

DATED this 6th day of April, 2022.

s/ Philip S. Van Der Weele
Philip S. Van Der Weele, OSB #863650

| | |
|---|---|
| **From:** | Van Der Weele, Philip |
| **To:** | Veronica L. Manolio; White, Elizabeth H. |
| **Cc:** | Jamison R. McCune |
| **Subject:** | RE: 3:20-cv-00651-AC Pacific Office Automation Inc. v. Pitney Bowes Inc. et al /Discovery Issues - 3rd RFPD and Interrog 17 |
| **Date:** | Friday, March 25, 2022 11:12:00 AM |

Veronica,

To supplement my email below, if you want to me not to make a filing on April 8 regarding the Third Motion to Compel, I need to have the outstanding items on the 3rd Request (as modified) and Rog 17 (all of which are described in my email of December 1, 2021) by March 31 and an agreed-on date for the interview of Mr. Newsome.

Regards,
Phil

**From:** Van Der Weele, Philip
**Sent:** Friday, March 25, 2022 11:04 AM
**To:** 'Veronica L. Manolio' <vmanolio@mf-firm.com>; White, Elizabeth H. <Elizabeth.White@klgates.com>
**Cc:** 'Jamison R. McCune' <McCune@bodyfeltmount.com>
**Subject:** RE: 3:20-cv-00651-AC Pacific Office Automation Inc. v. Pitney Bowes Inc. et al /Discovery Issues - 3rd RFPD and Interrog 17

Hi Veronica,

You have continued to be non-communicative, and I am facing a court-ordered deadline of April 8 to file the motion to compel on Defendants' Fourth Request for Production of Documents. I am writing to let you know that April 8 is also the date I am going to request a hearing on Defendants' Third Motion to Compel, and I will be advising the Court of how the Third Motion has changed given agreements to change the original requests.

Regards,
Phil

**From:** Van Der Weele, Philip
**Sent:** Wednesday, March 02, 2022 8:59 PM
**To:** 'Veronica L. Manolio' <vmanolio@mf-firm.com>; White, Elizabeth H. <Elizabeth.White@klgates.com>

**Cc:** 'Jamison R. McCune' <McCune@bodyfeltmount.com>
**Subject:** RE: 3:20-cv-00651-AC Pacific Office Automation Inc. v. Pitney Bowes Inc. et al /Discovery Issues

Hi Veronica,
I hope you had a good trip to Portland last week.
Please tell me when you will be producing outstanding information from the 3rd RFPD and Interrogatory 17 as modified and as outlined in my December 1 email below.
I have resent this Dec. 1 email to you a number of times since December 1, but you have never responded to it.

Thanks,
Phil

---

**From:** Van Der Weele, Philip
**Sent:** Wednesday, December 01, 2021 12:43 AM
**To:** 'Veronica L. Manolio' <vmanolio@mf-firm.com>; White, Elizabeth H. <Elizabeth.White@klgates.com>
**Cc:** Jamison R. McCune <McCune@bodyfeltmount.com>
**Subject:** RE: 3:20-cv-00651-AC Pacific Office Automation Inc. v. Pitney Bowes Inc. et al /Discovery Issues

Hi Veronica,
I am writing for the limited purpose of addressing the question posed in the penultimate paragraph of your November 19 email below, namely, whether I agree that your productions of November 15 and November 19 (as described in your emails of those dates below) render PBI's Third Motion to Compel moot. Your productions on November 15 and 19 go a long ways toward resolving the Third Motion, and I remain cautiously optimistic that we can resolve the issues regarding PBI's Third Motion to Compel (which encompassed both the Third RFPD and Interrogatory 17) without the assistance of the Court. I do not believe, however, we are all the way there, yet, so I am not willing, at this time, to declare the Third Motion to be "moot."

