UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| PACIFIC OFFICE AUTOMATION INC., an Oregon corporation, | Case No. 3:20-cv-00651-AR |
| Plaintiff – Counter Defendant, | **OPINION AND ORDER** |
| v. | |
| PITNEY BOWES INC., a Delaware corporation; PITNEY BOWES GLOBAL FINANCIAL SERVICES, LLC, a Delaware limited liability company; THE PITNEY BOWES BANK, INC., a federal banking institution; and WHEELER FINANCIAL FROM PITNEY BOWES INC., a Delaware corporation, | |
| Defendants – Counter Claimants. | |

**ARMISTEAD, United States Magistrate Judge**

In 2016, Pacific Office Automation (POA) and Pitney Bowes Inc. entered into a three-year agreement authorizing POA as a dealer for Pitney's mailing equipment (the agreement). The

business relationship soured and, in April 2020, POA filed this action against Pitney, [1] bringing five claims: breach of contract (Claim 1), violation of the Connecticut Unfair Trade Practices Act (Claim 2), fraudulent inducement (Claim 3), monopolization in violation of § 2 of the Sherman Act (Claim 4), and attempted monopolization in violation of § 2 of the Sherman Act (Claim 5). (Compl., ECF No. 1.) POA voluntarily dismissed Claims 3, 4, and 5 in May 2023. (ECF No. 141.) Pitney moved for summary judgment on POA's remaining claims, which the court granted in July 2024. (ECF No. 164.) Each of POA's claims now being dismissed, only Pitney's counterclaims for breach of contract and attorney fees remain.

Pitney contends that § 6.05(1)(c) of the agreement between the parties entitles it to recover the attorney fees and costs that it incurred in defending itself against POA's claims. (Answer at 21, ECF No. 60; Def.'s Resp. at 6, ECF No. 174). Section 6.05(1) of the agreement (ECF No. 1-1) provides:

> POA will indemnify and hold harmless Pitney, and, at Pitney's option, defend Pitney, against any costs, expenses (including reasonable attorney's fees), judgments and other liabilities, of any nature or kind whatsoever, arising out of or based upon, or alleged to have arisen out of or to have been based upon: (a) POA's breach of this Agreement or POA's action outside its scope of authority expressly granted in this Agreement; (b) POA's or any POA Representative's negligence, fraud, willful misconduct, misrepresentation or breach of any contract with a third party; (c) **any claim by POA or any POA Representative**; or (d) any other claim that Pitney is in any manner responsible for any act or omission of POA or any POA Representative, including, but not limited to, any physical injury (including death) or damage to persons or property.

(party names altered) (emphasis added).

---

[1]    "Pitney" collectively refers to: Pitney Bowes, Inc., Pitney Bowes Global Financial Services LLC, The Pitney Bowes Bank, Inc. and Wheeler Financial from Pitney Bowes Inc.

POA moves for judgment on the pleadings on Pitney's claim for attorney fees, asserting that § 6.05(1)(c) unambiguously does not encompass claims made by POA against Pitney (first-party indemnification)—instead extending only to claims made by POA against a third party (third-party indemnification).[2] (Pl.'s Mot. at 3, ECF No. 171; Pl.'s Reply at 2, ECF No. 175.)

POA makes three arguments to support its view. *First*, POA asserts that, beginning with *Heyman Assocs. No. 5, L.P. v. FelCor TRS Guarantor, L.P.*, 153 Conn. App. 387, 416 (2014), Connecticut courts, having rejected the idea that first-party indemnification is the default rule, focus on whether the context of an indemnification provision suggests it was only meant to cover third-party claims. (Pl.'s Mot. at 10-12). POA contends that reading subsection (c) in the context of its surrounding subsections demonstrates that subsection (c) was not intended to extend to POA's claims against Pitney. (*Id.* at 12.) *Second*, POA argues that, because subsection (a) provides for first-party indemnification resulting from "[POA]'s breach of the Agreement," that if the parties had wanted to include first-party indemnification in subsection (c) they could have done so as they did in subsection (a), but did not. (*Id.*) *Finally*, POA argues that Pitney's proposed interpretation leads to an absurd result because it denies POA any redress for breaches of the agreement by Pitney. (*Id.*)