Here is what I think is still outstanding:

1. Interrogatory 17
   a. I thought you were going to provide some add'l info on at least two of the four SP300s that were not sold.
   b. Your November 19 cover email contains a lot of qualifications regarding the sales prices of the SP300s. Whether these qualifications matter, and, correspondingly, whether the discovery responses are complete, depends on what remedy POA is seeking with respect to the SP300s.
      i. These qualifications do not matter for further discovery if the remedy POA is seeking for the SP300s is, as stated in POA's 2nd Supplemental Response to Interrogatory 9, to get back the money POA paid for the SP300s in the first place. So, if POA is sticking to its interrogatory response and seeking a refund of what it paid for the SP300s, then I do not need any more information about the resale price of the SP300s.
      ii. If, however, POA is changing its theory and seeking some sort of damages claim based on a diminished resale price (a theory that POA has neither pled nor specified in its interrogatory responses), then the information POA has provided to date on the sales prices of the SP300s is <u>not</u> adequate. I therefore ask you to identify what remedy POA is seeking with respect to the SP300s for purposes of resolving this discovery issue. PBI reserves all of its rights to object to new theories.

2. POA Profitability Analysis for PBI
   a. I remain committed to obtaining financial information limited to PBI (or, potentially PBI + FP if POA cannot disaggregate further), as opposed to all of POA's product lines, as a way of resolving the Third RFPD.
   b. However, some issues regarding the completeness of the production of POA's financial information remain; I identified these issues in the email I sent you on November 24, in which I outlined my questions for Mr. Newsom. I am going to wait and see what additional documents I receive in advance of the interview of

Mr. Newsome and for the interview itself in order to determine the adequacy of the modified production.

Please let me know if you would like to discuss further. (I am attending a trial in San Francisco Mon - Thurs this week and next and am not available until late afternoons.)

Regards,
Phil

---

**From:** Veronica L. Manolio <vmanolio@mf-firm.com>
**Sent:** Friday, November 19, 2021 4:28 PM
**To:** Van Der Weele, Philip <phil.vanderweele@klgates.com>; White, Elizabeth H. <Elizabeth.White@klgates.com>
**Cc:** Jamison R. McCune <McCune@bodyfeltmount.com>
**Subject:** RE: 3:20-cv-00651-AC Pacific Office Automation Inc. v. Pitney Bowes Inc. et al /Discovery Issues
**Importance:** High

**External Sender:**

Hi Folks,

In further follow up, I am providing the additional (SendPro 300) information responsive to your Interrogatory No. 17 as we agreed to in limited scope. I am attaching here:

1. An Excel Spreadsheet, in native format, compiled to reflect a summary report of the total revenue generated for sales of all SP300s by POA from 2017-2019; and
2. 3 separate Excel Files, in native format, compiled to reflect each year's annual sales (2017, 2018 and 2019 are separate), and each annual file contains tabs with sales broken down monthly.

**These documents are produced with the designation of ATTORNEYS' EYES ONLY and should be treated in accordance with the Protective Order.**

There are some additional comments that need to be addressed regarding this production:

1. The spreadsheet was prepared by Brooks Newsom, Director (CFO).
2. Mr. Newsom has provided us with these explanations regarding the production:
   a. There are a couple of factors that may make these numbers inaccurate:
      i. These spreadsheets only show initial sales figures and do not include future adjustments that may have been made. Adjustments can go in either direction, so we can just assume the law of averages will minimize the deviation.
      ii. The gross profit is calculated based on sales reps published cost of sale. That means it will not necessarily match OMD's average cost and will not factor in any marketing development funds or other concessions POA provided its sales team when the reps made price reductions. There were significant adjustments made by POA to help move these units.
      iii. The information is gathered from what are essentially manual reports, so there is an element of human error both in the initial report and Mr. Newsom's report.
      iv. Revenue is only capturing the Equipment only revenue and not service revenue.
   b. It would be extremely time-consuming and cost prohibitive to try and rectify all potential errors and to ensure 100% accuracy of the bottom-line profit figures.
3. Each of POA's sales of SP300s include the machine/scale combinations.

Just FYI – I know you had 535 machine/scale combos listed on your interrogatory. I went through every single PO issued/paid, and I only found 489 combos that were purchased on stock orders. The total sold was 495, so it would appear that a few were not made on the stock order POs, but I just do not come up with the 535 figure.