In Pitney's view, § 6.05(1)(c) unambiguously provides for first-party indemnification, because POA's obligation is triggered by "any claim by [POA]." (Def.'s Resp at 8-10.) Under

---

[2]    POA alternatively asks the court to limit POA's liability for attorney fees under § 6.06 of the agreement. (Pl.'s Mot. at 3.) Because the court concludes that § 6.05(1)(c) does not require POA to indemnify Pitney, that argument is unnecessary, and the court will not address it.

Connecticut law, Pitney says, the court should read the provision to encompass first-party indemnification if the language is broad and there is no indication of an intent to limit the provision's application to third-party claims. (*Id.* at 10-19.) Pitney also asserts that other sections of the agreement explicitly mention third-party claims, but § 6.05(1) does not. (*Id.* at 20-21.) Pitney disagrees with POA's arguments that reading § 6.05(1) as a whole, including its surrounding subsections, makes clear that subsection (c) was meant to apply only to third-party claims. (*Id.* at 19.) Finally, although Pitney agrees that its proposed reading would produce an absurd result, it contends that any absurd result could be avoided under either Connecticut or Oregon law. (*Id.* at 24-28.)

The court concludes that Pitney's proposed interpretation produces an absurd result. Because that absurdity renders Pitney's proposed interpretation unreasonable, § 6.05(1)(c) is reasonably susceptible to only one meaning, and is therefore unambiguous. POA is entitled to judgment on the pleadings on that basis, and the court need not consider POA's other arguments in favor of its proposed interpretation.[3]

## LEGAL STANDARD

### A.    *Motion for Judgment on the Pleadings*

Under Federal Rule of Civil Procedure 12(c), a party can move for judgment on the pleadings if the pleadings are closed and it is early enough to not delay trial. FED. R. CIV. P. 12(c). In resolving such a motion, the court must "accept all factual allegations in the complaint

---

[3] The parties have consented to jurisdiction by magistrate judge as permitted by 28 U.S.C. § 636(c)(1). (Full Consent, ECF No. 64.) Pitney requests oral argument. The court, however, does not believe that oral argument would help resolve the pending motion. See LR 7-1(d)(1).

as true and construe them in the light most favorable to the non-moving party." *Power of Fives, LLC v. B&R Enter.'s, Inc.*, No. 23-15152, 2023 WL 8613494, at *1 (9th Cir. Dec. 12, 2023) (quoting *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009)). Judgment on the pleadings is proper where "there is no material fact in dispute and the moving party is entitled to judgment as a matter of law." *Fleming*, 581 F.3d at 925.

**B.**   ***Contract Interpretation***

In accordance with the agreement's choice-of-law provision, the court interprets the agreement under Connecticut law. (Agreement § 8.14.) When construing a contract under Connecticut law, the court's task is "to determine the intent of the parties." *Nation-Bailey v. Bailey*, 316 Conn. 182, 192 (2015) (simplified) (quoting *Parisi v. Parisi,* 315 Conn. 370, 383-84, (2015)).

> The intent of the parties is to be ascertained by a fair and reasonable construction of the written words. When only one interpretation of a contract is possible, the court need not look outside the four corners of the contract. . . . When the language is clear and unambiguous the contract must be given effect according to its terms, and the determination of the parties' intent is a question of law. A contract is unambiguous when its language is clear and conveys a definite and precise intent. A contract is ambiguous if the intent of the parties is not clear and certain from the language of the contract itself and is susceptible to more than one reasonable interpretation.

*Id.* at 192-193 (simplified). A contract is not ambiguous simply because the parties offer competing interpretations. *Id.* at 192.

In construing the contract, the court must view the contract "in its entirety, with each provision read in light of the other provisions," and give effect to "every provision . . . if it is possible to do so." *Id.* at 192. And the court must "not construct a contract's language in such a way that it would lead to an absurd result." *Welch v. Stonybrook Gardens Co-op.*, 158 Conn. App.