In any event, as I mentioned on the phone Wednesday, I will continue to work with you in good faith if this information brings up additional requests. But I do believe that this now completely fulfills our agreement on Interrogatory No. 17 and makes the totality of Motion to Compel No. 3 now moot. Please let me know if you disagree.

Thank you, and have a great weekend!

*Veronica*



8686 E. San Alberto Drive, Suite 200
Scottsdale, Arizona 85258
(480) 222-9100

---

**From:** Veronica L. Manolio
**Sent:** Monday, November 15, 2021 2:27 PM
**To:** Van Der Weele, Philip <phil.vanderweele@klgates.com>; White, Elizabeth H.
<Elizabeth.White@klgates.com>
**Cc:** Jamison R. McCune <McCune@bodyfeltmount.com>
**Subject:** RE: 3:20-cv-00651-AC Pacific Office Automation Inc. v. Pitney Bowes Inc. et al /Discovery
Issues
**Importance:** High

Phil and Liz,

In furtherance of our ongoing attempts to resolve the discovery issues (and the pending
Third Motion to Compel), I am attaching here:

1. An Excel Spreadsheet, in native format, compiled to reflect total revenue
   generated for Mailing Equipment sold by POA from 2014-2019, as we agreed
   to provide; and
2. The back-up documentation taken directly from POA's Profit & Loss
   Statements.

This is a non-custodial production and is being produced as responsive to RFPs 42-45,
modified/limited as we have agreed through a series of meetings and conferrals on
these specific requests.

**<span style="color:red">These documents are produced with the designation of ATTORNEYS' EYES ONLY and
should be treated in accordance with the Protective Order.</span>**

There are some additional comments that need to be addressed regarding this
production:

1. The spreadsheet was prepared by Brooks Newsom, Director. Mr. Newsom has provided us with these explanations regarding the production:
   a. The top part of the Spreadsheet (which is "shaded") contains the figures that were previously provided in this case, in response to prior interrogatories. The bottom portion of the spreadsheet (not shaded) demonstrates ACTUAL numbers, taken directly from the P&Ls. We had not previously relied on 2014 or 2015.
   b. The relevant pages of POA's Profit and Loss Statements are pp. 2, 5 and 12 from POA's full-year P&Ls for 2015, 2017 and 2019. These are the only pages that contain Mailing Machines. Each of the P&Ls includes the "current year" and "last year" numbers, so the 2015 includes 2014 figures, etc. These pages do, in fact, show numbers for 2014-2019.
   c. POA did not start "breaking out" mailing machine rental/service revenue from equipment sales until 2018. That is why the spreadsheet and back-up documents do not show service revenue separately for years 2014-2017.
2. If these documents lead to additional requests (that are still more limited than your original RFPs), I remain more than willing to work with you on providing additional information. This is not meant to be drawing a "line in the sand" that you cannot ask further questions/information; this is meant to provide what you and I agreed was a proper limitation to the RFPs.
3. If you now believe that an additional deposition is required and/or you'd like to depose Brooks Newsom, I will cooperate without issue.

In addition, I attach a .pdf file related to the SendPro 300s that remain in POA's stock. This document is neither privileged nor a custodial production. The item is **partially** responsive to your Interrogatory No. 17, as modified per our agreement during meetings/conferrals on this request.

Additional comments regarding this production:

1. This .pdf file was prepared by Andrew Salgado, POA's in-house counsel, who was able to gather information directly from POA's inventory system.
2. The production verifies that POA has sold all of the SP300s it purchased from Pitney Bowes, except:
   a. There are 4 machines in the system that could not be/were not sold:
      i. Serial Number 6562703 – located in Branch 10 (Portland) Shop –

Noted as a Number 9– Missing Part – Write off.

    ii. Serial Number 6563020 – Located in Branch 9 Warehouse – Noted as Number 5 – Damaged in Transit

    iii. Serial Number 6563055 – Located in Branch 50 (Medford, OR) – Noted as number 4 – so needs parts to be operable.

    iv. Serial number 6563804 – Located in Branch 90 Warehouse – Noted as Number 4 – needs parted to be operable.

    b. Some of the SP300s are in use by POA at POA locations, rather than having been sold to customers/third parties.