185, 198 (2015). An interpretation that produces an absurd result is properly rejected as a matter of law. *Centerplan Constr. Co., LLC v. City of Hartford*, 343 Conn. 368, 399 (2022) (holding that term "obligations" unambiguously included "liability for architect's errors and omissions" because the competing interpretation of that term "would be an absurd result"); *Waesche v. Redevelopment Agency of New London*, 155 Conn. 44, 51 (1967) (declining to construe contract language in a manner that "would lead to a patently absurd and inequitable result"); *Konover v. Kolakowski*, 186 Conn. App. 706, 716-22 (2018) (concluding, as a matter of law, that contract term was unambiguous, in part because alternative interpretation would be "absurd").

## DISCUSSION

Section 6.05(1) provides that "POA will indemnify and hold harmless Pitney [and] defend Pitney, against any costs, expenses (including reasonable attorney's fees), judgments and other liabilities, of any nature or kind whatsoever, arising out of or based upon . . . (c) any claim by POA[.]" (Agreement § 6.05(1) (party names altered).) Although subsection (c) by itself might indicate first-party indemnification (as Pitney contends), the court must look at § 6.05(1)(c) in context to assess whether it is ambiguous that subsection (c) covers first-party indemnification.

Pitney divides § 6.05(1) into four parts: the first part identifies who must indemnify whom (POA must identify Pitney); the second is the categories of expenses that are eligible for reimbursement (including attorney fees and costs); the third is a causation requirement (the expenses must arise out of or be based on a triggering event); and the fourth part lists the triggering events (one of which is "any claim by [POA]"). (Def.'s Resp. at 9-10.) Be that as it may, as to the first part, Pitney fails to mention § 6.05(1)'s requirement that POA, at Pitney's option, "defend" Pitney under the same circumstances as it must indemnify Pitney; and, as to the

second component, Pitney conspicuously leaves out that "any . . . judgments or liabilities, of any nature or kind whatsoever" also fall within the categories of expenses eligible for reimbursement. (Agreement § 6.05(1).)

Pitney then isolates words used in § 6.05(1)(c) to support its interpretation. Because subsection (c) requires POA to indemnify Pitney for "any claim by [POA]," Pitney says, it "unambiguously entitles Pitney to its attorney fees." (Def.'s Resp. at 13.) To be sure, "any claim by [POA]," in isolation, is reasonably interpreted to encompass claims by POA against Pitney. But, as POA notes, contract interpretation under Connecticut law is not performed by examining the disputed phrase in isolation; the court must read subsection (c) "in the context of the entire provision." *Centerplan*, 343 Conn. at 397. At a minimum, to understand its meaning, the court must examine the phrase within the sentence of which it is part (and here, the entire provision is a single sentence).

When subsection (c) is considered within the context of the entire provision, Pitney's interpretation is unreasonable because it leads to absurd results. That is, where subsection (c) includes claims by POA against Pitney, § 6.05(1) requires POA, even if it prevails against Pitney, to "indemnify," "hold harmless," and "defend" Pitney, and makes POA liable (to itself) for any resulting "judgments" or "other liabilities." (Agreement § 6.05(1).)

Both parties agree that that result is absurd. (*See* Def.'s Resp. at 24 (stating that "would be an absurd result").) It would effectively deny POA any relief against Pitney for Pitney's breach of their agreement, a result that cannot be the parties' intent. *See, e.g., Southridge Partners II Ltd. P'ship v. PotNetwork Holdings, Inc.*, No. 3:17-CV-1925 (KAD), 2019 WL 2248691, at *5 (D. Conn. May 24, 2019) ("It would be an absurd result to interpret the contract

in a manner that leaves one party without a remedy in the event of a breach by the other.");
*Grogan v. Penza*, 194 Conn. App. 72, 79 (2019) ("[I]n giving meaning to the language of a contract, [Connecticut courts] presume that the parties did not intend to create an absurd result.").