3. We are still gathering the more specific information you asked to have – identifying the sales price for each SP300s and scales. Unfortunately, that is a time-consuming endeavor (for many, many reasons), but I am assured that the full list should be compiled this week. We are not shying away from my promise to produce the information, it has simply taken more time than anticipated.

I look forward to talking with you both again on Wednesday, but feel free to write back if you have other issues/questions prior to our scheduled call.

*Veronica*



8686 E. San Alberto Drive, Suite 200
Scottsdale, Arizona 85258
(480) 222-9100

| | |
|---|---|
| **From:** | Van Der Weele, Philip |
| **To:** | Veronica L. Manolio; White, Elizabeth H. |
| **Cc:** | Jamison R. McCune |
| **Subject:** | RE: 3:20-cv-00651-AC Pacific Office Automation Inc. v. Pitney Bowes Inc. et al /Discovery Issues |
| **Date:** | Wednesday, November 24, 2021 5:49:52 PM |
| **Attachments:** | POA Supplemental Responses to First Set of NUIs.pdf |
| | 2021-07-23_POA SECOND SUPPLEMENTAL Responses to First Set of NUIs.pdf |

Hi Veronica,

This email supersedes my November 18 email below - so, among other things, I do NOT need those six additional pages of back-up requested in my November 18 email.

Although the following is probably not a complete list of the questions I have for Mr. Newsome (due to the possibility of follow-up questions), it is a substantial portion of what I plan to ask, and I thought the interview would be more productive if Mr. Newsome had these questions in advance.

These questions pertain to the Excel file Mr. Newsome prepared named "2021-11-15 POA Mailing Machines P&L 2014-2019" that was attached to your 11-15-2021 email below. This Excel file contains a single spreadsheet named "Hardware."

**Regarding the shaded portion of the Hardware spreadsheet, which your email below says has numbers used in POA's interrogatory responses:**

1. Revenue Line
   a. How were these numbers derived?
   b. Over the course of the Dealer Agreement, PBI made approximately ███ of "back end" payments to POA - bonuses, commissions, rebates, etc.
      i. Are these payments included in the Revenue Line?
      ii. If not, where are they included?
2. "Leave Pts" Line
   a. Should this be "Lease Pts"?
   b. What does it represent?
3. GP Line
   a. The formula for this line is $NNN,NNN + Leave(Lease) Pts

      b. Where did the $NNN,NNN come from?

4. Lease Revenue Line

      a. Formula = Revenue/█

      b. What does this represent?

5. Mail System Maintenance Line

      a. How were these numbers derived?

      b. Is this line supposed to correspond to the "SVC Revenue" line in the PnL (non-shaded) portion of the spreadsheet?

6. This group of questions relates to Point 3 of POA's Supplemental Response and Second Supplemental Response to Interrogatory 9. (Point 3 of the response to Rog 9 is the same in both.)

      a. I am attaching both the Supplemental Response (which was also Depo Ex. 29) and the Second Supplemental Response for convenience.

      b. Point 3 of Interrogatory 9 references two cost numbers:

         i. █████████: Actual cost of what POA paid PBI over term of Dealer Agreement

         ii. █████████: "True Cost of Goods Sold" over Term of Dealer Agreement

      c. How are these numbers derived from the shaded portion of the Hardware spreadsheet? (I note that in his deposition, Mr. Pitassi testified that point 3 might contain a typo, since it has two cost numbers and no revenue number.)

      d. What does "True Cost of Goods Sold" mean?

      e. How does "True Cost of Goods Sold" differ from accounting COGS, which, in the case of the PBI Dealer Agreement, I would take to mean the price that POA paid PBI for equipment?