In Pitney's view, the court should incorporate the restrictions of Connecticut law, which the parties selected as the governing law for the contract, when interpreting § 6.05(1). Doing so, Pitney says, the court can read the provision in a way that avoids any absurd result. Even assuming that interpretive methodology is proper, however, the court concludes that § 6.05(1) would still be absurd under Pitney's proposed reading.

Under Connecticut law, if POA had prevailed on its claims, its obligation to indemnify Pitney under § 6.05(1)(c) would be discharged. *Weiss v. Smulders* 313 Conn. 227, 263 (2014) ("[I]t is well settled that a material breach by one party discharges the other party's subsequent duty to perform on the contract."); (Def.'s Resp. at 26-27). But as POA asserts, its obligation would only be discharged if the breach was material. That means that the admittedly absurd result would still be present in the case where POA brought a claim for a non-material breach.[4] (Pl.'s Reply at 7 n.5, ECF No. 175); *see Weiss*, 313 Conn. at 263 ("[I]t is well settled that a *material* breach by one party discharges the other party's subsequent duty to perform on the contract." (emphasis added)); *Bernstein v. Nemeyer*, 213 Conn. 665, 673 (1990) (discharge

---

[4] POA would still have a right to seek a remedy for a nonmaterial breach by Pitney. *E.g.*, *Bruno v. Whipple*, 186 Conn. App. 299, 316-17 (2018) (recognizing claim for technical breach of contract); *see also* 23 Williston on Contracts (4th ed. 2024) § 63:3 (a "nonbreaching party is entitled to damage caused even by the immaterial breach, albeit that these may be nominal in amount[]"); *Stiegler v. City of Meriden*, 348 Conn. 452, 472 (2024) (referencing Williston); *RBC Nice Bearings, Inc. v. SKF USA, Inc.*, 318 Conn. 737, 749 (2015) (same).

occurs when there is a material breach); *S & S Tobacco & Candy Co. v. Stop & Shop Companies, Inc.*, 107 F.3d 4 (2d Cir. 1997) (Connecticut law does not discharge duties for immaterial breaches). To avoid that absurd result, the parties would have had to include in the agreement that POA would not be obligated to indemnify Pitney if POA prevailed on any breach, not just material ones. Yet the parties did not include that language or any other language indicating that that was their intent. The court will not read into the contract an intent not supported by a fair and reasonable construction of the written words. And Pitney does not explain how the obligation that POA "defend" Pitney (at Pitney's option) against POA's own claims is not absurd—given that that duty, in Pitney's view, is only discharged once POA has prevailed on a claim for a material breach.

Pitney also contends that as applied to § 6.05(1)(c), Oregon law provides for reciprocity of attorney fees, preventing POA from having to indemnify Pitney if POA prevailed. (Def.'s Resp. at 26-27.) That is, Pitney contends, ORS § 20.096(1) controls, making one-way attorney fees reciprocal. Although Oregon law may potentially solve the problem of first-party indemnification as applied here, the court's role is to decide the parties' intent based on the fair and reasonable constriction of the written words. *Nation-Bailey*, 316 Conn. at 192. The court is unconvinced that there is any supportable basis to use ORS § 20.096(1) to understand the parties' intent at formation. Nor is there any mention of reciprocity in the Agreement.

In sum, the only reasonable interpretation is that subsection (c) extends only to claims by POA against a third party. And, contrary to Pitney's view, that interpretation does not render subsection (c) superfluous. (*See* Pl.'s Reply at 5-6 (describing qualifying expenses that could result from POA's claims against a third party).) The contract is therefore unambiguous. *Nation-*

*Bailey*, 316 Conn. at 192 (when language is clear and not susceptible to more than one reasonable interpretation, it is unambiguous). Section 6.05(1)(c) does not provide for first-party indemnification.

## CONCLUSION

For the above reasons, POA's motion for judgment on the pleadings (ECF No. 171) is GRANTED.

DATED: June 16, 2025

_____
JEFF ARMISTEAD
United States Magistrate Judge