**Regarding the "PnL" portion of the Hardware spreadsheet, which is not shaded, and whose numbers are supported the "POA Backup Documentation" PDF that accompanied your 11-15-2021 email:**

1. EQ Revenue Line

      a. The numbers for this line come from a line in the back-up documentation named "0109 FP Mail Machine & Access." Is this

the name and number of a GL account?

    b. Do revenues in this line include POA's revenues from the sale of both PBI and FP equipment?

        i. If yes, is there any way to separate out the numbers for the two product lines?

    c. Does this line include the approximately ███ of back-end payments that PBI made to POA?

        i. If not, what GL account captures those back-end payments

    d. Does this line include the "Leave/Lease Pts" revenue?

        i. If not, what GL account captures that revenue?

2. EQ Cost Line

    a. The numbers for this line come from a line in the back-up documentation named 0278 FP Mail Machine & Access. Is this the name and number of a GL account?

    b. Is this account for the purchase cost of equipment?

    c. Do the costs in this line include POA's costs of purchasing both PBI and FP equipment?

        i. If yes, is there any way to separate out the numbers for the two product lines?

    d. Would you call this line "COGS," "True COGS," or something else?

3. Gross Profit Line

    a. What additional costs (by category/GL account) would you subtract from Gross Profit to calculate Net Profit?

    b. How would you quantify those costs - i.e., are there GL cost accounts specific to mailing equipment you would use, or would there be some sort of allocation principle applied to undifferentiated costs?

4. SVC Revenue Line

    a. GL Account "0629 Mail Machine MA/Rental

        i. Is this revenue from maintenance of both FP and PBI equipment?

        ii. If so, any way to separate out?

    b. Where are the costs associated with Service Revenue accounted for?

As discussed, Dec. 8 or 9 would be good dates for the interview. I also have some availability Dec. 14-16.

Hope you and your family have an enjoyable Thanksgiving!
Phil

```
 1                IN THE UNITED STATES DISTRICT COURT

 2                    FOR THE DISTRICT OF OREGON

 3   PACIFIC OFFICE AUTOMATION,    )
     INC., an Oregon corporation,  )
 4                                 )
              Plaintiff,           )   Case No. 3:20-cv-00651-AC
 5                                 )
         v.                        )
 6                                 )
     PITNEY BOWES, INC., a Delaware)   February 22, 2022
 7   corporation, et al.,          )
                                   )
 8            Defendants.          )   Portland, Oregon
     _____)
 9

10

11

12

13

14

15                 Telephone Oral Argument

16                 TRANSCRIPT OF PROCEEDINGS

17          BEFORE THE HONORABLE JOHN V. ACOSTA

18    UNITED STATES DISTRICT COURT MAGISTRATE JUDGE

19

20

21

22

23

24

25
```

Exhibit C
Page 1 of 6

```
 1
 2                        APPEARANCES
 3
 4   FOR THE PLAINTIFF:     Ms. Veronica L. Manolio
                            Manolio & Firestone, PLC
 5                          8686 E. San Alberto Drive, Suite 200
                            Scottsdale, AZ 85258
 6
 7                          Mr. Jamison R. McCune
                            Bodyfelt Mount, LLP
 8                          319 S.W. Washington Street, Suite 1200
                            Portland, OR 97204
 9
10
11   FOR THE DEFENDANTS:    Mr. Philip S. Van Der Weele
                            Ms. Elizabeth H. White
12                          K&L Gates LLP
                            One S.W. Columbia Street, Suite 1900
13                          Portland, OR 97204
14
15
16
17   COURT REPORTER:        Bonita J. Shumway, CSR, RMR, CRR
                            United States District Courthouse
18                          1000 S.W. Third Avenue, Room 301
                            Portland, OR 97204
19                          (503)326-8188
                            bonita.shumway@ord.uscourts.gov
20
21
22
23
24
25
```

Exhibit C
Page 2 of 6

```
 1              (P R O C E E D I N G S)

 2              (February 22, 2022; 1:31 p.m.)

 3                      * * * * *

 4         THE COURT:  Good morning -- or good afternoon, I

 5    should say now.  This is Judge Acosta.  I'm going to take roll.

 6    Who is there for the plaintiff?

 7         MS. MANOLIO:  Good afternoon, Your Honor.  Veronica

 8    Manolio, appearing for Plaintiff Pacific Office Automation, or

 9    POA.

10         THE COURT:  Thank you.

11         Anyone else there for the plaintiff?

12         MR. MCCUNE:  Good afternoon, Judge Acosta.  Jamison

13    McCune, local counsel for POA.

14         THE COURT:  Thank you.

15         Anyone else for plaintiff?

16         (No response.)

17         THE COURT:  All right.  Thank you.

18         And for defendant?

19         MR. VAN DER WEELE:  Good afternoon, Your Honor.  Phil

20    Van Der Weele from K&L Gates on behalf of the defendants.

21         THE COURT:  Thank you.

22         Anyone else for the defendants?

23         MS. WHITE:  Good afternoon, Your Honor.  Elizabeth

24    White, also from K&L Gates, for the defendant.

25         THE COURT:  Thank you.
```

Exhibit C
Page 3 of 6

1  it's been completed and no further documents were found, or if

2  they were, produce them.

3      MS. MANOLIO:  Absolutely.  No problem.

4      THE COURT:  Mr. Van Der Weele, does that take care of

5  No. 30 at least for now?

6      MR. VAN DER WEELE:  Yes, it does, Your Honor.

7      THE COURT:  Good.

8      Let's go back to the third motion to compel and the

9  possible fourth motion.

10     With respect to the third motion, Mr. Van Der Weele,

11  just to summarize, you said you're still waiting for a response

12  from POA.

13     Ms. Manolio, your thoughts?

14     MS. MANOLIO:  I have absolutely been working with

15  Mr. Van Der Weele, have given subsequent information, still

16  have subsequent information to give.  And so that everyone

17  feels comfortable, I'm actually flying up to Portland tomorrow

18  to meet with POA and go through documents in person to produce

19  what I know is still outstanding to Mr. Van Der Weele, but I've

20  been trying to just get a time with their CFO to sit down and

21  go through documentation.

22     But I don't believe it's -- that the third is at

23  issue or is going to become an issue, as I don't believe that

24  the fourth is going to become an issue because I've committed

25  to certain things and I intend to abide by what I've committed

Exhibit C
Page 4 of 6

```
1   to, it's just been a matter of logistics and that's it.
2            THE COURT:  Let me ask you this question.
3            MS. MANOLIO:  Sure.
4            THE COURT:  For you to produce all the documents that
5   you believe will put the third motion to compel to rest and
6   avoid a fourth motion to compel, how much time will you need?
7            MS. MANOLIO:  Again, Your Honor, my position is that
8   everything should be inclusively provided by the end of March,
9   but I intend to get Mr. Van Der Weele the documents that I know
10  are outstanding probably within the next two weeks.  I'm going
11  up not tomorrow but the day after, and hope to make production
12  next week.  I know there will be subsequent questions, I just
13  know there will.  But I'm committed to work with him in good
14  faith to get him anything subsequent, as, Your Honor, I've also
15  committed to allow him to have informal interviews rather than
16  depositions of the financial information or the witness for the
17  financial information that we're providing.
18           THE COURT:  Thank you.
19           Hang on a minute, please.
20           MS. MANOLIO:  Sure.
21           THE COURT:  All right.  I'm looking at the most
22  recent joint status report, Docket 93, filed on January 24, and
23  I'm looking at that section really that begins on page 4, case
24  schedule following completion of fact discovery.
25           Right now does everyone agree fact discovery closes
```

Exhibit C
Page 5 of 6

1

2                            --oOo--

3

4         I certify, by signing below, that the foregoing is a

5   correct transcript of the record of proceedings in the

6   above-entitled cause.  A transcript without an original

7   signature or conformed signature is not certified.

8

9
    */s/Bonita J. Shumway*                    *March 1, 2022*
10  _____            _____
    BONITA J. SHUMWAY, CSR, RMR, CRR    DATE
11  Official Court Reporter

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Exhibit C
Page 6 of 6